IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UL LLC, <br><br> Plaintiff, <br><br> v. <br><br> JOSHUA CALLINGTON, <br><br> Defendant. | No. 1:24-cv-05631 |

### UL LLC'S MOTION FOR ENTRY OF CONFIDENTIALITY ORDER

Pursuant to the Court's October 24, 2024, Order directing counsel to "discuss the terms of an order to remain in place for the duration of the case," (ECF No. 16), Plaintiff UL LLC ("UL") submits a proposed Confidentiality Order and requests that the Court enter it as soon as possible. UL's proposed Confidentiality Order closely tracks the "Model Confidentiality Order" that has been adopted by this judicial district. UL also has inserted several modifications that respond specifically to the issues that the parties and this Court have been discussing and addressing in this case. These proposed modifications are shown as redline revisions on the proposed order, which is attached as **Exhibit 1**.

As explained more fully below, the confidentiality protections and obligations the proposed Confidentiality Order seeks for the remainder of the case are commonplace in misappropriation litigation such as this case. The protections and obligations also center on the rights that UL has to secure and protect its and its customers' internal business information, especially in the extraordinary case like this one where Defendant Joshua Callington ("Callington") systematically and covertly took possession of—and still possesses—huge

4865-0795-6473.3 / 118575-1072

volumes of UL's and its customers' confidential documents and information without UL's knowledge or approval.

Callington and his counsel have offered no principled argument as to why UL's proposed Confidentiality Order should not be entered. Instead, they have characterized UL's concerns as "pointless litigation" and baldly accused UL of "seeking to silence [Callington] about what he experienced and observed throughout his employment with UL." (*See* November 13, 2024 Cole email, attached as part of **Group Exhibit 2**.) Callington's rhetoric is quite remarkable given that the driving force of this lawsuit is Callington's stubborn refusal to simply return documents and information that belong to UL and its customers and which he admittedly now possesses despite having no authorization or permission to do so.

Callington claims that he is "happy to enter into a stipulation" regarding "legitimate trade secrets that [UL] wishes to protect from disclosure" and that Callington supposedly wants UL to help him "by being more specific about the scope and substance of what UL is seeking to protect from its competitors." (*Id.*) ("help *us* help *you* . . . .") (emphasis in original). The proposed Confidentiality Order that UL proposes for entry will achieve those ***exact objectives***, yet for reasons that he has never explained, Callington refused to even comment on the draft order that UL sent to him for review on November 12, 2024. Further confusing Callington's self-described "crystal clear" position is the fact that his attorney stated on November 12, 2024 that she was willing to discuss "the propriety of confidentiality designations . . . in the future" but has elected not to do so (despite the Court's directive).

UL has proposed a confidentiality order that would provide it with sufficient protections against unfettered dissemination of the materials now in Callington's possession. UL respectfully submits the Order should be entered without delay.

2

**FACTUAL BACKGROUND**

UL filed its complaint in this case on July 3, 2024. (ECF No. 1.) UL then emailed the attorney that previously represented Callington to determine whether such attorney would accept service on Callington's behalf. That attorney stated that he represented Callington, agreed to accept service on his behalf, and a waiver of service was filed with the Court. (*See* ECF No. 2.) Under the Federal Rules of Civil Procedure, the initial responsive pleading deadline was set at September 9, 2024. (*Id.*)

At some point between July 10 and August 26, 2024, Callington parted ways with his initial attorney in this matter, and on August 26, Callington filed a motion for an extension of time to seek representation. (*See* ECF No. 4.) UL did not oppose Callington's request for additional time to secure representation, but it did seek interim protection in the form of a document preservation order and a non-use/non-disclosure order. (ECF No. 5.) Callington, who was then *pro se*, opposed the relief sought by UL. (ECF No. 6.)

