<pre>
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   UL LLC,                          )
                                      )
 4              Plaintiff,            )
                                      )
 5         vs.                        ) No. 24 CV 5631
                                      )
 6   JOSHUA CALLINGTON,               ) Chicago, Illinois
                                      ) September 17, 2024
 7              Defendant.            ) 9:13 a.m.

 8        TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING

 9              BEFORE THE HONORABLE ANDREA R. WOOD

10   APPEARANCES:

11   For the Plaintiff:    LITTLER MENDELSON, P.C.
                           BY:  MR. RICHARD T. KIENZLER
12                              MR. KEVIN E. GRIFFITH
                           321 North Clark Street, Suite 1100
13                         Chicago, Illinois 60654

14   For the Defendant:    MR. JOSHUA CALLINGTON, Pro Se
                           205 South Higley Road, Lot 213
15                         Mesa, Arizona  85206

16

17

18

19

20

21

22
     Court Reporter:       Brenda S. Varney, CSR, RMR, CRR
23                         Official Court Reporter
                           219 South Dearborn Street, Suite 2144D
24                         Chicago, Illinois 60604
                           (312) 554-8931
25                         brenda_varney@ilnd.uscourts.gov
</pre>

1      (Proceedings heard via telephone:)

2          THE CLERK:  Calling the next case, 24 CV 5631, UL,

3    LLC versus Callington, for status.

4          MR. KIENZLER:  Good morning, Your Honor.  This is

09:13:06    5    Richard Kienzler for plaintiff.  I'm joined on the line by my

6    colleague Kevin Griffith.

7          MR. CALLINGTON:  And this is Joshua Callington, the

8    pro se defendant.

9          THE COURT:  Thank you.

09:13:25    10         Okay.  So, Mr. Callington, you have asked for a

11   pretty substantial amount of time to find an attorney before

12   you have to answer the case.  Your answer was actually due on

13   September 9th.  You have asked for an extension until

14   approximately December 5th.

09:13:57    15         Are you looking for an attorney?

16         MR. CALLINGTON:  I'm actively very diligently looking

17   for an attorney, yeah.

18         THE COURT:  And plaintiff's counsel indicated that

19   there was somebody in the past that they spoke with on your

09:14:17    20   behalf.  In fact, they believed that they had an agreement for

21   a waiver of service.

22         Did you have an attorney representing you in the

23   past?

24         MR. CALLINGTON:  In the initial stages of this, not

09:14:34    25   related to the current filing, yes.

1          THE COURT:  But those attorneys have, for whatever

2     reason, indicated that they will not be representing you going

3     forward?

4          MR. CALLINGTON:  That's correct.

09:14:49    5          THE COURT:  And how did you come up with the 90-day

6     time period that you're asking for?  Why do you think that's a

7     reasonable amount of time for you to find an attorney to

8     represent you in this matter?

9          MR. CALLINGTON:  Given the amount of time that I've

09:15:07   10     invested already in attempting to find counsel, it seems

11     commensurate with the responses that I've received.

12          THE COURT:  Okay.  On the plaintiff's side of things,

13     Mr. Kienzler, I'll start with you.  From your response to

14     defendant's motion, it doesn't seem that you really object to

09:15:39   15     the 90-day extension.  You're more concerned about a document

16     preservation order and other steps being taken to prevent any

17     prejudice to your client during that period.

18          Is that a fair understanding of your position?

19          MR. KIENZLER:  Judge, I would agree with that.

09:15:58   20          I guess what we've proposed in our response to the

21     motion is it is, in general, we encourage Mr. Callington to

22     find representation.

23          As we mentioned, we spoke with a lawyer.  That lawyer

24     signed a waiver of service at the outset of the case.  And I

09:16:19   25     have no reason to dispute that, you know, the lawyer's no

4

1    longer representing him, and I don't know the circumstances.

2    So we're hopeful that he finds representation in the case.

3         I guess our position is that we would prefer to have

4    some more frequent communication from Mr. Callington to the

09:16:40    5    Court in terms of providing status updates on the search for

6    counsel.  I think 90 days without any updates on the progress

7    is a long time to just sort of sit around and wait for the

8    case to start, but, again, we would prefer that he finds

9    counsel and hope that he does.

09:17:05    10         Alongside that, given the allegations in the case,

11    given he's no longer represented, we are interested in getting

12    a document preservation order on file in the case, as we put

13    in our response to the motion.

