**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UL LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSHUA CALLINGTON,<br><br>    Defendant. | No. 1:24-cv-05631 |

**MEMORANDUM OPPOSITION TO DEFENDANT'S MOTION TO DISSOLVE INTERIM PROTECTIVE ORDER**

Plaintiff UL LLC ("UL") respectfully submits this Memorandum in Opposition to Defendant Joshua Callington's ("Callington") Motion to Dissolve Interim Protective Order ("Callington's Motion to Dissolve") (ECF No. 23).

Although Callington has requested the Court dissolve the Interim Document Preservation and Non-Disclosure Order (ECF No. 17) (the "Interim Order") or replace it with a less restrictive order, UL's counsel has both communicated to Callington's counsel and to this Court that UL is ***not*** seeking for the Interim Order to remain in place. Rather, and as the Court requested during the parties' last hearing, UL has proposed alternative language for a long-term confidentiality order to supersede the Interim Order and remain in place for the duration of this case. UL's counsel believes its proposal—which contains common language and provisions in misappropriation cases such as this—balances the parties' rights and obligations in order to achieve both parties' goals. Further, through the pendency of all discussions between counsel and during Court conferences, UL has never suggested that Callington can or should be "silenced" or "gagged," nor is UL seeking to do so. UL's main goal is to ensure that UL's and its customers confidential documents and information, which are in Callington's possession, are and will

remain protected from any further unlawful misuse and disclosure, including pursuant to his confidentiality agreement with UL and applicable federal and state laws.

Callington's Motion to Dissolve not only misconstrues UL's position, it is also inconsistent with the Court's instructions to discuss and attempt to agree upon a confidentiality order "to remain in place for the duration of the case." (ECF No. 16). Callington's counsel has failed to even comment on the draft order UL's counsel forwarded and has not made any alternative proposal. In addition, Callington's Motion to Dissolve contains a dissertation of the purported facts, as he sees them, with which UL strongly disagrees. UL will appropriately respond to any responsive pleadings filed by Callington pursuant to UL's obligations under the Federal Rules of Civil Procedure, local rules, and any scheduling order issued by the Court. Therefore, UL respectfully requests that the Court deny Callington's Motion to Dissolve and, instead, enter UL's proposed Confidentiality Order without further delay.

**I.      LAW AND ARGUMENT**

**A.  <u>UL Has Not Claimed and Is Not Claiming Everything Is a Trade Secret.</u>**

In his Motion to Dissolve, Callington claims that "UL conveniently defines [trade secrets] as a 'compilation' of information that includes, basically, everything that Mr. Callington did, said, touched, observed, and/or experienced, over the course of nearly a decade working at the company." (Callington's Mot. to Dissolve, ECF No. 23, PageID# 180). UL has never suggested that "everything" Callington did, said, touched, observed, and/or experienced during his UL employment is a trade secret, because such a position would be untenable.

Callington's apparent opposition to UL's inclusion of "compilations of information" in the definition of trade secrets, is ill-informed. It is a well-settled concept that a "compilation of information" can transform what would independently be seemingly innocuous information into

2

a trade secret. *See, e.g., loandepot.com, LLC v. Schneider*, 647 F. Supp. 3d 620, 629 (N.D. Ill. 2022) (in this DTSA case, the Court issued a preliminary injunction to protect trade secrets from dissemination; the Court found that compilations of information that employees downloaded and took with them after resigning their employment were likely to be found trade secrets even though certain components of reports might, in isolation, be publicly available). Indeed, the federal trade secret statute expressly includes "compilations" in its definition of "trade secrets". *See* 18 U.S.C. §1839(3)(emphasis added)(the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, **compilations**, . . . processes, procedures whether tangible or intangible, and whether or how stored . . . . The Illinois Trade Secret Act also provides a similar definition of trade secrets. *See* 765 ILCS 1065/2(d)(including a "compilation" within definition of "trade secret").

