IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UL LLC,<br><br>    *Plaintiff,*<br><br>-v-<br><br>JOSHUA CALLINGTON,<br><br>    *Defendant.* | Case No. 1:24-cv-05631<br>Hon. Andrea R. Wood |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S SPECIAL (ANTI-SLAPP) MOTION**

Dated:  March 19, 2025

BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036

*Counsel for Defendant, Joshua Callington*

**Table of Contents**

ARGUMENT ........................................................................................................1

    I.    UL fails to articulate a theory of the case that isn't necessarily premised on protected activity. ......................................2

    II.    UL has not and cannot substantiate any of its claims on the merits. ..................................................................................5

    III.    The case bears all the characteristic indicia of a strategic lawsuit against public participation. ................................................5

CONCLUSION...................................................................................................6

**ARGUMENT**

The immunity conferred by Oregon's anti-SLAPP statute applies to any "statement made … [or] document presented," in a "public forum" and "in connection with an issue of public interest," Or. Rev. Stat. § 31.150(2)(c). As explained in the principal briefing on this motion, Mr. Callington's communications and disclosures to the New York Times qualify as protected conduct under the plain text of that provision.[1] UL apparently concedes this much, or at least does not dispute the point in its opposition.

Instead, UL contends that its lawsuit stems from Mr. Callington's alleged "theft" of company documents "over a period of years," before he ever engaged in any protected activity. *See* Plaintiff UL LLC's Opposition Brief (CM/ECF No. 39) ("Opp.") at 1, 7-8 (Page ID # 309, 315-16) (arguing that "this case is about … [the] covert and unlawful theft of … documents from UL's computer system…[which] is not a protected activity under Oregon's anti-SLAPP statute."). From UL's perspective,

> [The] claims are not predicated on Callington speaking to a reporter. Rather, UL's claims are rooted in Callington's unauthorized transfer of thousands of UL's internal documents and ESI from UL's secured computer system to Callington's personal accounts, [which] is not … [a] protected activity.

Opp. 8 (Page ID # 316) (relying on *Deep Photonics Corp. v. LaChapelle*, 282 Or. App. 533, 546-547 (2016) for its distinction between claims that "arise out of" protected

---

[1] Mr. Callington's conduct also qualifies as protected conduct under the catch-all provision, which broadly covers "[a]ny other conduct" undertaken "in furtherance of" constitutionally protected "petition[ing]" activity or "free speech" on "public issue[s]" or "issue[s] of public interest." Or. Rev. Stat. § 31.150(2)(d).

1

activity and those which are merely "associated with" a protected act); *see also* Opp. 7 (Page ID # 315) ("UL's claims do not arise out of any protected activity but, instead, were triggered by Callington's unlawful and unapproved transfer and disclosure of UL's internal documents and ESI over a period of years.").

### I. UL fails to articulate a theory of the case that isn't necessarily premised on protected activity.

To be clear, UL's reformulation of the actionable conduct at issue in this case stems from Mr. Callington's allegedly "unapproved" transfer and disclosure of company documents *to himself*—by and through the routine use of cloud-based document management applications like Dropbox in the course of his employment with the company. *See* Compl. ¶ 2 (Page ID # 1) ("Defendant, without UL's knowledge or approval, transferred the internal documents and information outside of UL's secure computer system and into his own personal email, Dropbox and iCloud accounts."); *see also* Compl. ¶¶ 49-52 (Page ID #14-15) (referring to Mr. Callington's allegedly improper means of accessing work files and email from his iPhone).

This theory of the case fails for several reasons:

1. As an initial matter, UL's attempt to recharacterize its claims as deriving from "theft" as opposed to speech is inherently suspect, given the extent to which UL's complaint centers on Mr. Callington's "covert assistance to the New York Times and the resulting article." Compl. ¶¶ 47-63 (Page ID # 15-16). *See, e.g., CoreCivic, Inc. v. Candide Group, LLC,* 46 F.4th 1136, 1143 (9th Cir. 2022)*; Osundairo v. Geragos*, 447 F. Supp. 3d 727, 743 (N.D. Ill. 2020).

2. Even if reasonable minds could disagree about the focal point of that narrative—UL plainly attributes all of its alleged damages to the "negative impact" of the resulting article on "UL's reputation with its customers, in the industry, and within UL's own work force." Compl. ¶ 7, 8 (Page ID # 3). Mr. Callington is not accused of misusing or misappropriating company documents for any other allegedly improper purpose—aside from his protected statements and disclosures to the New York Times. And UL does not challenge the truth or accuracy of those statements, as would be necessary to recover reputational damages in a defamation action. Since the Complaint does not offer any alternative theory of liability or damage causation, all of UL's claims necessarily derive from protected activity—or are otherwise facially defective for failing to allege *any* actionable injury.

