# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **UL LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **JOSHUA CALLINGTON,** <br><br> Defendant. | Case No. 1:24-cv-05631 <br><br> Hon. Andrea R. Wood |

## PLAINTIFF UL LLC'S MEMORANDUM IN OPPOSITION TO WHISPeR'S MOTION FOR LEAVE TO FILE AMICUS BRIEF

Dated: May 5, 2025            Respectfully submitted:

                                         **UL LLC**

                                        By: /s/ *James Witz*
                                        One of Plaintiff's Attorneys

                                        James M. Witz
                                        LITTLER MENDELSON, P.C.
                                        321 North Clark Street, Suite 1100
                                        Chicago, IL 60654
                                        Telephone:   312.795.3246
                                        Facsimile:    312.277.9416
                                        E-mail:        jwitz@littler.com

                                        Kevin E. Griffith (*pro hac vice*)
                                        Emily E. Levy (*pro hac vice*)
                                        LITTLER MENDELSON, P.C.
                                        41 South High Street, Suite 3250
                                        Columbus, OH 43215
                                        Telephone:   614.463.4216
                                        Facsimile:    614.737.9135
                                        E-mails:      kgriffith@littler.com
                                                                            elevy@littler.com

4928-7441-7210.5 / 118575.1072

**MEMORANDUM IN OPPOSITION**

Plaintiff UL LLC ("UL") respectfully submits this Memorandum in Opposition ("MIO") to the Whistleblower and Source Protection Program's ("WHISPeR") Motion for Leave to File Amicus Brief. (WHISPeR's Motion, ECF No. 52). While WHISPeR's filing includes its Amicus Brief with the Motion for Leave attached at the end, in this MIO, UL refers to the Amicus Brief portion as "WHISPeR's Amicus Brief" and to the Motion for Leave as "WHISPeR's Motion for Leave." Collectively, they are referred to as "WHISPeR's Filing."

I. **INTRODUCTION**

The parties have fully briefed Callington's *Special Motion to Strike or Dismiss all Claims Pursuant to Anti-SLAPP Provisions of Oregon Law, Or. Rev. Stat. § 31.150* (Callington's "Anti-SLAPP Motion"), but consideration and ruling have been delayed by WHISPeR's Filing requesting to participate in this case. Callington's Anti-SLAPP Motion was filed on January 7, 2025.[1] UL's opposition brief was timely filed on February 13, 2025 (ECF No. 39), and Callington's reply brief was filed on March 20, 2025 (ECF No. 46). Per the parties' agreed-upon briefing schedule, the time to file a brief in response to or in support of Callington's Anti-SLAPP Motion has closed. (*See* Minute Orders, ECF Nos. 35, 36, and 43).

On April 10, 2025, over three months after Callington's Anti-SLAPP Motion was filed, the undersigned counsel received a request to file an amicus brief in support of Callington's Anti-SLAPP Motion. The email provided no purported need for the filing, nor did it attach a copy of the filing for counsel's consideration. For that reason, and for the reasons more fully set forth herein, UL's counsel declined to consent to the filing. (*See* WHISPeR's Mot. for Leave to File

---

[1] Callington filed two Motions to Dismiss/Motions to Strike under Oregon's Anti-SLAPP statute (ECF Nos. 29 and 31). For purposes of this Memorandum in Opposition, Callington's Anti-SLAPP Motion refers to the most recent version, ECF No. 31.

Amicus Brief, ECF No. 52, Page ID# 395-396). Specifically, UL's counsel advised WHISPeR's counsel that it does not consent to the filing because (1) the parties' have completed briefing on Callington's Anti-SLAPP Motion, (2) the Court has extensively conferred with counsel to hear the parties' respective positions and arguments on the motion, and (3) a considerable length of time has passed—approximately three months—since Callington's Anti-SLAPP Motion was filed, which has caused further delay in the discovery and adjudication on the merits. (*Id.*).

In short, WHISPeR's Filing will only interrupt and further delay a fair consideration of the pending motion, and further delay adjudication on the merits. Such further delay is notable, especially given Callington's counsel's repeated requests to resolve the pending motion "as quickly as possible." For the reasons discussed more fully below, UL, therefore, respectfully requests the Court decline WHISPeR's Filing in support of Callington's Anti-SLAPP Motion.