The Court held an initial status conference in this matter on September 17, 2024. At that hearing, the Court ruled that it would grant UL's request for entry of a document preservation and non-disclosure order, but identified revisions to UL's proposed order that should be made. (ECF No. 12.) UL made the revisions that the Court requested and submitted a revised proposed order—which Callington continued to oppose. (ECF No. 14.)

A second status conference was held in this matter on October 24, 2024, and Callington's current attorney from Beverly PLLC appeared for the hearing. Continued discussion was had regarding the document preservation and non-disclosure order sought by UL, and the Court made the following ruling:

3

> [T]he interim document preservation non-disclosure order will be entered. . . . This is an interim order intended to maintain the status quo while counsel discuss the terms of an order to remain in place for the duration of the case.

(ECF No. 16.) The Interim Document Preservation and Non-Disclosure Order was entered on October 24, 2024. (ECF No. 17.)

On November 6, 2024, at Callington's request, the Court set the responsive pleading deadline as January 6, 2025. (ECF No. 21.)

## **MEET AND CONFER EFFORTS**

As discussed during the Status Conference on November 6, 2024, the Parties met and conferred in attempt to reach an agreement on a stipulated confidentiality order on November 1, 2024. On November 11, 2024, Callington's attorney emailed UL's counsel requesting an update on the list of trade secrets in Callington's possession. In response, counsel for UL sent a draft confidentiality order including a provision allowing UL to review the materials in Callington's possession and make confidentiality designations if needed. (*See* 11/12/24 Kienzler email, Group Exhibit 2.) UL's counsel explained that this would be an efficient way forward and requested to discuss via telephone. (*Id.*) Callington's attorney responded indicating her belief that a bulleted list of trade secret materials should be provided, and asked, if UL would not send the list, whether the parties were at an impasse. UL's counsel suggested a call would be more productive than emails and indicated that there was no assumed impasse.

Callington's attorney responded by email on November 13, 2024 to outline in supposedly "crystal clear" fashion what his position is. (*See* Group Exhibit 2.)

4

## **ARGUMENT**

During his employment with UL, Callington: (i) transferred more than 20,000 emails and attachments from his UL company email account to various personal email accounts by adding his personal email accounts as "bcc" recipients of company emails he sent and by forwarding company emails he received to his personal email accounts; (ii) copied more than 56,000 UL files to a personal Dropbox account; and (iii) took and retained photographs taken during company audits. (Complaint ¶¶ 50-52.) Between September and December 2023, Callington provided information over which he had taken personal possession to a *New York Times* reporter. (*Id*. ¶¶ 53-63.)

After an article concerning the social responsibility auditing industry, and mentioning both UL and Callington, was published on December 28, 2023, UL opened an investigation into whether Callington has provided the *New York Times* with confidential information in violation of UL contracts or policies. (*Id*. ¶ 64.) During that investigation, Callington was asked on multiple occasions to relinquish possession of his UL laptop. He delayed returning the device and deleted information from the device prior to finally doing so. (*Id*. ¶ 66.) Callington also refused UL's request to return the information that was admittedly in his possession (and which had come to his possession through the above-referenced misuse of company email and personal Dropbox accounts.) (*Id*. ¶ 69.) Rather than returning the information, Callington brazenly declared that there was "no reason to provide any such documents at this time." (*Id*.) Thus, to date, UL has not received all of the documents and information that Callington has admitted he has in his possession. (*Id*.)

Callington's actions have turned the normal processes that are associated with the exchange of documents during litigation on their heads. Indeed, in the "ordinary course" of

5

litigation and had Callington requested the production of documents from UL rather than simply taken them without permission or authority, UL would have been afforded an opportunity to seek a protective order prior to making a production to Callington.

The question presented by this motion, and in this case, is whether UL should be stripped of its basic and well-settled right to seek to designate certain *of its own documents* as confidential simply because Callington took its information, and that of its customers, without UL's knowledge or approval, and in violation of company policies. The obvious answer is "no."