14         THE COURT:  And you've submitted a proposed order

09:17:25    15    along those lines?

16         MR. KIENZLER:  That's correct, Your Honor.

17         THE COURT:  Your proposed order identifies the

18    information that would be subject to the document preservation

19    order as being all the information that belongs to UL or UL's

09:17:51    20    customers that is in his possession.  Do you feel that that

21    sufficiently describes the information that you're seeking to

22    protect?

23         MR. KIENZLER:  In the context of this case, I do,

24    Your Honor.

09:18:10    25         Mr. Callington -- this will become part of the case,

1    but Mr. Callington was subject to an investigation that was

2    conducted on behalf of UL by Sidley Austin, the law firm here

3    in Chicago.  It was handled by Chicago representatives of the

4    office.  There was significant -- I guess it's not formal

09:18:33    5    discovery, but there were significant document requests.

6         Mr. Callington was represented by a lawyer during

7    that investigation, and the information that we're seeking to

8    preserve and ultimately get returned to us and remediated from

9    Mr. Callington's possession as part of this case was a part of

09:18:56    10   that investigation.

11        THE COURT:  Okay.  And is it your concern that

12   Mr. Callington is using that information for his own financial

13   benefit?

14        MR. KIENZLER:  We have two concerns.  We are

09:19:17    15   concerned that we would like a court order to prevent further

16   use of the information for his own benefit or the benefit of

17   other third parties, and we'd also like the preservation order

18   to prevent any deletion or destruction of relevant evidence.

19        As we've put in the complaint, as part of that --

09:19:41    20   during that investigation, we believe that despite

21   instructions to preserve evidence, Mr. Callington engaged in

22   deletion of evidence as part of that Sidley investigation that

23   admittedly predated my involvement in this matter.

24        THE COURT:  Mr. Callington, do you understand what

09:20:09    25   evidence Mr. Kienzler is referring to?

1       MR. CALLINGTON: Do you advise that I respond to the

2  question without counsel?

3       THE COURT: Well, one, I can't advise you one way or

4  the other, Mr. Callington; but the situation that you are in

09:20:37  5  is that the time for you to respond to the complaint has

6  actually expired.

7       In a civil case, a defendant does not have a right to

8  counsel. As what we call a natural person, meaning a human

9  being as opposed to a corporation, you are able to represent

09:21:03  10  yourself. So, under these circumstances, you are in a

11  position of potentially being defaulted because you've missed

12  your deadline.

13       Now, you've asked for more time, and I'll probably

14  grant you more time; but at this stage, there is no basis, if

09:21:31  15  you are appearing in front of me pro se, to not answer the

16  question without counsel unless you are invoking Fifth

17  Amendment rights that you think answering the question would

18  somehow implicate you in a crime in which case you can assert

19  your Fifth Amendment rights, but it doesn't stop the

09:21:52  20  proceeding.

21       MR. CALLINGTON: Okay.

22       THE COURT: The question that's in front of me -- let

23  me try to be more clear about why I'm asking.

24       The plaintiff here is asking me to enter an order

09:22:09  25  that would prevent you from using or destroying any

1  information that you obtained from UL or their customers.  I'm

2  trying to decide whether I should enter that order.

3         They are concerned that you may destroy evidence in

4  this case.  I don't know if that's a realistic concern or if

09:22:41   5  they're overreaching so I'm asking you some questions so that

6  I can decide whether or not to enter this order.

7         MR. CALLINGTON:  What I would prefer that you do is

8  honor the second motion that I filed after their motion in

9  response to my request for additional time to honor their

09:23:04   10  request for the preservation of evidence but not the request

11  for the sharing of information.

12         And I can elaborate on that, if you'd like, but I

13  would prefer to have an attorney do the elaboration.  But if

14  you do intend to make a decision today, then I would like to

09:23:23   15  be heard.

16         THE COURT:  Okay.  So when you say your motion, so

17  this is your opposition that was filed -- I think it's Docket

18  Number 6.  And you asked that I not make a ruling on

19  plaintiff's request for a nonuse/nondisclosure order until you

09:23:49   20  have secured counsel, but I take it that you have no objection

21  to a document preservation order?

22         MR. CALLINGTON:  No, I don't.

23         THE COURT:  Does that mean that you --

24         MR. CALLINGTON:  The previous --

09:24:11   25         THE COURT:  Go ahead.

1    MR. CALLINGTON:  Maybe I shouldn't elaborate.  Go

2  ahead.