      Callington and his counsel have not provided a substantive response to counter this well-established definition of a trade secret, nor cited to any contrary legal authority. The Court should reject Callington's bald assertion that UL intends to stretch the term "compilation" into "basically, everything that Mr. Callington did, said, touched, observed, and/or experienced, over the course of nearly a decade working at the company."

      But all of this is beside the point; the issue before the Court is whether UL is entitled to designate its or its customers documents as "confidential" during the pendency of this litigation, as any other litigant would be able to do. UL's proposed order provides a routinely used process for UL to protect this information and allows for Callington to challenge individual designations. UL's proposed order should be entered.

B. **The Interim Order and UL's Proposed Confidentiality Order Do Not Curtail Callington's Ability to "Advocate for Himself" or "Speak Out Against UL."**

Callington continues baselessly to assert that the Interim Order and UL's proposed Confidentiality Order restrict Callington's ability to speak about his employment. (*See* Callington's Mot. to Dissolve, ECF No. 23, PageID# 180-181, 182). During the status conference on October 24, 2024, the Court and counsel for UL clarified, more than once, how the Interim Order and any permanent order would neither restrict Callington's right to speak, nor constitute a "gag order." As is set forth in the transcript of the Court's October 24, 2024 Status Conference:

> The Court: So this is protecting the actual information and documents. **It is not a gag order. It's not saying that he [Callington] can't speak**. It also has specific provisions allowing for the production of information to a government agency, et cetera. So I'd like to get something in place.
>
> …
>
> Ms. Cole: . . . So to the extent that the order would simply memorialize [Callington's] existing legal obligations and duties under the DTS [sic] and other contractual obligations, we have no objection to the order; however, to the extent that, you know, it restrains his ability to engage in protected conduct under various whistleblower statutes, under anti-SLAPP statutes, and under the First Amendment, we would just note our objection to that.
>
> The Court: So I believe the order just has to do with actual documents and information that are alleged to have been taken by him. **It does not restrict his speech. It reflects concerns about the disclosure and further dissemination of actual documents, records, emails, things of that nature**. Am I recalling that correctly, Mr. Kienzler?
>
> Mr. Kienzler: That's correct, Your Honor.

(*See* October 24, 2024 Status Conference Tr., attached as Exhibit 1, pp. 9:20-24, 10:16-23, 10: 25-11:5, 11:6) (emphasis added). Further, in its Motion for Entry of Confidentiality Order, UL expressly stated: "And UL is **not** seeking to 'silence' Callington or deprive him of any

4

constitutional or statutory rights he may have." (Pl. Mot. for Entry of Confidentiality Order, ECF No. 22, PageID# 131) (emphasis in the original).

In short, it cannot be more explicitly stated that UL is not seeking to restrict Callington's speech; rather, UL's proposed Confidentiality Order seeks only to curb further distribution and disclosure of documents, records, emails, and other electronic documents and information containing UL's and its customers' confidential business information and trade secrets. (*See* Pl.'s Proposed Confidentiality Order, ECF No. 22-1, PageID# 134-135 (defining documents as: "(i) emails and attachments that Callington allegedly took possession of by sending from his UL business email account to any personal email account, including those on the @callington.net domain; (ii) documents that Callington allegedly took possession of by utilizing a personal Dropbox account; and (iii) audit-related photos that Callington took on his personal telephone as part of his work for UL and then synced to his personal iCloud account.")). Therefore, Callington's continued assertion that UL is attempting to "silence" him is not only misplaced, but has already been dispelled, on more than one occasion.