3. Moreover, the incendiary allegations surrounding Mr. Callington's allegedly "unapproved" use of Dropbox and other cloud-based software applications are neither actionable--nor true.

If the factual allegations relating to Mr. Callington's protected activity are stricken from the Complaint, all that is left is baseless accusations seeking to vilify Mr. Callington's routine adoption of ubiquitous cloud-based software and mobile applications that millions of American professionals use to access work-related emails and files across multiple devices. Absent some other credible allegation of misuse or misappropriation, these allegations do not give rise to any cognizable cause of action. and do not support a plausible inference that he engaged any "covert" plot to "steal" company documents (Opp. 2-3, 9).

3

In any event, UL's inflammatory narrative is demonstrably false. Mr. Callington's use of Dropbox was not covert or surreptitious, as UL insists. In fact, Mr. Callington and other UL employees openly used Dropbox and other cloud-based applications to manage workflows and carry out essential job functions throughout the course of his seven-year tenure at the company. Indeed, Mr. Callington would not even have been able to download Dropbox on his company-issued laptop, but-for the approval and assistance of its IT department, which must authorize the bypassing of default restrictions for the installation of any software program that isn't already pre-installed on company devices.[2]

Although Mr. Callington does not bear the evidentiary burden on this motion, the real-world consequences of these baseless allegations on his professional reputation compel him to do so—even if only for the purpose of countering the more easily refutable aspersions cast on his character. To that end, attached as <u>Exhibit A</u> is an assortment of email communications which demonstrate that Mr. Callington's use of Dropbox was wholly transparent, routine, unobjectionable, and consistent with his colleagues' use of the same software in their day-to-day job functions.

---

[2] To the extent that UL faults Mr. Callington for refusing to delete documents from his personal devices at the company's insistence, those allegations notably fail to acknowledge the circumstances surrounding that demand—which arose in the context of an investigation that was clearly adverse to Mr. Callington, and which he responded to in a manner consistent with the advice of his counsel. Accordingly, Mr. Callington's refusal to destroy evidence at UL's request was entirely reasonable and consistent with his document preservation obligations arising from the highly foreseeable risk of future litigation.

4

## II. UL has not and cannot substantiate any of its claims on the merits.

Meanwhile, UL has plainly failed to rebut Mr. Callington's prima facie showing of protected activity by satisfying its own evidentiary burden under the second prong of the relevant burden-shifting inquiry.

Instead, UL rests its laurels on boilerplate language about liberal pleading standards. *See* Opp. 9 (arguing that the motion "should … be denied under the second prong" because of the "low bar" for establishing some probability of prevailing on the merits); Opp. 10 ("at the pleading stage, a plaintiff 'can describe trade secret information in general terms.'").

However low that standard may be, UL fails to satisfy it by any measure. Despite having been given every opportunity to substantiate its claims, UL has continually refused to identify any trade secret that Mr. Callington allegedly possessed, either through misappropriation or otherwise.

Nor has it offered up any alternative theories of liability that would sustain any of its other causes of action, based on allegations that aren't necessarily premised on Mr. Callington's protected activities or baseless accusations surrounding his use of Dropbox and other ubiquitous cloud-based software applications.

## III. The case bears all the characteristic indicia of a strategic lawsuit against public participation.

Finally, UL's retaliatory lawsuit bears all the characteristic indicia of litigation which anti-SLAPP laws seek to prevent. The lawsuit was indisputably triggered by the publication of an article concerning the dubious nature of UL's social compliance audits, based on information derived from protected journalistic source

5

communications. The inflammatory narrative has successfully wreaked havoc on Mr. Callington's personal and professional interests—irrespective of the merits (or lack thereof)—and sends a clear message to other UL employees about the consequences of not towing the party line. And, as a result, Mr. Callington has been forced to bear the burden of defending himself in litigation against a far more powerful and well-resourced institutional adversary—all whilst facing the reality of reduced income and job prospects due to blacklisting effects of UL's reputational assault on his character. While not necessarily featured in the two-step burden shifting analysis, the practical consideration of these real-world consequences is wholly consistent with the purpose, intent, and policy goals anti-SLAPP law.

## CONCLUSION

For these reasons, Defendant respectfully requests an order granting his special motion and awarding attorneys' fees and costs as provided by statute.

Dated: March 19, 2025
New York, NY

By:    */s/ Agatha M. Cole*
       Agatha M. Cole
       BEVERLY PLLC
       43 West 43rd Street, Suite 159
       New York, NY 10036
       (828) 773-2628
       agatha@beverlypllc.com