II.     **LAW AND ARGUMENT**

WHISPeR's Filing suffers from four principal defects, each of which independently warrant denial of WHISPeR's Motion. First, pursuant to Oregon's Anti-SLAPP statute codified at Or. Rev. Stat. § 31.150, the Court cannot consider WHISPeR's proposed amicus curiae brief because it is neither a pleading nor an affidavit. Second, procedural guidance from the Federal Rules of Appellate Procedure, as well as case law from the Seventh Circuit and the Illinois Supreme Court, establish how and why WHISPeR's Filing is untimely. It was filed over three months after the principal brief of the party being supported, which is well beyond the seven-day or less period adopted by Seventh Circuit and the Illinois Supreme Court. Third, contrary to the policy arguments made in WHISPeR's Filing, there are long-established federal and state trade secret misappropriation and contract laws which embody and advance strong public policy reasons to decline the protection WHISPeR's Filing seeks for the type of internal corporate wrongdoing

2

Callington undeniably engaged in. Fourth, WHISPeR's Filing should be denied because it is not useful in ruling on Callington's Anti-SLAPP Motion. It presents duplicative arguments and merely repeats Callington's position.

As a threshold matter, the term "amicus curiae" means friend of the court, not friend of a party. *Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982). While an adversary role of an amicus curiae has become accepted, there are and should be limits to avoid duplicative arguments. *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (internal citations omitted). "An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case … or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Id.*

"Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace." *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000) (internal citations omitted). The reasons are threefold. First, amicus curiae briefs "can be a real burden on the court system" and "impose[] a burden of study and the preparation of a possible response on the parties." *Id.* Second, amicus curiae briefs "are more often than not sponsored or encouraged by one or more of the parties," which, in turn, may prejudice any party without an amicus ally. *Id.* at 617. Third, amicus curiae briefs "are often attempts to inject interest-group politics into the federal [] process by flaunting the interest of a trade association or other interest group in the outcome." *Id.* The policy of the Seventh Circuit is therefore "***not to grant rote permission*** to file an amicus curiae brief" and "***never*** to grant permission to file an amicus curiae brief that essentially merely duplicates the brief of one of the parties[.]" *Id.* (emphasis added).

Of course, it remains entirely within the Court's discretion to grant or refuse leave to file an amicus brief according to the timeliness and usefulness of the proffered information. *Leigh*, 535 F. Supp. 418 at 420 (internal citations omitted); *see also Mechmet v. Four Seasons Hotel, Ltd.*, No. 84 C 7341, 1985 WL 766, at *1 (N.D. Ill. Apr. 25, 1985) ("[t]he privilege of being heard as a 'friend of the court' is granted solely through the sound discretion of the Court, which may grant leave to be heard if the proffered information is timely or useful."). WHISPeR's Motion is neither timely nor useful because it was filed *nearly four months after* the principal brief it supports—i.e., Callington's Anti-SLAPP Motion—and because it is largely duplicative of the arguments made by Callington in his Anti-SLAPP Motion and subsequent reply in support thereof.

      **A.**    **The Oregon Anti-SLAPP Statute Does Not Permit The Court To Consider Whisper's Amicus Curiae Brief In Deciding Callington's Anti-SLAPP Motion.**

WHISPeR's Filing should be denied as the Oregon Anti-SLAPP statute, which the parties agree applies for the limited purpose of deciding Callington's Anti-SLAPP Motion, does not expressly allow for the consideration of amicus briefs. When considering a Motion to Dismiss under Oregon's anti-SLAPP statute, "the court shall consider **pleadings** and supporting and opposing **affidavits** stating the facts upon which the liability or defense is based." Or. Rev. Stat. § 31.150(4) (emphasis added). A pleading is a formal, written statement filed by a party to a lawsuit, typically to initiate a claim or respond to a claim made by another party. By definition, an amicus brief is neither a pleading nor an affidavit because it is not filed by a party to a lawsuit. WHISPeR has cited no Oregon case law that provides a more expansive interpretation of the Anti-SLAPP statute's plain language, or that has permitted the submission of an amicus brief. Therefore, WHISPeR's Filing should not be considered when determining Callington's Anti-SLAPP Motion.

Further, apart from the express language of the Oregon Anti-SLAPP statute, when ruling on a motion to dismiss, a Court is bound by the complaint's allegations, and therefore, granting

4

leave to file an amicus brief is unavailing. *See Rawson v. ALDI, Inc.*, No. 21-CV-2811, 2022 WL 1556395, at *7 (N.D. Ill. May 17, 2022) (denying motion for leave to file amicus brief at motion to dismiss stage finding that amicus brief was not "useful at this stage" as "[t]he topics that [amicus curiae] discusses largely relate to factual matters outside the complaint" and "the Court is addressing a motion to dismiss, and thus is bound by the complaint's allegations"). Accordingly, based on the plain language of Oregon's Anti-SLAPP statute and because the lawsuit is still at the motion to dismiss stage, WHISPeR's Filing should be denied.