Thus, **as this Court has already recognized**, a confidentiality order is warranted and appropriate to give UL the rights that it would have had—and should have had—in the ordinary course of litigation. Stated differently, the relief UL seeks is actually very limited and discrete and is solely a recognition that it should be afforded the right to (i) review the documents that Callington possesses as a result of actions he took during his UL employment and (ii) make good faith confidentiality designations if warranted. The Confidentiality Order that UL proposes provides Callington the ability to challenge those designations, and, in fact, places the burden on UL to justify the designations in any challenge process. UL's request is reasonable, appropriate and will lead to certainty about Callington's disclosure rights and obligations throughout the remainder of this case.

## I. Relevant Legal Standards That Support the Entry of a Confidentiality Order

Federal Rule of Civil Procedure 26(c) allows a court to enter protective orders for a variety of reasons, including to (i) specify terms for disclosure or discovery and/or (ii) to require that a "trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See* Rule 26(c)(1)(B) & (G). This judicial district, consistent with these non-controversial concepts, has adopted and published a "model"

4865-0795-6473.3 / 118575-1072

confidentiality order for use under appropriate circumstances. That "model" order recognizes that discovery in many cases can involve information that "confidential information" that should not be freely disseminated by a receiving party. Thus, the "model" order suggests that a producing party, in an appropriate case, be permitted to designate documents produced in discovery as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" if they fall into seven categories (or others that can be added, if appropriate). Among the categories identified in the "model" order are: (i) information prohibited from disclosure by statute; (ii) information that reveals trade secrets; and (iii) research, technical, commercial or financial information that a party has maintained as confidential. (*See* Model Confidentiality Order, attached as **Exhibit 3**, ¶ 2.)

## II. Well-Settled Principles Ensconced in Federal Law and the Federal Rules of Civil Procedure Will Provide UL Relief That Is Warranted and Appropriate

Contrary to what Callington seems to believe, he has no right to keep UL in the dark about the documents that he admits he possesses, especially since such documents only came to be in his possession as a result of clandestine actions taken during his employment. Moreover, even assuming his assertion that this is a complex case that will someday involve multiple affirmative defenses and/or counterclaims is accurate, basic and longstanding principles of the Federal Rules of Civil Procedure set forth the procedure that should be used to provide certainty about Callington's disclosure rights and obligations.

As a general rule, "parties to a suit may disseminate materials obtained during discovery as they see fit." *Viramontes v. City of Chicago*, No. 13 C 6251, 2014 WL 12775316, at *1 (N.D. Ill. June 2, 2014.) However, the use of confidentiality designations during discovery has become so commonplace in litigation that this judicial district drafted a "model" confidentiality order to establish acceptable deviations from the general rule. (*See* Exhibit 2.)

Callington has suggested that UL has "continually resisted" his request to "identify the specific substance and subject matter of that information which UL contends is a protected trade secret." Leaving aside the fact that UL is actually proposing through its Confidentiality Order to do exactly that, the Court should not lose sight of the fact that the only pleading in this case is UL's Complaint, and the Complaint advances well-pled allegations that establish that certain information in Callington's possession are legally protected trade secrets as well as information that was provided to UL under the terms of non-disclosure agreements between UL and customers. Examples of the alleged trade secrets in Callington's possession are identified in Paragraph 79 and, among other reasons, these documents and information have gained their trade secret protection because they are compilations of information from which UL gains economic value and a competitive advantage over its competitors. *See, e.g., loandepot.com, LLC v. Schneider*, 647 F.Supp.3d 620, 629 (N.D. Ill. 2022) (in DTSA case, preliminary injunction entered to protect trade secrets from dissemination; court found that compilations of information that employees downloaded and took with them after resigning their employment were likely to be found trade secrets even though certain components of reports might, in isolation, be publicly available).