3    THE COURT:  Well, I was going to ask because do you

4  intend to use some of the information that they claim is their

09:24:36    5  information?

6    MR. CALLINGTON:  For the purposes of responding or

7  participating in government complaints regarding that

8  information, it may be necessary, yes.

9    THE COURT:  I see.  You're saying that you may have

09:24:50   10  an obligation to share the information?

11    MR. CALLINGTON:  As part of those investigations,

12  yes.

13    THE COURT:  Are you planning to use the information

14  for personal benefit, meaning for your own business or

09:25:14   15  financial interests?

16    MR. CALLINGTON:  No.

17    THE COURT:  Okay.  Mr. Kienzler, it sounds like

18  Mr. Callington believes that he may receive a request or

19  perhaps he already has received a request to share the

09:25:42   20  information that's the subject of your request with a

21  government agency of some sort.

22    Were you aware of that concern?

23    MR. KIENZLER:  No, Your Honor.

24    If I may, Your Honor, on behalf of the plaintiff, we

09:26:09   25  recognize that both the Defend Trade Secrets Act and the

09:26:39

1    Illinois Trade Secrets Act have statutory carveouts that

2    envision sharing of alleged trade secret information under

3    very narrow circumstances and that those circumstances include

4    the situation Mr. Callington just described.  So we

5    acknowledge that, as we have to.

6         I would just say we're not aware of any attempt or

7    actual use of our information or the information of our

8    customers by Mr. Callington that would fit the criteria of

9    those narrow circumstances to date in this case.

09:27:11

10         THE COURT:  So I'm thinking back to your complaint in

11    this case.  As I understand it, you have alleged that

12    Mr. Callington obtained confidential and trade secret

13    information during a time period when he was working for your

14    client as an independent contractor and/or as an employee; is

09:27:40

15    that correct?

16         MR. KIENZLER:  Correct, Your Honor.

17         THE COURT:  And, among other things, you believe that

18    Mr. Callington shared that information with a media outlet or

19    used that information as the basis for communication with a

09:28:03

20    media outlet; is that correct?

21         MR. KIENZLER:  Correct.

22         THE COURT:  And do you also believe that he used that

23    information for his own sort of business purposes?  In other

24    words, did he take the information in order to start a

09:28:30

25    competing business or to undermine your client's business?

1    MR. KIENZLER:  Well, we certainly believe that the

2  taking of the information was done as part of an effort to

3  undermine our business; but in terms of plans to use our

4  information in a competitive nature, I'm unaware of evidence

09:29:06    5  right now that would support that sort of interest for

6  Mr. Callington.

7    I guess what I mean to say, Judge, is we're not aware

8  of Mr. Callington taking and disclosing our information to

9  date in a way that would fit the definition that is allowed

09:29:29   10  under the DTSA or the Illinois equivalent; but part of what

11  we're hoping to do is to move this case into discovery so that

12  we can understand more of what Mr. Callington -- what his

13  intentions were and are.

14    He's referenced on this call this morning plans to

09:29:57   15  use the information, and I'm unaware of what those plans will

16  be or are.

17    THE COURT:  Well, I think he has referenced the

18  possibility of being asked to share information in connection

19  with a government investigation of some sort.

09:30:23   20    Are you concerned -- with respect to the

21  nondisclosure portion of what you are asking for -- so I'm

22  going to look back here at the proposed order that you

23  submitted along with your response to Mr. Callington's request

24  for an extension of time to answer the complaint.

09:30:54   25    You asked for an order that would prevent

Mr. Callington or any third parties acting in concert with

Mr. Callington from using and/or disclosing any documents or

information alleged to belong to UL and/or UL's customers that

is in their possession. I'm trying to figure out what that

would keep Mr. Callington from doing and whether that's a

reasonable order to enter.

I'm not sure what you're afraid of him doing with the

information. You don't want him to use it or disclose it.

Are you concerned about him sharing that information with

additional media outlets?

MR. KIENZLER: Yes, Your Honor.

THE COURT: Okay. But you're not concerned about him

using that information to start his own business in some way?

Obviously, your client doesn't want him to do that,

but your main focus is you want it to be clear that he's not

to share this information with either the media source that he

shared it with previously or any additional media source,

correct?

MR. KIENZLER: That is the concern, Your Honor, yes.

THE COURT: To the extent --

MR. GRIFFITH: If I could just ask --

THE COURT: I'm sorry. Who is speaking?