C. **The Pendency of a Motion for Preliminary Injunction Has No Bearing on the Propriety of Confidentiality Designations on Documents**

Callington also argues that, if UL believes its entitled to enjoin Callington's conduct to protect its trade secrets, it should seek a preliminary injunction. (*See* Callington's Mot. to Dissolve, ECF No. 23, PageID# 182). However, UL's decision whether or not to seek a preliminary injunction has no bearing on whether UL documents that are in Callington's possession are deserving of confidentiality designations, if appropriate. In his Motion to Dissolve, Callington cites no case law providing that a court cannot issue a confidentiality order in the absence of a pending motion for a preliminary injunction. Instead, Callington relies on a case where a party sought a preliminary injunction and was denied, albeit on facts that are starkly

5

different than this matter. Indeed, in *Creative Financial Staffing LLC v. Kubacki*, the Court found, among other things, "[n]o evidence indicat[ing] that [the former employee] retain[ed] access to any [company]-owned account or duplicates of those contents." *See* No. 22 C 488, 2023 WL 1818560, at *2 (N.D. Ill. Feb. 8, 2023). However, *unlike* in *Creative Financial Staffing LLC*, Callington over time transferred over 70,000 UL documents to his possession, has admitted to continued possession of UL documents, and has refused to return UL documents.

In its Motion for Entry of Confidentiality Order, UL is simply asking for a confidentiality order to designate certain of its own documents as "confidential," which the Court has already determined was warranted, based, in part, on the information Callington conveyed to the Court during the September 17, 2024 status conference and the information presented by Ms. Cole during the October 24, 2024 status conference, including, for example:

> The Court: I'm going to [enter the order] because **I was left with the distinct impression at the last status hearing that Mr. Callington was a risk to disclose information on his own for his own motives**, and I do think it makes sense to have something in place.
>
> …
>
> The Court: Ms. Cole, **are you in a position to assure me that your client is not going to further disseminate any documents or information that he is alleged to have taken improperly from the plaintiff**?
>
> Ms. Cole: **He certainly will not do so improperly**, and anything of that nature that he would be doing would be on the advice of counsel and under counsel's supervision. ….

(October 24, 2024 Status Conference Tr., 8:11-15, 12:1-7) (emphasis added). As such, there should be no dispute as to whether a confidentiality order is appropriate in this matter.

6

### D. UL's Proposed Order Provides Callington Exactly What He Is Requesting: A Replacement Order that is Less Restrictive than The Interim Order.

Finally, Callington's Motion to Dissolve requests dissolving of the interim order ***or a replacement order that is less restrictive***. The draft order UL proposed to the Court is just that: a less restrictive order that would allow UL to (i) review the documents in Callington's possession and (ii) make good faith confidentiality designations if warranted. UL's Proposed Confidentiality Order also affords Callington the ability to challenge confidentiality designations and places the burden on UL to justify the designations should Callington raise any challenges. UL's Proposed Confidentiality Order is reasonable, appropriate, and provides certainty to both UL and Callington about Callington's disclosure rights and obligations throughout the remainder of this case.

At bottom, rather than negotiating an appropriate confidentiality order, Callington prepared the Motion to Dissolve, containing no proposed revisions or draft language, and instead is filled with disputed assertions not yet supported by any responsive pleading, which UL disputes and will heavily contest if Callington includes them in his responsive pleading to UL's Complaint.

## II. CONCLUSION

For the foregoing reasons, Callington's Motion to Dissolve not only misconstrues UL's position, but also fails to account for the Court's rulings that a confidentiality order is appropriate in this case. Therefore, UL respectfully requests that the Court deny Callington's Motion to Dissolve and, instead, enter UL's proposed Confidentiality Order without delay.

Dated: November 25, 2024                                    Respectfully submitted:

                                                                                          **UL LLC**

                                                                                           By: /s/ *Richard T. Kienzler*

8

                                                  One of Plaintiff's Attorneys

Richard T. Kienzler
Littler Mendelson, P.C.
321 North Clark Street, Suite 1100
Chicago, IL 60654
Phone: 312.372.5520
Email: rkienzler@littler.com

Kevin Griffith (*pro hac vice*)
Emily Levy (*pro hac vice*)
Littler Mendelson, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Telephone: 614.463.4206
Emails: kgriffith@littler.com
        elevy@littler.com

4910-5098-5728.1 / 118575-1072

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the date shown below he caused a copy of the foregoing document to be filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois and served electronically on all counsel of record through the Court's filing system.

Dated: November 25, 2024 /s/ Richard T. Kienzler