> **B.  Whisper's Filing Should Be Denied As Untimely Because Nearly Four Months Have Passed Since The Filing Of Callington's Anti-SLAPP Motion.**

A second, independent reason WHISPeR's Filing should not be allowed is untimeliness and the unnecessary additional delay it is causing. While there is not a standardized deadline for filing an amicus brief in federal district courts, district courts often look to appellate rules for guidance on procedural matters. *See, e.g., Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 24 CV 607, 2024 WL 5438707, at *2 (N.D. Ill. Feb. 13, 2024) (seeking guidance from Fed. R. App. P. 29(a)(4)(E) regarding contents of amicus curiae brief). Rule 29 of the Federal Rules of Appellate Procedure, which governs the filing of amicus curiae briefs on appeal, provides, "[a]n amicus curiae must file its brief, accompanied by a motion for filing when necessary, *no later than 7 days* after the principal brief of the party being supported is filed." Fed. R. App. P. 29(e) (emphasis added). The extra seven days gives the amicus time to study the brief of the party it is supporting and avoid repeating arguments that appear in the principal brief. *Fry v. Exelon Corp. Cash Balance Pension Plan*, 576 F.3d 723, 725 (7th Cir. 2009).

The Seventh Circuit and the Illinois Supreme Court routinely decline to accept amicus

briefs filed after the prescribed period.² *See Fry*, 576 F.3d at 725 (denying motion to reconsider denial of leave to participate as amicus curiae because request was untimely); *see also Hawes v. Luhr Bros.*, 212 Ill. 2d 93, 107, 816 N.E.2d 345, 353 (2004) (denying motion for leave to file amicus curiae brief because motion was filed nearly three months after initial brief of party whose position it supports); *Kinzer on Behalf of City of Chicago v. City of Chicago*, 128 Ill. 2d 437, 447, 539 N.E.2d 1216, 1221 (1989) (denying motion to file amicus curiae brief as untimely where motion was filed 2.5 months after principal brief). While the applicable rules do not provide a hard-and-fast rule for determining timeliness, established appellate and Supreme Court case law ensure fairness and efficiency in the judicial process. Consistent application would ensure the same result here.

Despite numerous requests from Callington's counsel to resolve the Anti-SLAPP Motion "as quickly as possible," WHISPeR—an advocate for Callington—asks this Court to accept its amicus curiae brief, further delaying adjudication on the merits. Nearly *four months* have passed since Callington's Anti-SLAPP Motion was filed and briefing on the Anti-SLAPP Motion concluded in mid-March. Therefore, consistent with the holdings in *Fry*, *Hawes*, and *Kinzer*, WHISPeR's Filing should be denied as untimely.

      **C.**    **As A Matter Of Public Policy, Callington's Illicit Conduct In Taking And Disclosing UL's Electronically Stored Information Should Not Be Protected Under Oregon's Anti-SLAPP Statute.**

Notably, and as in Callington's Anti-SLAPP Motion, WHISPeR's Filing cites no Oregon case law upholding that the stealing of more than 76,000 internal business documents, without telling the owner or asking for consent, is protected conduct under the Oregon Anti-SLAPP statute.

---

² The Illinois Supreme Court has its own rule regarding the time to file an amicus curiae brief. Supreme Court Rule 345(b) provides that an amicus curiae brief "shall be filed on or before the due date of the initial brief of the party whose position it supports." 155 Ill.2d R. 345(b).

6

Even if WHISPeR's misleading amicus brief were to be considered, as stated in UL's Opposition to Callington's Anti-SLAPP Motion, there are strong and long-established public policy reasons to decline legal protection to conduct such as Callington's.

Indeed, a critical and underlying public policy reason why Congress enacted the federal Economic Espionage Act of 1996 (18 U.S.C. §§ 1831 to 1839) was to criminalize the theft or misappropriation of commercial trade secrets. In 2016, Congress re-affirmed and extended this policy by enacting the Defend Trade Secrets Act ("DTSA") as a civil remedy and whistleblower protection amendment to the Economic Espionage Act. *See* 18 U.S.C. § 1836 (civil remedies) and §1833 (whistleblower immunity). If proven as alleged in UL's Complaint, Callington's massive misappropriation of UL's commercial trade secrets violated the Economic Espionage Act and the DTSA, and his conduct in giving UL's stolen documents and information to the *New York Times*, without UL's knowledge or consent, afforded Callington no whistleblower immunity protection under the DTSA, nor protection under any other federal or state whistleblower protection statute.