Callington was provided the citation to *Schneider* on November 12, 2024 and given insight into the underlying logic of UL's trade secret theories. (*See* Group Exhibit 2.) Nonetheless, Callington has neither addressed *Schneider's* holding nor provide any explanation whatsoever as to why it would be reasonable for the Court on this preliminary record to wholesale dismiss UL's allegations and reject the notion that *Schneider* and its progeny even have the potential to offer relevant guidance to the Court. Remarkably, Callington's stance on the trade secret issues in this case comes at a stage of the proceeding when he has refused to provide

UL with copies of the information he admits is in his possession, which has prohibited UL from gaining a full understanding of the universe of documents Callington possesses.

The Court should, in effect, say "enough is enough" to Callington. The "model" confidentiality order that is approved for use in this judicial district contemplates that the owner of documents that reveal trade secrets should be afforded the initial right to designate such documents as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER." Similarly, the "model" confidentiality order contemplates that the owner of documents that contain commercial information that has been maintained as confidential should be afforded the right to designate such documents as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER." Callington is not now, and never was, the owner of any of the documents that he covertly took possession of during his employment with UL. UL is the owner of such documents.

All that UL requests at this stage of this proceeding is that it be afforded these basic rights to attempt to control unfettered dissemination of its own documents, which it neither voluntarily nor inadvertently produced to Callington. There is no reason why UL should be stripped of those rights, especially given that UL acknowledges that confidentiality designations must be made in good faith, will be subject to challenge, and will need to be justified in the event of a challenge. Proceeding in any other way makes no sense whatsoever. Moreover, both federal law and UL's proposed Confidentiality Order expressly contemplate that Callington will be able to use the UL documents in his possession, even if they are designated as confidential and do reveal trade secrets, to support causes of actions against UL he believes to possess—provided that he discloses such information consistent with federal law. *See, e.g.*, 18 U.S.C. § 1833; Exhibit 1 ¶¶ 5(a), 5(b)(10).

9

Through its request for the entry of a confidentiality order, UL is **not** seeking an immediate return of documents that Callington apparently thinks support causes of action against UL. UL is also **not** seeking to deprive Callington of the ability advance causes of action he believes he possesses. And UL is **not** seeking to "silence" Callington or deprive him of and constitutional or statutory rights he may have. Instead, UL seeks entry of an order that recognizes that UL should simply be given the right to review the documents and information that Callington took possession of during his employment so that it can make confidentiality designations that it deems appropriate and warranted and take steps to prevent the unfettered dissemination of its own documents and confidential business information. UL's proposal is more than reasonable under the circumstances of this case and is entirely warranted and appropriate given the unique circumstances presented in this matter.

## CONCLUSION

The basic structure of UL's proposed Confidentiality Order comes from the "model" confidentiality order that this judicial district has approved for use in appropriate circumstances. The deviations from the "model" that UL proposes in this case are modest, warranted under the circumstances of this case, and designed to give both parties—UL and Callington—certainty over their disclosure rights and obligations throughout the remainder of this case. Callington has advanced no principled opposition to its entry and the Court should enter UL's proposed Confidentiality Order without delay.

Dated: November 15, 2024                    Respectfully submitted,

                                                                                            **UL LLC**

                                                                                            By: /s/ Richard T. Kienzler
                                                                                                    One of its attorneys

                                                                                            Richard T. Kienzler

4865-0795-6473.3 / 118575-1072

        Littler Mendelson, P.C.
        321 North Clark Street, Suite 1100
        Chicago, IL 60654
        Phone: 312.372.5520
        Email: rkienzler@littler.com

        Kevin Griffith (*pro hac vice*)
        Emily Levy (*pro hac vice*)
        Littler Mendelson, P.C.
        41 South High Street, Suite 3250
        Columbus, OH 43215
        Telephone: 614.463.4206
        Emails: kgriffith@littler.com
                elevy@littler.com

4865-0795-6473.3 / 118575-1072

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the date shown below he caused a copy of the foregoing document to be filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois and served electronically on all counsel of record through the Court's filing system.

Dated: November 15, 2024            /s/ Richard T. Kienzler