MR. GRIFFITH: I'm sorry. This is Kevin Griffith --

THE COURT: Thank you.

MR. GRIFFITH: -- for UL.

09:32:51

1    Also not to share it just over the internet so on

2    Facebook or some type of site like that, something that --

3    Mr. Callington has a GoFundMe page to try to attract

4    contributions to his legal defense, and we don't want him

5    sharing this kind of confidential information on a site like

6    that.

7    THE COURT:  To the extent Mr. Callington does receive

8    a request from any sort of law enforcement or investigative

9    agency that might call for the disclosure of information, are

09:33:27
10   you suggesting that I enter an order that would prevent him

11   from doing so?

12   MR. KIENZLER:  No, Your Honor.  So the answer is no.

13   We would not expect this Court to enter an order that

14   prohibits Mr. Callington from participating in a government

09:33:54
15   investigation.

16   We would expect, to the extent that happens -- and

17   again, we aren't aware of any such request that's been made of

18   Mr. Callington -- we would expect that any such disclosure of

19   information that's relevant to this case that's in his

09:34:11
20   possession would be disclosed to a government agency

21   consistent with the statutory provisions under the Defend

22   Trade Secrets Act and the Illinois Trade Secrets Act which, to

23   my knowledge, require efforts to maintain confidentiality.

24   THE COURT:  And the subject of this nondisclosure

09:34:38
25   order, again, if I were to look at your complaint, is there a

1 paragraph that describes in any degree of detail exactly what

2 that information is that he's not allowed to disclose

3 publicly?

4      MR. KIENZLER:  Your Honor, I'm flipping through the

09:35:16 5 complaint right now.

6      THE COURT:  We'll take a moment.

7    (Brief pause.)

8      THE COURT:  So I see, for example, on --

9      MR. KIENZLER:  Paragraph 79.  I'm sorry, Judge.  I

09:35:41 10 didn't mean to interrupt you.

11      THE COURT:  I was going to mention paragraph 50 which

12 talks about emails that I see here.  Okay, paragraph 79.

13 Okay.

14      Is there any other paragraph of the complaint that

09:35:59 15 refers to it?

16      MR. KIENZLER:  Ninety-four is similar to 79,

17 Your Honor.  It's essentially the same paragraph made in our

18 state equivalent cause of action.

19      THE COURT:  Okay.

09:36:33 20      MR. KIENZLER:  Fifty, 51, and 52 reference findings

21 made in the investigation.  And then 50, Defendant transferred

22 more than 20,000 emails and attachments through by blind -- by

23 bcc'ing them to himself.  51, Defendant copied more than

24 56,000 UL files to a personal Dropbox account.  52, Defendant

09:37:01 25 took photos and kept them on his personal phone with an iCloud

1    account.

2         THE COURT:  Thank you.

3         MR. KIENZLER:  Fifty-six, Defendant was asked to

4    return his company laptop.  Despite repeated requests,

09:37:24    5    defendant delayed the return of the device for two weeks and

6    in those two weeks deleted several categories of information

7    before returning it, including a personal Dropbox folder

8    containing documents he provided to the media outlet.

9         THE COURT:  Okay.  Thank you.  I'm satisfied.

09:37:45   10         What I'm going to suggest is that to the extent I do

11   grant some form of protective order here that might limit the

12   ability of Mr. Callington to share publicly or otherwise the

13   information that is the subject of the complaint, I will

14   likely ask you to submit a revised proposed order that

09:38:19   15   describes in greater specificity what that information is.

16   And you may reference the paragraphs of the complaint that

17   describe the subject matter.

18         MR. KIENZLER:  Very good, Your Honor.  And I take

19   your point.  I appreciate it.

09:38:36   20         THE COURT:  I would also ask that the revised order

21   include a carveout that would enable Mr. Callington to provide

22   information to a government agency consistent with the

23   carveouts to the Trade Secret Act that may be applicable

24   there.  To the extent that is Mr. Callington's concern, that's

09:39:13   25   appropriate.

1        There is also the possibility that he might be

2  subpoenaed for information in which case the order could

3  provide for him to notify the Court of any such subpoena so

4  that objections can be heard and resolved.

09:39:46    5        MR. CALLINGTON:  May I make an additional comment

6  before any ruling is made?

7        THE COURT:  Yes, Mr. Callington.  I was going to hear

8  from you further so I'm going to give you a chance to respond

9  to all of this.  Let me again provide you with a little bit of

09:40:03   10  explanation as to why I'm asking these questions and making

11  these requests.