Similarly, the Illinois Trade Secrets Act was passed was, in part, to deter unlawful conduct by individuals who possess, use, and disclose without authorization internal business information that derives economic value from not being generally known or readily accessible to others, and over which the owner took reasonable measures to protect the confidentiality of the information. Accepting Callington's and WHISPeR's first-impression argument that Callington's actions are or should be protected and covered under Oregon's Anti-SLAPP statute would directly undermine the public policies behind, and violate the plain language provided in, the foregoing federal and state trade secret misappropriation laws. Doing so also would undermine the long-established public policy that supports the use and enforcement of confidentiality and non-disclosure agreements under state common law—agreements that are used and enforced every day by

7

companies all around the United States and the world.

In short, this simply is not the case this Court should rely on to make the first-impression ruling Callington and WHISPeR desire. The end result of Callington's and WHISPeR's argument, if accepted, would effectively allow any employee to steal *any* internal company documents and disclose them however and to whomever the employee decides, all under the guise of an asserted Constitutional right to petition. Yet, in the private sector setting of Callington's employment with UL, he had no Constitutional right or protection vis-à-vis UL to take UL's internal business documents and information and disclose them to the *New York Times*. To be clear, his contact and communications with the *New York Times* was not the issue. Rather, it was secretly providing to the *New York Times* UL's internal documents and confidential business information contained within. Although he had a lawful avenue under the DTSA to pursue, he did not follow or even attempt to follow the DTSA's whistleblower immunity provisions in 18 U.S.C. § 1833. Put simply, a ruling for Callington would set a dangerous precent that encourages, rather than discourages, employees to breach their confidentiality agreements and/or violate federal and state trade secret misappropriation laws, in addition to other common laws, such as breach of fiduciary duty and conversion.

As a matter of first impression, a holding in Callington's favor also would effectively eliminate an employer's ability to protect their confidential business information and, consequently, to protect their competitive advantage. The Anti-SLAPP statutes are designed to protect free speech and petition activities in connection with public issues, and not to shield unlawful conduct that undermines the integrity of business operations. Allowing and approving the theft of confidential business information could, and most certainly would, have far-reaching consequences. Indeed, companies invest significant resources in developing proprietary

8

information and trade secrets. Being able to do so is a long-established public policy in the United States, secured by various federal and state law protections. If employees can simply steal companies' internal business information and provide the information to any news media without repercussions, such a ruling would severely undermine the ability of America's businesses to compete fairly in the marketplace.

Finally, this case simply is not about reporting a potential *violation of law* to a media source such as the *New York Times*. There are no federal or state "social responsibility" laws that any supplier of a UL customer must follow or may have violated. There also is no social responsibility law that UL or any of its customers violated or are legally obligated to follow. Corporate social responsibility has evolved from a corporate citizen initiative to a movement, to an "expected" company practice. But it is not legally required by any federal or state law. Thus, Callington's and WHISPeR's assertions that Callington must be protected to report "unlawful" activities or wrongdoing is inaccurate and misplaced with respect to any company's "social responsibility" initiatives and efforts.

In short, the Court should avoid Callington's and WHISPeR's invitation to misinterpret the Oregon Anti-SLAPP statute to protect illegal activities that violate various federal and state statutes and common laws. Protecting the theft and un-protected disclosure of confidential business information under any Anti-SLAPP statute would erode the legal and long-established business information safeguards that businesses such as UL rely on every day to protect their proprietary business information. This Court, by denying Callington's Anti-SLAPP Motion, will be upholding the integrity of Oregon's Anti-SLAPP statute by ensuring it is not used to shield unlawful conduct that jeopardizes companies' legal rights and business prospects.

> **D.     WHISPeR's Filing Should Be Denied Because The Amicus Brief Is Not Useful In Ruling On Callington's Anti-SLAPP Motion.**

Where, as here, an amicus brief is duplicative or does not offer value, Courts are reluctant to consider them. *Ryan*, 125 F.3d at 1064 (denying motion for leave to file amicus brief, stating "[t]he amicus brief does not tell us anything we don't know already. It adds nothing to the already amply proportioned brief of the petitioner."). "[I]ndividual judges have rightly observed that too many amicus briefs do not even pretend to offer value and instead merely repeat (literally or through conspicuous paraphrasing) a party's position." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020) (*Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003)) ("it is very rare for an amicus curiae brief to do more than repeat in somewhat different language the arguments in the brief of the party whom the amicus is supporting."); *Ryan*, 125 F.3d at 1063 ("the vast majority of [amicus curiae briefs] have not assisted the judges …"). This is the case here.