12        An additional 90 days beyond the -- I guess it was a

13  60-day request that was made earlier, it's a little unclear to

14  me, frankly, whether there was a waiver of service that was, I

09:40:34   15  guess, agreed to.  I see one on the docket.  That appears to

16  be what established the September 9th date, that a counsel

17  that was representing Mr. Callington at the time agreed to

18  this waiver of service.  It looks like it's signed by

19  Mr. Leonard.  I'm familiar with Mr. Leonard.  So that

09:40:58   20  established the September 9th date.  So that's already an

21  extension beyond the 21 days that someone normally has to

22  respond to a complaint.

23        So, Mr. Callington, by asking for an additional

24  90 days after that, that's a very long extension.  It strikes

09:41:21   25  me as reasonable in a case such as this for the plaintiff to

1    ask for some sort of interim relief to make sure that the

2    subject matter of the case is not continuing to be disclosed

3    if you're going to have, you know, basically 120 days longer

4    than normal to file an answer.

09:41:53    5        So I suppose a question I would put to you,

6    Mr. Callington, is:  Given that you're asking for so much time

7    before you would answer the complaint, is there any reason

8    that what plaintiffs are asking for is unreasonable?

9        MR. CALLINGTON:  My only interest in the information

09:42:12    10   is to protect myself as a bona fide whistleblower.  I don't

11   have any intention to use it for any commercial or business

12   purpose.  And it seems as though what I'm hearing them ask for

13   in addition to that preservation of evidence is a gag order.

14   And I have no objection against preserving the evidence, but

09:42:31    15   anything beyond that I believe it would be unwise to rule on

16   until after I have had the ability for counsel to make a

17   response on my behalf.

18       THE COURT:  Why do you think it is a gag order?  And

19   what do you mean by "gag order"?  How are you using that term?

09:42:50    20       MR. CALLINGTON:  That they're limiting my ability to

21   participate, for example, in that government investigation by

22   sharing relevant information of their wrongdoing.

23       THE COURT:  So I think what Mr. Wagener -- or not

24   Mr. Wagener -- sorry -- I'm back on my prior case --

09:43:12    25   Mr. Kienzler and Mr. Griffith were agreeing is that they would

1  revise the order so that it has a carveout that would make it

2  clear that the order doesn't keep from you speaking with law

3  enforcement.

4      I think their concern is whether you would post the

09:43:34  5  information online in some way or use the information to go to

6  a media outlet.  They are agreeing that it wouldn't be

7  appropriate to keep you from sharing it in response to a law

8  enforcement request.

9      Does that alleviate your concerns?

09:44:05  10      MR. CALLINGTON:  Again, without --

11      THE COURT:  Let me ask --

12      MR. CALLINGTON:  I believe that --

13      THE COURT:  Mr. Callington, I understand, and I

14  always encourage anybody who's being sued to find counsel.

09:44:18  15      MR. CALLINGTON:  I want to say --

16      THE COURT:  The difficulty here, Mr. Callington, is

17  it is well within the plaintiff's right to come to court and

18  to say, "We're concerned about this now."  They could file a

19  temporary restraining order.  They could file a request for a

09:44:34  20  preliminary injunction.  You know, there could be a court

21  hearing.  And there is no legal requirement for you to have an

22  attorney help you with these things.

23      The concern here is that you've asked for 90 days.

24  Somebody might look at that and say, "Oh, he wants 90 days so

09:44:58  25  that he can continue to distribute confidential information

1    before he has to answer to anything in court."

2         Ninety days is much longer than somebody would

3    normally have to respond to a complaint so it is a reasonable

4    request for them to say, "We're not going to oppose 90 days,

09:45:21    5    but we would like an order that protects the confidential

6    information."

7         If you want to argue "This information isn't

8    confidential" or "I should be able to share it," we can do

9    that, but you might have to have a court hearing a lot sooner

09:45:36    10    than 90 days.

11         MR. CALLINGTON:  I'd like to make those documents but

12    through the voice of counsel.  But for the current request,

13    could we postpone for two weeks and allow me to continue to

14    seek counsel and then circle back to this request at that time

09:45:56    15    if the 90 days is the concern that I'm having unfettered

16    ability to share this externally?

17         THE COURT:  Are you or do you want the ability to

18    share the information during that two-week period?