WHISPeR's Amicus Brief provides no additional information not already included in Callington's Anti-SLAPP Motion or his Reply Brief that would aid the Court in rendering a ruling. A majority of WHISPeR's Amicus Brief details its view on the "reality" of Anti-SLAPP statutes and lawsuits, which has no bearing on whether Callington meets his *prima facie* burden or whether UL meets its burden establishing a probability of success on its claims. Further, WHISPeR's short analysis on the instant case merely restates Callington's arguments stated in his Anti-SLAPP Motion and Reply Brief and includes case law that is not analogous to this lawsuit but instead refers to *government* employees' legal rights under various federal statutes and/or lawsuits addressing different causes of action from UL's lawsuit. *See e.g., Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563 (1968) (lawsuit related to the plaintiff's employment dismissal holding that *public* employee's "exercise of his right to speak on issues of

public importance may not furnish the basis for his dismissal from *public* employment"); *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015) (*public* employee petitioned for review of his termination); *Chambers v. Dep't of Interior*, 602 F.3d 1370, 1373 (Fed. Cir. 2010) (*public* employee petition for review of her removal as Chief of United States Park Police); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (lawsuit concerning a libel action); *Snyder v. Phelps*, 562 U.S. 443 (2011) (lawsuit concerning claims of defamation, publicity given to private life, intentional infliction of emotional distress, intrusion upon seclusion, and civil conspiracy and related to picketing of funeral); *Mullen v. Meredith Corp.*, 271 Or. App. 698, 703, 353 P.3d 598, 602 (2015) (defendant's Anti-SLAPP motion was only filed with regard to plaintiff's negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress claim, and, as such, court did not consider whether plaintiff could "establish that there is a probability that the plaintiff will prevail on the [breach of contract] claim"); *Garrison v. State of La.*, 379 U.S. 64 (1964) (criminal defamation case involving *public* employee's public criticism of *public* officials).

Further, WHISPeR's proposed Amicus Brief omits an essential prong of the test under the Oregon Anti-SLAPP statute when WHISPeR misleadingly claims, "If the allegedly actionable conduct described in the complaint can fairly be characterized as protected activity under federal and state whistleblower statutes, the First Amendment, or the broader range of activities covered by Anti-SLAPP laws, *the case must be dismissed at the outset*." (WHISPeR's Filing, ECF No. 52, PageID# 391-92) (emphasis added). Notably, WHISPeR's Filing makes no mention of the second part of the test: even if Callington could meet his initial *prima facie* burden, the court must *then* examine whether UL has demonstrated a probability of prevailing on the claims. *See* Or. Rev. Stat. § 31.150(4). The Court, despite WHISPeR's contention otherwise, cannot simply focus on one

prong and to evaluate Callington's Anti-SLAPP Motion. If Callington meets his burden, he did not, UL then must be permitted to demonstrate that there is a probability it will prevail on its claims. (UL's Opp. to Callington's Anti-SLAPP Mot., ECF No. 39, Page ID# 315-317). If UL can establish its prong of the test, Callington's Anti-SLAPP Motion cannot be granted.

WHISPeR's Amicus Brief provides no new or novel information related to Callington's Anti-SLAPP Motion; in fact, it does the opposite – namely, it provides information wholly irrelevant to the determination of Callington's Motion and conveniently addresses in passing ***only half*** the test under the Oregon Anti-SLAPP statute. As such, and because Callington is well represented by counsel in this case, there is no reason to duplicate counsel's efforts, especially when the tendered Amicus brief so closely aligns with the filings of a party who is already adequately represented.

### III. CONCLUSION

For the foregoing reasons, UL respectfully requests that this Court deny WHISPeR's Filing.

Date: May 5, 2025                                Respectfully submitted,

**UL LLC**


By: */s/ James M. Witz*
One of Plaintiff's Attorneys

James M. Witz
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
Telephone:     312.795.3246
Facsimile:     312.277.9416
E-mail:            jwitz@littler.com

Kevin E. Griffith (*pro hac vice*)
Emily E. Levy (*pro hac vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH  43215
Telephone:     614.463.4210
Facsimile:     614.737.9135
E-mail:            kgriffith@littler.com
                       elevy@littler.com

13

## CERTIFICATE OF SERVICE

I hereby certify that I have this 5th day of May, 2025, filed a copy of the foregoing document, *UL LLC's Opposition to WHISPeR's Motion for Leave to File Amicus Brief*, electronically. Counsel of record for Defendant may access this filing through the Court's system.

> */s/ James M. Witz*
> An Attorney for Plaintiff

4928-7441-7210.5 / 118575.1072