19         MR. CALLINGTON:  With law enforcement.  That is a

09:46:20    20    possibility, yeah.

21         THE COURT:  Okay.  With anybody other than law

22    enforcement?

23         MR. CALLINGTON:  No.

24         THE COURT:  Okay.  And so, Mr. Callington, I don't

09:46:53    25    think I have a pro se appearance on file for you.

1      You did file a motion, and it looks like you did that

2   through the online portal; is that correct?

3      MR. CALLINGTON:  Yes, that's correct, Your Honor.

4      THE COURT:  So, one, I'm going to direct you to file

09:47:17   5   a pro se appearance form because, again, we're past your

6   answer date.

7      It doesn't seem like you want to be defaulted.

8   Instead, you want to have an extension of time, but I do need

9   an appearance from you so that your rights are protected in

09:47:40  10   that respect that you have appeared, you've asked for more

11  time to find counsel.

12     You have an email address that's been provided.  I'm

13  going to assume that's a good email address.

14     You've been receiving -- well, let me ask this.  Have

09:47:58  15  you received copies of the orders in this case and the filings

16  in this case by email?

17     MR. CALLINGTON:  Yes, I have.

18     THE COURT:  Have they been coming from the court, or

19  have you received them from plaintiff's counsel?

09:48:12  20     MR. CALLINGTON:  Both.

21     THE COURT:  I'm looking because I don't see a pro se

22  appearance form so I'm not sure how you would be getting them

23  by email from the court, but I am going to direct that you

24  file a pro se appearance form to make sure that we have that

09:48:35  25  nailed down.

1          MR. CALLINGTON:  Okay.

2          THE COURT:  Second, based on what I've heard, I am

3     inclined to grant a short-term order that would require both

4     the preservation of any information as well as a nondisclosure

09:49:05   5     requirement with a carveout that clearly gives Mr. Callington

6     the ability to respond to requests for information from

7     federal, state, or other law enforcement organizations made

8     pursuant to applicable law.

9          So I'm going to ask plaintiff's counsel to revise

09:49:34   10    their proposed order to include that information and to send

11    your revised order first to Mr. Callington by email to see if

12    there is any request for an edit or modification that he would

13    like to make.

14         And then the parties should submit an order along

09:50:07   15    those lines to my proposed order email box with a copy also to

16    Laritza Arcos, my courtroom deputy, directly.  And I'd like

17    that to be submitted within 48 hours.  So that will be by --

18    we'll say by 5:00 p.m. on Thursday.

19         I do intend to grant such a request so I am going to

09:50:37   20    enter a preservation and nondisclosure order that includes a

21    carveout for requests for information from law enforcement.

22         This is going to be a temporary order until

23    Mr. Callington is able to find counsel to advise him on how to

24    proceed.

09:51:06   25         So what I'm going to do is rather than giving

1  Mr. Callington a blanket 90 days to answer and then not

2  talking to the parties again for 90 days, I'm going to have a

3  status date in 30 days.  We'll have another telephone call in

4  30 days.

09:51:28  5  And, Mr. Callington, at that time, you can let me

6  know whether you've had any success in finding an attorney.

7  Ultimately, if it takes you 30, 60 days to find an attorney,

8  that's going to be fine.  If we do get to 90 days, I will

9  entertain a request from plaintiff's counsel that you not be

09:51:55  10  given any additional time.  In fact, they can make that

11  request sooner than 90 days, but I want to let you know that I

12  would think 90 days would be the outside limit.

13  So I will entertain a request from plaintiff's

14  counsel that no further time be given when we get to the

09:52:21  15  30-day mark or the 60-day mark or sometime up to that, but I'm

16  going to give you an opportunity to make a good faith effort

17  to find counsel before you have to respond to the complaint.

18  In the meantime, this document preservation and

19  nondisclosure order will be in place which I think provides

09:52:45  20  some protection for the plaintiff that in the meantime, you're

21  not going to use the extension as a way to avoid any sort of

22  restriction on your ability to share the information.

23  And, Mr. Callington, if something happens and you

24  feel you need to be able to share the information for some

09:53:07  25  other purpose, then you can make a request to have the order

1    modified.

2        So we'll set another 30-day status for a telephone

3    hearing.

4        Laritza, can you suggest a date and time?

09:53:29   5    THE CLERK:  Yes, Judge.  We can do October 23rd at

6    9:15.

7        THE COURT:  Does that work for plaintiff's counsel?

8        MR. KIENZLER:  Yes, Your Honor.

9        THE COURT:  Does that work for you, Mr. Callington?

09:53:39   10    MR. CALLINGTON:  Yes, Your Honor.

11        THE COURT:  Okay.  And so that will be the next time

12    we have a status hearing.  In the meantime, in the next

13    48 hours, plaintiff's counsel will draft a revised order.

14    That will be a proposed document preservation and

09:54:02   15    nondisclosure order consistent with what we've discussed on

16    the record.  They will send their proposed order to

17    Mr. Callington.  He will promptly indicate whether he has any

18    requested revisions.  And then plaintiff's counsel, with

19    Mr. Callington's email copied, will send the revised proposed

09:54:28   20    order to my proposed order email box with a copy to Ms. Arcos.

21        In the meantime, Mr. Callington, do not post publicly

22    on any social media or other internet source or provide to

23    anybody other than in a response from a law enforcement agency

24    any of the covered information.  In other words, don't use

09:55:00   25    this 48-hour period as a time frame to go out and distribute

1   things that you know you're not going to be able to distribute

2   once the order is entered.  I would consider that bad faith.

3   I would consider that potentially contempt of court.  I don't

4   want you to do that.

09:55:24    5       We'll get the order entered.  And then,

6   Mr. Callington, I advise you to move as quickly as possible to

7   find counsel to represent you, and we'll go from there.

8   Hopefully, there will be a counsel in the case on your behalf

9   in time for the next status hearing.  If not, you can let me

09:55:44   10   know how things stand.

11       Are there any questions, Mr. Callington?

12       MR. CALLINGTON:  No.  Thank you.

13       THE COURT:  Any issue from plaintiff's counsel?

14       MR. KIENZLER:  No, Your Honor.  We appreciate your

09:56:00   15   time this morning.

16       THE COURT:  Okay.  And then the last thing I'll say,

17   Mr. Callington, is that this interim confidentiality order,

18   which is really what it is, is a way of maintaining the status

19   quo to allow you the additional time that you want in order to

09:56:22   20   have an attorney.  This is not a decision on my part that the

21   plaintiffs are right or you're wrong or vice versa.  This is

22   just a way of maintaining the status quo to give you time.

23       If there is something that you need to do over the

24   next few weeks that you feel you should be able to do but you

09:56:45   25   can't do because of the protective order or this interim

1 order, you can file a motion and ask for permission to do

2 whatever it is, or if you have an attorney, your attorney can

3 do that.

4    So this isn't a ruling on the merits that I think the

09:57:04   5 plaintiff has a good case. I have no opinion on any of that.

6 I just am trying to find a reasonable compromise here that

7 gives you the opportunity to find an attorney before you have

8 to respond to the substance of their complaint.

9    Okay? Do you understand all of that?

09:57:25   10    MR. CALLINGTON: I understand that. And just to

11 underscore it, the word "interim" refers to the fact that once

12 I have counsel, this can be rediscussed and redecided at that

13 time?

14    THE COURT: Absolutely.

09:57:43   15    MR. CALLINGTON: Perfect.

16    THE COURT: And frankly --

17    MR. CALLINGTON: Thank you very much.

18    THE COURT: -- Mr. Callington, if you wanted to raise

19 the issue before then, you could do that as well; but I

09:57:51   20 understand your primary concern is that you want to talk about

21 this with a lawyer instead of making all these decisions on

22 your own. I understand that. I think that's a reasonable

23 desire, but I do also have to balance that with the fact that

24 the plaintiffs are entitled to ask for relief on a faster

09:58:14   25 basis than that.

1          MR. CALLINGTON:  Understood.

2          THE COURT:  Okay.  Thank you all for your time.

3          MR. KIENZLER:  Thank you, Your Honor.

4          MR. CALLINGTON:  Good day.

5       (Proceedings adjourned at 9:58 a.m.)

6                    *   *   *   *   *   *

7                 C E R T I F I C A T E

8

9          I, Brenda S. Varney, certify that the foregoing is a

10   complete, true, and accurate transcript from the record of

11   proceedings on September 17, 2024, before the HONORABLE

12   ANDREA R. WOOD in the above-entitled matter.

13

14

15   */s/Brenda S. Varney, CSR, RMR, CRR*         November 22, 2024

16   Official Court Reporter                Date
     United States District Court
17   Northern District of Illinois
     Eastern Division

18

19

20

21

22

23

24

25