1          IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION

3   UL LLC,                        )   Case No. 24 C 5631
                                   )
4                 Plaintiff,       )
                                   )
5          v.                      )
                                   )
6   JOSHUA CALLINGTON,             )   Chicago, Illinois
                                   )   May 5, 2025
7                 Defendant.       )   1:30 p.m.
    .
8
          TRANSCRIPT OF TELEPHONIC PROCEEDINGS - MOTION
9          BEFORE THE HONORABLE ANDREA R. WOOD

10  APPEARANCES:

11  For the Plaintiff:      LITTLER MENDELSON PC
                            BY:  MS. EMILY E. LEVY
12                               MR. KEVIN E. GRIFFITH
                            41 S. High Street, Suite 3250
13                          Columbus, Ohio 43215

14
    For the Defendant:      BEVERLY PLLC
15                          BY:  MS. AGATHA M. COLE
                            43 W. 43rd Street, Suite 159
16                          New York, New York 10036

17

18

19  Court Reporter:         Laura LaCien, CSR, RMR, F/CRR
                            Official Court Reporter
20                          219 S. Dearborn Street, Room 1928
                            Chicago, Illinois  60604
21                          Telephone:  312.408.5032
                            laura_lacien@ilnd.uscourts.gov
22
                            *   *   *   *   *
23
              PROCEEDINGS REPORTED BY STENOTYPE
24     TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

25

1      (Proceedings heard in open court:)

2         COURTROOM DEPUTY:  Calling case 24 CV 5631, UL LLC

3   versus Callington.  Counsel, you may put your appearances on

4   the record beginning with plaintiff.

5         MR. GRIFFITH:  This is Kevin Griffith for plaintiff

6   UL.

7         MS. LEVY:  This is Emily Levy for plaintiff UL.

8         THE COURT:  And for the defendant?

9         MS. COLE:  This is Agatha Cole for Mr. Callington.

10         THE COURT:  Thank you.  And is there anyone else who

11   wanted to make an appearance today?  I know we have an amicus

12   filer so that brief was not an item really on the agenda for

13   today, but I don't know if that counsel is on the line and

14   wants to, nonetheless, make an appearance.

15      (Pause.)

16         THE COURT:  As I'm not seeing that they are, then that

17   is fine.  Okay.  So the main thing that I wanted to do this

18   afternoon is to revisit the issue of the interim order that has

19   been governing the preservation and nondisclosure of the

20   materials that Mr. Callington allegedly took with him

21   improperly at the time that he left UL LLC.  Particularly now

22   that I have seen the arguments that are being made in

23   connection with the anti-SLAPP provision, given the fact

24   that we still don't have the long-term order in place for the

25   case, it seemed to me time to address that and to make sure

3

1    that everyone is on the same page here.

2         I have a couple of questions for the parties.  I'd

3    like to start, though, by first coming back to -- I guess

4    really defense counsel first to confirm exactly what it is at

5    this point that you feel you should be able to do that the

6    proposal from plaintiff's counsel would prevent you from doing.

7    In particular, as I was reviewing the filings in this case, I

8    went back through the correspondence attached to the motion

9    practice as an exhibit and there's an acknowledgment from

10   defense counsel that if there is a designation of what the

11   confidential trade secrets are, then a stipulation can be

12   entered regarding their nondisclosure.

13        So I wanted to start there and get a better

14   understanding of what that really is.  Is that actually a good

15   faith offer to have a negotiated order governing the disclosure

16   of material until this litigation gets resolved in its entirety

17   or is that really more of an objection to the approach that the

18   plaintiff is taking?

19        So I'll start there with Ms. Cole.  And again to focus

20   on the question that I'm asking, it's really is your position

21   that you are willing to negotiate some sort of nondisclosure

22   order that would be in place pending resolution of this case,

23   you just disagree with the procedure that the plaintiff is

24   proposing?

25        MS. COLE:  That -- that is a good faith offer, your

1    Honor, and, in fact, counsel had one or more meet and confers

2    for that purpose.  However, through those meet and confers, I

3    became to -- I came to understand that what you all are seeking

4    is not really to protect their trade secrets but rather to

5    prevent Mr. Callington from speaking to anyone and the press

6    and government authorities in particular about what he observed

7    during his employment with the company.  If UL can identify

8    and, you know, submit a list of the documents that he would

9    have been exposed to in his employment which they believed

10   constitute trade secrets and not, you know, all of his

11   documents which might contain trade secrets but truly identify

12   the nature of any legally protected trade secret information

13   that has a material interest and legally protected interest and

14   preventing from disclosure for competitive purposes, then of

15   course we would willingly agree to a protective order covering

16   those materials.

17            THE COURT:  And why is it that you believe that the

18   order that the plaintiff is proposing prevents your client from

19   talking to third parties about things that he observed as

20   opposed to actually sharing documents that were taken with him

21   when he left?

22            MS. COLE:  Just as a matter of clarification, we're

23   referring to the interim document preservation nondisclosure

24   order that's at Docket Entry No. 17, correct?

25            THE COURT:  So taking -- so taking a little bit of a

1   step back, so that was in place.  Since then, the plaintiff had

2   filed a motion for entry of what they're calling a protective

3   order that would have a procedure for the information that

4   Mr. Callington took with him to be reproduced back to the

5   plaintiff so that they can designate things as confidential and

6   my understanding is that that proposal is intended to take the

7   place of the interim order which was intended to be interim and

8   to address the confidentiality issues covering these materials.

9         Mr. Griffith, am I recalling that correctly that the

10  intent of your proposed protective order is to put a procedure

11  in place so that you can identify the trade secrets that you're

12  trying to protect from disclosure?

13        MR. GRIFFITH:  Correct, your Honor.  And it's not just

14  trade secrets.  It's other confidential commercial information

15  in both of those types or categories of internal company

16  information are commonly protected by protective orders during

17  the discovery in a case like this but that's what we propose.

18  We propose a traditional protective order -- really the court

19  model protective order -- with a couple of additions that

20  address the current situation which is, you know, instead of us

21  producing documents to him, he already has the documents that

22  are at issue in the case.  They're the evidence in the case --

23        THE COURT:  Yeah.

24        MR. GRIFFITH:  -- and we just want to be able to

25  designate them the ones that should be designated as

1    confidential under the protective order and --

2              THE COURT:  So going back --

3              MR. GRIFFITH:  -- we didn't get a chance to do that.

4              THE COURT:  Okay.  Let's go back to Ms. Cole then.  So

5    what I'm really focused on is what the order is going to look

6    like going forward.  The plaintiffs have proposed this

7    protective order which would have a procedure for documents to

8    be provided back to them so they can designate them as trade

9    secrets or other things that should be maintained as

10   confidential and my goal in the first instance -- and I think

11   we tried to do this at another hearing so I'm going to try

12   again -- is to identify what the actual disagreement is between

13   the parties.

14             So what is your objection to their proposal that

15   includes the draft protective order that was, I guess -- let's

16   see -- filed in November?

17             MR. GRIFFITH:  Document 22-1.

18             THE COURT:  Correct.  It's Document 22-1.  Are you

19   looking for the document, Ms. Cole?

20             MS. COLE:  I -- I am.  I think I have it in front of

21   me and --

22             THE COURT:  Okay.  I'll give you a minute.

23             MS. COLE:  -- this is the --

24             MR. GRIFFITH:  It's an attachment to the motion.

25             THE COURT:  Because as I understand it, Ms. Cole is

1    not at the moment objecting in principle to the idea that

2    certain information would be designated as protected pursuant

3    to a confidentiality order but she wants her client to be able

4    to use information that wouldn't be properly designated as

5    confidential and it does seem that there is some disagreement

6    as to how information gets identified as a trade secret or

7    something else that requires protection.

8              MS. COLE:  So to answer your question, your

9    Honor -- thank you for that response.  I have the -- their

10   proposed confidentiality order in front of me now at 22-1.  And

11   your question, if I understood it -- and please correct me if I

12   misconstrue it -- but your question was, you know, what is our

13   objection to this proposed procedure where Mr. Callington would

14   produce to UL all of the documents in his possession which they

15   would subsequently designate as either confidential or trade

16   secrets and that those would be the documents that

17   Mr. Callington, you know, may not use or rely on in his -- you

18   know, for any purpose.  Is that -- am I understanding the

19   question correctly?

20             THE COURT:  Well, I don't think it's for any purpose.

21   I think it's for any purpose other than this litigation because

22   I believe the plaintiff's position is that they're not trying

23   to prevent Mr. Callington from using even that confidential

24   information in connection with this litigation.  Plaintiff's

25   position is they're just concerned about him using it beyond

1 this litigation.  In other words, they're not seeking to have

2 it all returned which is why they're taking the position that

3 this is not a request or some sort of preliminary injunctive

4 relief.  They're taking the position that this is really just a

5 matter of discovering material being limited to use in this

6 litigation.

7          MS. COLE:  Understood.

8          MR. GRIFFITH:  Correct.

9          MS. COLE:  The fact is that these are not discovery

10 materials.  They would certainly be part of what would be

11 discoverable if this case were to reach the discovery stage but

12 they are not discovery materials.  They are materials that

13 Mr. Callington in large part are his work product from the time

14 that he was both an independent contractor and a full-time

15 employee.

16          Our position is that he has not disclosed any trade

17 secret information.  As far as I can tell from the pleadings

18 and the documents that Mr. Callington has shared with me, it is

19 impossible to determine what precisely is the substantive

20 material that UL is saying gives rise to the DTSA claim.

21          So if their position is, you know, all documents

22 contain trade secrets to the extent that, you know, they reveal

23 who our clients are or how certain audits came out, we don't

24 think that that is a legitimate claim of trade secrets that

25 gives rise to a legitimate legal interest that can or should be

1    protected at this point.

2            THE COURT:  And so --

3            MS. COLE:  At this point in the litigation --

4            THE COURT:  -- in the complaint, there's a paragraph

5    where they describe "audit reports, including onsite notes,

6    audit process and methods, confidential photos taken of the

7    customers' suppliers' internal facilities, equipment and

8    operations that are not generally open to or disclosed to the

9    public," et cetera.  Would you agree that those things would

10   properly be covered by a protective order?

11           MS. COLE:  We do not.  An audit report can contain

12   hundreds of pieces of information that are not trade secrets.

13   In fact, many of these companies that hire UL to certify them

14   as ESG compliant post these audit reports publicly on their

15   website or, you know, file them with large investors as

16   evidence of their so-called compliance with environmental,

17   social, and governance requirements.  So, no, not all of the

18   audit reports and all of the information in the audit reports

19   is a trade secret.

20           Furthermore, to the extent that Mr. Callington wishes

21   to rely on these documents in other proceedings or in

22   communication with government authorities, state or federal,

23   or -- you know, the other day he had a conversation with --

24   with staffers to a member of Congress and is seeking to

25   advocate for himself.  He was completely unsure of what he

1    could and could not speak about and so the main issue is just

2    how incredibly broad this protective order is and the fact that

3    there's simply no legal basis for it at this point.  He has not

4    done anything in the litigation, or otherwise, that warrants

5    the imposition of injunctive relief and so it's a very

6    burdensome restriction on his conduct and speech that has no

7    basis in law from our perspective.  And so the culture --

8         THE COURT:  If I can stop you there.  What about the

9    contracts because there's a breach of contract claim in this

10   case and there are contracts that were attached to the

11   complaint that appeared to have been signed by Mr. Callington

12   that do have confidentiality provisions that would seem to go

13   broader and cover more than just trade secrets.  To the extent

14   this case is also about breach of those confidentiality

15   provisions and the contracts between Mr. Callington and UL,

16   wouldn't that also provide a basis for treating some of this

17   information as confidential?

18        MS. COLE:  If -- if UL has a plausible and actionable

19   claim for breach of contract against Mr. Callington, they

20   should put up substantial evidence of that such on the motion

21   to dismiss at which point we would enter discovery and our

22   conversation about what is and is not confidential would be a

23   more comprehensive and two-way conversation.  At this juncture,

24   you know, I have never heard of a breach of contract case where

25   the party is entitled to specific performance of a

1  confidentiality or nondisclosure agreement right out of the

2  gate.   Moreover, the way to enforce an NDA or confidentiality

3  agreement is through litigation and contract damage.   They

4  aren't alleging any damage that's found in contract.   All of

5  their damages are reputational in nature as if this were, you

6  know, a libel case but they cannot bring a libel claim because

7  everything that Mr. Callington has said is true.

8           THE COURT:   So going back to my original question,

9  Ms. Cole, it sounds like in fact the actual answer is no, that

10  you don't agree that there should be any order in place that

11  governs the identification and designation of material that's

12  going to be treated as confidential at this stage, is that

13  correct --

14           MS. COLE:   At this stage --

15           THE COURT:   -- and then I'll let you finish the

16  procedural point you were going to make?

17           MS. COLE:   At this stage, we do not believe that it

18  would be appropriate for an order to be entered enforcing the

19  confidentiality, a document.   Now, on the other hand, and as I

20  previously stated to my friend on the other side, if UL is

21  claiming to have legitimate interests in specific trade secrets

22  that it wants to make sure are not inadvertently disclosed in

23  the course of speaking with government entities or anyone else,

24  then if they can identify those with sufficient specificity

25  that it doesn't cover literally everything that Mr. Callington

1    ever did for the company, then of course we would willingly

2    enter and agree to that sort of a protective order.  But

3    insofar as that they're claiming the right to a protective

4    order to cover anything which they are seeking to designate as

5    confidential, we do -- we would not agree to that.

6            THE COURT:  I've heard a lot from Ms. Cole so I'll

7    give Mr. Griffith and Ms. Levy an opportunity to respond and

8    then I'll let the parties know my thoughts on where things

9    stand.

10           MR. GRIFFITH:  Thank you, your Honor.  A couple

11   things.  This is really just to regulate the litigation of this

12   particular case that ultimately delayed the discovery and the

13   protection that Ms. Cole is speaking to can actually be

14   resolved by what we proposed.  Mr. Callington possesses, we

15   believe -- and hopefully he's abided by the order, I have no

16   reason to think he hasn't at this point -- documents that were

17   taken outside of UL and (audio interruption) contain trade

18   secret information as defined in the very much broader

19   definition than we think that (audio interruption) argues about

20   or asserts and then it also contains internal confidential

21   business information (audio interruption) contracting parties.

22           COURT REPORTER:  Judge -- Excuse me.  Excuse me.

23           THE COURT:  Yeah.  Is that Laura?

24           COURT REPORTER:  Yes.

25           THE COURT:  Are you having difficulty hearing him?

1      COURT REPORTER:  I am.  He's cutting in and out so I'm

2  not sure if his connection is real good.

3      THE COURT:  Yes.  Mr. Griffith, so you had a couple of

4  breaks as you were speaking so if -- let's try again --

5      MR. GRIFFITH:  Okay.

6      THE COURT:  -- and if there's anything that you can do

7  to kind of firm up your connection, that would be helpful.

8      MR. GRIFFITH:  Can you hear me better now?

9      THE COURT:  So far so good.

10      MR. GRIFFITH:  All right.  Let me get to the point.

11  What we proposed is asking Mr. Callington to produce to us

12  through Ms. Cole copies of the documents that he has that are

13  UL documents, documents that he took by email to his own email

14  account and into -- also into a Dropbox and perhaps another way

15  documents that he's got in his possession and we're asking for

16  copies of those.  He keeps what's in his possession.  It's the

17  evidence in the case but we want copies of what he's got and

18  then we look at those and we say what warrants confidential

19  information designation under the protective order and what

20  doesn't and then we say to Ms. Cole this is what we want

21  designated as confidential under the protective order.  She

22  either agrees or she doesn't.  And if she doesn't, we come back

23  to the Court and say these particular documents we have

24  disagreement about, we're going to ask the Court to weigh in

25  whether they should have a confidential designation under the

1   protective order to be used only in this case.  The other part

2   of the protective order, it allows him to go to a government

3   agency.  It allows him to speak to the press.  It just doesn't

4   allow him to take documents that are -- and give those to the

5   press and I believe he could give them to the agencies.  You

6   know, then -- that have been designated confidential but

7   nothing's been designated yet.

8           THE COURT:  And to what extent --

9           MR. GRIFFITH:  We're just trying to get ahold of the

10  documents.

11          THE COURT:  To what extent -- to what extent are you

12  concerned about him speaking to the press or somebody other

13  than a government agency and the information that he

14  communicates is influenced by something he saw in one of the

15  documents because that's the difficult thing with these sorts

16  of orders is that if he's talking and answering questions, he

17  would have to somehow distinguish between what he learned

18  independent of confidential documents versus what he may know

19  based on looking at confidential documents.  And so what is

20  your position on how he should go about doing that?

21          MR. GRIFFITH:  Great question; and that is a

22  challenge.  If we go to the process that we proposed, let us

23  look at what he's got, let us designate it, then that's going

24  to give clarification to what he can speak to.  And again,

25  Ms. Cole is going to have an opportunity to say no, I disagree

1   that you can mark that confidential under this protective

2   order.

3          THE COURT:  What evidence do you have that he actually

4   took these documents in violation of some duty that he has to

5   your client?

6          MR. GRIFFITH:  I think there's significant evidence of

7   that and it's laid out in the complaint.

8          THE COURT:  Okay.  So you have -- but you haven't

9   submitted any affidavits, the complaint is not verified so

10  what -- if I were to ask you to submit affidavits or

11  declarations, what would they look like?

12         MR. GRIFFITH:  They would look like that forensic

13  audit or forensic investigation of what he was doing in his

14  computer reflects that he took or transferred to his own

15  personal email account, transferred to an iCloud like 20,000

16  emails and 76,000 UL files.  And he was doing it -- he was

17  doing the emailing at work and these are work-related emails

18  and he just had it on a BC, he had it on a blind copy going to

19  his own email account unknown to the company.  That's what you

20  would see.

21         THE COURT:  Okay.  So here's --

22         MR. GRIFFITH:  I guess I should say --

23         THE COURT:  Go ahead.  Finish -- finish your response.

24         MR. GRIFFITH:  I should say that he was asked

25  repeatedly to return, return, return.  He hasn't done that and

1    so we just want an accounting, in effect, of what does he got

2    so we can get it and mark it confidential before he wants to

3    give it out to whomever he wants to give it out to, which we

4    don't think would be appropriate.  Government agencies, yes.

5    If he has a claim of his own, he can use it in this litigation,

6    he can use it with a government agency.  But the idea of this

7    going to the press with these internal documents, we think that

8    violates his contract, we think it violates trade secret laws,

9    we think it's a problem for him.

10            THE COURT:  Okay.  Let me go back to Ms. Cole for a

11    moment.  What is your objection, if any, to having an expedited

12    process for the parties to review the information that we're

13    talking about and have any disputes about what's actually

14    confidential or trade secret determined by the Court on an

15    expedited basis?

16            MS. COLE:  The first objection is that there's no

17    basis, no legal basis for seeking this relief under either

18    common law contract -- law of contracts or the DTSA

19    (indiscernible).

20            The second objection is that our position for us in

21    the anti-SLAPP motion is that the purpose of this lawsuit is to

22    harass and intimidate Mr. Callington and by requiring one-way

23    discovery to allow UL to, you know, assess exactly what

24    information he has in his possession before this case gets to

25    the discovery stage seeing that, you know, they in our opinion

 1    have not laid out any kind of a valid claim really shocks the

 2    conscience I think.  It -- as a matter of law, as a matter of

 3    due process, I mean, that's burdening an individual litigant

 4    and former employee with this kind of an obligation when UL

 5    is -- should be aware of anything and everything that

 6    Mr. Callington knew or learned about the company and his client

 7    during his employment is patently unfair.  You know, the notion

 8    that he should spend thousands of dollars on a purportedly

 9    simple one-way discovery procedure at the pleading stage in a

10    case that deserves a tremendous amount of scrutiny as a SLAPP,

11    that's our -- that's our number-one objection.  Secondly, I

12    also think that UL is using this as, sort of, a fishing

13    expedition to try and figure out exactly, you know, what

14    Mr. Callington knows and where to, you know, assess how much

15    exposure they have here.

16              THE COURT:  Okay.  So a couple of things for the

17    parties here:  Mr. Griffith, over the course of the case since

18    that Ms. Cole has come in and raised these concerns, I've asked

19    a few times for authority to be presented for why this is a

20    discovery issue that should be handled pursuant to Rule 26(c)

21    of the Federal Rules of Civil Procedure, which is how I

22    understand you to be seeking to go forward on this issue, and

23    that's, of course, the rule that the model confidentiality

24    order in our district is based off of.  Rule 26(c) is a

25    discovery rule.  Our model confidentiality order is a

1  confidentiality order premised on the ability to enter

2  protective orders governing discovery under Rule 26(c) but

3  this, at this point, does not seem to be a discovery dispute

4  because this is not an issue of how to protect information that

5  is being produced or obtained through the discovery process.

6  And if you look at the very first line of Rule 26(c), it talks

7  about this -- 26(c)(1), it talks about "a party or a person

8  from whom discovery is sought may move for a protective order."

9  This dispute is not about discovery.  This dispute is about

10  information that the plaintiff believes was improperly taken

11  before there was even a lawsuit.  It's misappropriation.  It's

12  misuse.  That is what is being alleged here.

13       So it is very unclear to me what the legal basis is to

14  treat this as a straightforward motion under Rule 26(c) as the

15  plaintiff seems to be suggesting.  And the proposed

16  confidentiality order, which I went back and looked at again,

17  concerns production of discovery and includes a provision that

18  would treat the plaintiff here as a producing party within the

19  meaning of that order and presumably Rule 26(c).  It's

20  difficult for me to see how that's the case because this isn't

21  a discovery issue at this point.

22       So I do think procedurally this is not a great fit for

23  Rule 26(c) and I do have concerns that what the plaintiff is

24  trying to do here is to use the discovery standard, which is a

25  good cause standard for limiting the conduct of the other side,

1   in place of the Rule 65 standard which does require some

2   evidence and a showing of a likelihood of success on the

3   merits.

4          That said, it certainly seems to me that if there were

5   a request for some sort of restraint, a preliminary injunction,

6   under rule twenty -- under Rule 65 that would prevent the

7   dissemination of the information taken by Mr. Callington in

8   violation of the Trade Secrets Act and/or his contractual

9   duties to UL, you'd probably be able to make out a showing that

10  would support such an order if you presented a declaration or a

11  witness that said the things that you claim that the witnesses

12  would say.

13         So it is a bit perplexing to me that you are

14  proceeding in this manner other than, I suppose, wanting to be

15  cautious about being accused of violating somebody's First

16  Amendment rights.  But it does seem to me that the proper way

17  to proceed here is for the plaintiff to put forward a showing

18  of a likelihood of success on the merits, irreparable harm,

19  et cetera, the things that we look at under Rule 65 and ask for

20  an injunction that would prevent the dissemination of any of

21  the information that was allegedly taken by Mr. Callington.

22  And frankly, I haven't heard any suggestion from defense

23  counsel that he didn't actually take the information.  I have

24  heard the suggestion that they don't think it's confidential or

25  they don't think it's a trade secret, but I have yet to hear he

1    didn't actually take the documents.  So it seems to me that in

2    lights of all of that, if you have, you know, a witness who

3    would, you know, state the things that you say that they would

4    state during testimony -- whether a written declaration or live

5    testimony -- that you probably would be able to make out a

6    likelihood of success on the merits so it is a bit perplexing

7    to me why you are pushing this protective order motion when I

8    have not yet seen any case law interpreting Rule 26(c) to

9    provide for this relief that you're seeking.

10         Do you have some actual authority for proceeding in

11   this manner, Mr. Griffith?

12         MR. GRIFFITH:  I don't have a case.  I think the

13   provisions of Rule 26, 26(c)(1)(B) and (G) give the Court the

14   discretion to manage the discovery in the case how the Court

15   deems fit and that's really what the basis is for this

16   particular request to have the uniform protective order --

17         THE COURT:  So, Mr. Griffith, I have to stop you there

18   because you keep talking about discretion to manage discovery.

19   In what way is this a discovery dispute?  You're not seeking

20   information from them in the discovery at this point.

21         MR. GRIFFITH:  It's really just -- it's just an effort

22   to get a standard protective order in place in a case that's

23   going to have a protective order and the idea was, well, this

24   is a little different.  It's not that we have documents to

25   produce that we want to be marked confidential.  It's he's

1  already got the documents that we -- a lot of which I'm sure we

2  will have it marked confidential.  So it is -- it is a twist on

3  Rule 26 and I understand what the Court is saying in response

4  to that.  And if we have to --

5       THE COURT:  Is there any reason -- if I entered an

6  order and said in order to keep this restraint in place on

7  their ability to further use the information that you would

8  have to make some sort of evidentiary showing that you can

9  satisfy the requirements of Rule 65, could you do that?

10      MR. GRIFFITH:  I would rather do it this way, your

11 Honor, given the -- our discussion today and where you seem to

12 be on this particular issue, which I fully understand.  I'd

13 like to keep the interim order in place -- I would like to keep

14 the interim order in place until we can get a motion for a

15 preliminary injunction on file --

16      THE COURT:  Okay.  So --

17      MR. GRIFFITH:  -- and go through that process.

18      THE COURT:  -- that goes to my question.  So you are

19 prepared that you could present a motion for a preliminary

20 injunction and make that showing?

21      MR. GRIFFITH:  Yes, your Honor.

22      THE COURT:  Okay.  It does seem to me that while, yes,

23 there probably will be a protective order in place in this case

24 to govern discovery -- I think there should be in a case like

25 this -- that the appropriate thing to do is to set a schedule

1    for a preliminary injunction hearing that can be narrowly

2    focused on the relief of whether or not Mr. Callington is able

3    to disseminate this information.  Then we have to say,

4    Ms. Cole, if -- if this is not something that is going to be a

5    cooperative effort, that means there are going to be findings,

6    there are going to be potentially findings that your client

7    violated the federal or the state Trade Secrets Act or

8    potentially going to be a finding with respect to a breach of

9    his nondisclosure obligations or the confidentiality

10    requirements of his employment agreement and it may be a

11    broader protection than what would otherwise be the case

12    pursuant to an agreed procedure, but if the parties are

13    completely at odds -- and it seems that you are -- then I think

14    it may be unavoidable to just get some of these findings in

15    place and we'll go forward and treat this as a Rule 65 issue.

16        (Pause.)

17        MS. COLE:  Your Honor, that would be fine because we

18    are confident that this lawsuit has no merit.  That being said,

19    it's challenging to understand why we would be going into a

20    preliminary injunction proceeding at this stage when, you know,

21    counsel could have filed for a preliminary injunction at any

22    earlier stage in the proceeding.  And so if you are directing

23    UL to make a showing of, you know, likelihood of success on the

24    merits, I hope that, you know, we can take care of the

25    preliminary injunctive relief and the motion to dismiss and

1   anti-SLAPP arguments, you know, all in one proceeding since,

2   after all, the main question is can they prevail on the merit

3   on allegations that -- that have merit.

4         So I guess my only concern is that this will draw out

5   into another, you know, three to six months over a preliminary

6   injunction.  Meanwhile, we're still at the pleading stage and

7   my client is still being dragged into court and have this kind

8   of hanging over his head and we understand --

9         THE COURT:  Well, I don't know why it would be three

10  to six months.  A preliminary injunction proceeding happens

11  quickly so I --

12        MS. COLE:  Right.

13        THE COURT:  -- would think this would be something

14  within just a few weeks if that --

15        MS. COLE:  Okay.

16        THE COURT:  -- first of all.  Second of all, you can't

17  have your cake and eat it too, Ms. Cole.  Either the interim

18  order remains in place or we move forward with a preliminary

19  injunction proceeding which happens, generally speaking, before

20  you get through, you know, full litigation of the case.  That's

21  the whole point of preliminary injunctive relief so I guess I'm

22  a bit confused by your suggestion that this should be put off.

23  If it's going to be put off, then I'll keep the interim order

24  in place.

25        MS. COLE:  I do not mean to say that it should be put

1   off.  Rather, the opposite is what I am trying to argue which

2   is that we do not want this to put off the revolution of the --

3   of the merits in any way.  And, you know, to the extent that

4   the Court isn't inclined to decide the protective order I might

5   add and treated as a preliminary injunction and hear evidence,

6   we're fine with that.  That's fine.

7              THE COURT:  Is your concern --

8              MS. COLE:  The only --

9              THE COURT.  -- that your defense to this case would be

10  the same as your anti-SLAPP arguments, is that the objection

11  that you're concerned that the defense that you would raise to

12  a preliminary injunction proceeding would be the same as the

13  anti-SLAPP issue and therefore there's not really a way to do

14  one prior to the other?

15             MS. COLE:  Well, it's not necessarily an objection.

16  It's just a question of efficiency.  But yes, I would state it

17  slightly differently but the answer being yes.

18             MR. GRIFFITH:  And I would just -- if I could, your

19  Honor, and if I could just interject, you know, what we

20  proposed we think was really practical and a way to manage the

21  situation where this gentleman possesses documents that he

22  shouldn't possess and we thought we could do it through this

23  order and do it in a logical reasonable way.

24             THE COURT:  Mr. Griffith, I don't disagree with you

25  that this would be a faster proceeding.  The difficulty here is

1    you are asserting he possesses these documents he should not

2    possess.  You haven't offered any evidence here and proof that

3    that's the case.  You've made allegations in your complaint,

4    but the point of Rule 65 is that you have to put forward some

5    evidence and, as I understand it, Ms. Cole is challenging the

6    evidentiary basis of your claim that this is actually stuff

7    that he improperly took.  She's not agreeing with that.

8            So while you are saying the problem is he possesses

9    stuff that he wasn't allowed to possess, I don't think that

10   that is being conceded here by the defense.  Am I missing

11   something, Ms. Cole?

12           MS. COLE:  No.  That's -- I believe that's a

13   correct --

14           MR. GRIFFITH:  And I thought that --

15           THE COURT:  Yes.

16           MR. GRIFFITH:  -- by what UL has proposed, we could

17   address that issue in the normal course of litigation but first

18   securing the, you know, some control over if -- you know, he

19   possesses documents and I don't think anybody disputes that.

20   The question is what's the legal effect of that.  And we can

21   certainly litigate that in the normal course after the ruling

22   on the motion -- on the anti-SLAPP motion, et cetera, but in

23   the interim can we have control over the documents, everybody.

24   It ultimately gives him clarification on what he can talk about

25   that he wants to add.  Instead, we can jump into a preliminary

1   injunction order which is going to be very expensive for

2   everybody and it's going to be very time-intensive.

3          So that's all I wanted to say is that we'll go down

4   that path if that's the direction the Court indicates we need

5   to go down but I'm really going back to Agatha saying, you

6   know, I'll go down that path which is going to cost everybody a

7   lot more time and money than what's really proposed on the

8   table right now, which is just a way of trying to control the

9   documents that everybody knows he has and that he -- that would

10  give him direction on what he can use and not use if we're able

11  to designate.

12         MS. COLE:  Your Honor, respectfully, you know,

13  Mr. Callington is not interested in clarification on, you know,

14  what he can talk about.  He is represented by counsel and the

15  only obstacle to determining what he can and cannot talk about

16  in terms of his, you know, default legal right is this

17  protective order -- and in particular, Paragraph 6 of the

18  protective order -- as well as the lack of any kind of a

19  defining scope of material which UL believes he should not be

20  allowed to speak about.  The default should be that any person

21  can speak about whatever they want to whomever they want unless

22  there is a legally cognizable nondisclosure obligation or

23  something of that nature.  But in any event, we would be

24  inclined to agree with your proposal that, you know, if it is a

25  preliminary injunction that they seek, then that should be how

1    we proceed.

2              THE COURT:  So the briefing on the motion to strike is

3    complete with the exception of the amicus submission.  There is

4    a request that's been made for oral argument on the motion to

5    strike which I did take under advisement so perhaps the thing

6    to do here is to get this request for preliminary relief which

7    can be narrowly tailored.  This is not seeking a preliminary

8    injunction that would be the full relief that might be sought

9    at the end of this case.  This is a focused request, as I

10   understand it, to require Mr. Callington to disclose what he

11   has so that things can be designated as confidential and

12   prevent any further dissemination.

13             Along those lines, maybe we can get this on the same

14   track as a decision on the anti-SLAPP motion since it does

15   appear that the main defense here is that this is a harassing

16   case and not a good faith case.  That appears to be the

17   allegation that's being made by the defense.

18             So with the other motion fully briefed, perhaps what

19   we can do is have an abbreviated preliminary injunction

20   proceeding because again this is -- this is not wide-ranging

21   relief or a motion seeking that relief and supported with

22   appropriate declarations can be filed in short order.  Let's

23   say within the next week or two.  There can be a response filed

24   to that motion on behalf of defendant Callington and then I

25   have oral argument on all of those issues at a single hearing.

1    And when I say "all of those issues," I mean the anti-SLAPP

2    issues as well as the focused preliminary injunction issue at

3    the same time in order to streamline the proceedings.

4          If I were to proceed in that manner, Mr. Griffin --

5    Mr. Griffith, how soon would you be able to file a motion that

6    laid out the basis of which you are seeking to have a court

7    order put in place that would require the confidential

8    information to be produced for designation as a process for

9    limiting its dissemination and Mr. Callington's ability to

10   share that information publicly, is that a motion that you can

11   prepare in 14 days?

12         MR. GRIFFITH:  I can -- I think we can prepare and

13   file it by May 27th, your Honor.

14         THE COURT:  May 27th.

15         MR. GRIFFITH:  Or -- we have our large client

16   conference this week in Arizona and I'm going to be out the

17   rest of this week.

18      (Pause.)

19         MR. GRIFFITH:  Oh, I'm sorry.  I jumped ahead.  May

20   20th or the 21st.

21         THE COURT:  Oh, okay.  So that is just a couple of

22   weeks from there.

23         MR. GRIFFITH:  Correct.  Correct.

24         THE COURT:  Okay.  Hold on.  Give me just one moment.

25      (Pause.)

1    THE COURT: Okay. If I were to receive any such

2  motion by May 20th, would the defense be able to respond 14

3  days later?

4    MS. COLE: Yes, your Honor.

5    THE COURT: So that would be June 3rd?

6    MS. COLE: Yes.

7    THE COURT: And then I believe what I could do,

8  because I have some space that's open due to my schedule, is I

9  could set an in-court hearing for oral argument but I would not

10  be seeking a reply brief because instead I would have oral

11  argument that could address the anti-SLAPP motion as well as

12  this issue regarding the treatment of the information that was

13  allegedly taken. I can probably do that on June 17th as an

14  in-person hearing if the parties are available and we could do

15  that at, say, 11:00 a.m. on June 17th.

16    MR. GRIFFITH: If you can make that June 18th. Yeah,

17  I've got a hearing in Cleveland right in the middle of that

18  day.

19    THE COURT: So you would be able to do 11:00 a.m. on

20  June 18th?

21    MR. GRIFFITH: Correct, your Honor.

22    THE COURT: Ms. Cole?

23    MS. COLE: That week, my partner is at a conference in

24  Seattle and so I have primary childcare duties. Is there any

25  way that we could do it telephonically instead of in person?

1          THE COURT:  For oral argument, I would strongly prefer

2     to do it in person because this would be a more extensive

3     argument.

4          MS. COLE:  Okay.

5          THE COURT:  I would also be able to do it the

6     following week, it's a week further, for the parties to get a

7     resolution of this matter but --

8          MS. COLE:  Understood.  We will -- I will find a way

9     to make that date work, the 18th or the 19th.

10         THE COURT:  And I could also do it the 24th or, I

11    suppose, Monday the 23rd of June which is just a few days

12    later.  Would that work better with your schedule, Ms. Cole?

13         MS. COLE:  I think that the 18th or 19th would be -- I

14    will figure out a way to make it work.  I just don't want to

15    push this out any further --

16         THE COURT:  Well, why don't we do this --

17         MS. COLE:  -- and so I can make it work.

18         THE COURT:  -- I'll set it for the 18th at 11:00 a.m.

19    I believe I could do the 18th at 11:00 a.m. and we could do it

20    as a video conference.

21         MS. COLE:  Okay.

22         THE COURT:  It's not my preference for substantive

23    arguments but for this matter since I'm not anticipating that

24    it will require a lot of testimony -- in fact, I don't know

25    that I'm expecting it to require any testimony at this point --

1    we can do it -- we can plan to do it by video conference on

2    June 18th at 11:00 a.m.

3              MS. COLE:  That would be much more convenient for

4    Mr. Callington and his counsel and we appreciate the

5    accommodation.

6              THE COURT:  And will Mr. Callington be available to

7    appear for that hearing, that video conference?

8              MS. COLE:  Of course.

9              THE COURT:  Would that also work for you,

10   Mr. Griffith?

11             MR. GRIFFITH:  Yes, your Honor.

12             THE COURT:  Okay.

13             MR. GRIFFITH:  Your Honor, I have to check with my --

14   did you want the client representatives to be there?

15             THE COURT:  So it may be beneficial to have a client

16   representative.  So, look, this is -- and I appreciate this is

17   again an awkward fit procedurally for what you are hoping to do

18   with respect to this information and whether it's going to be

19   restricted in its use or not restricted.  So if there is a

20   person who is going to provide a declaration and it may be

21   useful for that person to be present to answer questions about

22   the declaration, that may be useful to have such a person

23   present.  I don't know exactly what you're going to put forward

24   to support the claims here.  But again, one of the things that

25   makes this request a bit unusual is that there doesn't seem to

1    be a dispute that things were taken by Mr. Callington when he

2    left.  The dispute here seems to be more about legal issues

3    regarding whether or not taking such information was a breach

4    of any duty that should, you know, form the basis for a legal

5    action.  And so it may be that this comes down to legal

6    arguments but it would be very helpful for me to have an

7    evidentiary basis to know what it is -- not just allegations,

8    but some evidentiary support for why it is that the plaintiff

9    here believes it's going to be able to prevail on its claims

10   that trade secrets were taken in violation of federal and state

11   law and that duties under contract and common law breach of

12   fiduciary duty were breached so hopefully that answers your

13   question.

14           MS. COLE:  Okay.

15           MR. GRIFFITH:  It does.

16           THE COURT:  Okay.  Hopefully we'll be able -- that

17   will enable us to expedite getting a ruling on the anti-SLAPP

18   issue.  I know that there's been some back and forth on how to

19   address that but I think this will tee up that issue as well.

20           Okay.  In the meantime, I still have a reply date on

21   the issue of the amicus brief.  I see that there was a motion

22   filed earlier today by plaintiff's counsel in opposition to the

23   amicus so I'll see if there's a reply that's filed and then I

24   should have everything that I need on that issue to move

25   forward.  I will also --

1          MS. COLE:  Your Honor --

2          THE COURT:  Yes, Ms. Cole?

3          MS. COLE:  Your Honor, I'm sorry.  Just a quick point

4    of clarification on the protective order.  So in the interim, I

5    imagine that Document Number 17 of the protective order that is

6    currently in place will remain in place; is that correct?

7          THE COURT:  That is my intention.  I think it is

8    appropriate for some things to remain in place until this

9    preliminary injunction hearing can take place --

10         MS. COLE:  Understood.

11         THE COURT:  -- so it can be accelerated or not.  It is

12   not my intent for Mr. Callington to be in any sort of a Bocce

13   situation especially since I don't hear plaintiff's counsel

14   saying that they want to prevent him from exercising his First

15   Amendment rights or cooperating with law enforcement or

16   government inquiries.

17         MS. COLE:  Understood.  And -- and we understand the

18   Court's reasons for that.  I would just ask UL if it would have

19   any objection to striking Paragraph 6 from the interim

20   protective order.  During that time, that provision has been

21   burdensome and difficult to comply with.  And that is the

22   provision saying that if Mr. Callington receives a subpoena or

23   other request from federal, state, or local law enforcement or

24   government agency, then he is to promptly notify UL's counsel

25   of record.  That provision is -- it's just not workable, even

1   in the short-term have been very challenging and I don't think

2   that that provision goes to any of the concerns or issues

3   discussed today.

4        THE COURT:  Is the concern about him providing

5   documents or providing -- just give me the page -- in other

6   words, his speaking with a government agency or him providing

7   documents to a government agency?

8        MS. COLE:  The concern is that the order directs -- it

9   imposes an obligation on Mr. Callington to inform UL of

10  his -- if he receives a subpoena or a request for information

11  from a governmental authority.  In many types of instances,

12  disclosing to a target of an investigation in the instance of a

13  subpoena or a request for information would put him in a

14  position where he would be violating other statutory provisions

15  such as a seal provision, for example.

16       MR. GRIFFITH:  I mean, they are the -- I think you

17  know the obvious intent of that language is it gives UL notice

18  that documentation that was internal to UL that we assert is in

19  Mr. Callington's possession will be turned over somewhere

20  without UL having a chance to try to protect it if it's

21  confidential or trade secret.  I don't know why that's

22  burdensome to him.  I mean, that notice would come from you;

23  not from us.

24       THE COURT:  So, Mr. Griffith, hypothetically if your

25  client were engaged in illegal activity and were the subject of

1   a law enforcement investigation, would you expect defense

2   counsel to notify you that they had been approached to provide

3   information as part of an ongoing confidential law enforcement

4   investigation of your client?  And if they didn't, would you

5   consider that to be a breach?

6           MR. GRIFFITH:  Not if it was a criminal proceeding,

7   your Honor.  But in this case if it is a situation where it

8   is -- he's been subpoenaed to provide documentation that he may

9   have obtained from our client that was internal documentation,

10  not out in the public, giving our client a chance to protect

11  that from disclosure at least get it marked confidential so

12  that it doesn't -- if it gets in the federal agency or a state

13  agency, it's not subject to a FOIA request that a competitor

14  can get so it's really just more of a procedural device to

15  add -- to give the company protection over its own information.

16          THE COURT:  Any response from Ms. Cole?  Is that the

17  type of thing that you're concerned about?

18          MS. COLE:  The type of thing that we are concerned

19  about is that if a government agency asks Mr. Callington for

20  documents in his possession, we would -- Mr. Callington should

21  be entitled to comply with that request without fear of

22  violating a court protective order.  And then to the extent

23  that -- I will leave it at that.  Yes.

24          MR. GRIFFITH:  And that's -- that's just a notice

25  provision.

1          MS. COLE:  But there's no basis for imposing a legal

2     obligation on Mr. Callington to provide UL notice if he is

3     cooperating with government authorities.

4          MR. GRIFFITH:  Yeah.  Our position would be if

5     he's -- if he is disclosing documentation that he took

6     improperly -- illegally from the company, it seems to us that

7     the company ought to at least have notice of where it's going

8     so it has a chance to try to protect the confidentiality of it.

9          THE COURT:  Okay.  I understand the issue, I believe,

10    and you believe that this is a concern, Ms. Cole, that is ripe

11    for consideration before the hearing date that I just asked

12    them -- I think -- what was that, June 18th?  In other words,

13    you either have received or you're expecting to receive a

14    request between now and June 18th that you think will pose an

15    issue if this order remains in place?

16         MS. COLE:  I wouldn't necessarily put it that way but

17    I will say that that provision in particular has already

18    burdened Mr. Callington's conduct vis-a-vis government agencies

19    and so we are seeking to have that restriction lifted because

20    there is no basis for it and it would not harm any cognizable

21    legal interest that if Mr. Callington were to disclose

22    something to a, you know, federal or state government agency,

23    he should be entitled to do so.  I think there are other

24    protections in place for companies like UL to protect its trade

25    secret from discoverability through FOIA requests.  That's many

1    levels of attenuation for the level of burden on his conduct

2    that is being imposed by such a notice provision.

3          THE COURT:  And so you are referring to situations

4    where there has been a formal request for information either

5    pursuant to subpoena or otherwise from a federal, state, or,

6    local law enforcement or government agency; is that correct?

7          MS. COLE:  I'm referring to that situation and I am

8    also referring to a situation where the various other types of

9    situations in which Mr. Callington wishes to provide

10   information to a government authority, not a private party, not

11   the press, a government authority that is --

12         THE COURT:  So if he wants to affirmatively disclose

13   it, this is not a situation where he is being contacted to

14   provide it.  He wants to initiate government interest in the

15   information that he has or at least be able to do so; is that

16   correct?

17         MS. COLE:  That would be another one of several ways

18   in which the government -- in which he should be entitled to

19   provide information to authority.  There are many other -- I

20   guess that's the problem with this language.  It is

21   tremendously burdensome.  I don't see how or why UL should be

22   entitled to and put any kind of an obligation vis-a-vis

23   Mr. Callington's communications and contact with federal and

24   state government authorities.  There's no basis for it.

25         MR. GRIFFITH:  Let's be clear here.  First of all, I

1  did receive the subpoena to provide documents that are UL

2  documents and we did not receive notice of that but that

3  happened.

4        MS. COLE:  I'm not here to be examined by UL's counsel

5  but if your Honor has a question for me, I would be happy to

6  answer it.

7        THE COURT:  Okay.  So I'm not going to go too far down

8  this road.  What I have in front of me is a request from

9  defense counsel that Mr. Callington be relieved from the

10  obligations in Paragraph 6 so that he can freely disclose

11  information to federal, state, or law enforcement and I also

12  have the opposition to that from the plaintiff's counsel

13  basically saying that they want to be able to control

14  information that they believe was illegally obtained.  I will

15  take that under advisement.  It does not seem that there is

16  going to be any further productive arguments on that issue

17  during today's hearing and I may issue an order clarifying

18  Paragraph 6.

19        What I would say is that to the extent this is an

20  issue that needs to be addressed prior to the 18th, we can

21  accelerate the schedule in connection with the hearing on the

22  preliminary injunction that would apply to the dissemination of

23  the information.  Right now, I've given plaintiff's counsel two

24  weeks to file a motion.  I've given defense counsel two weeks

25  to respond to the motion, and then I've set a hearing two weeks

1    after that.  If we need to accelerate this process, we can do

2    that.  We can move this up so that there is, you know, one week

3    and one week for a response, a motion and a response and then

4    we'll try to set a hearing before then.

5            So the appropriate way to deal with this request would

6    be through motion practice.  We can do it on an expedited

7    basis.  Right now, I have a schedule in place.  If there is an

8    immediate concern where one side is worried about doing

9    something that's going to violate this order or needing

10   additional protection beyond what's in the order, you can file

11   an expedited motion for relief but I need something more

12   concrete than vague, general statements about something that

13   may or may not happen.

14           If you're concerned, Ms. Cole, file a motion, ask for

15   leave to have *ex parte* with me or to be able to file something

16   under seal that reveals, you know, what your issue is.  But

17   right now, all I can take from what you're saying is that your

18   client wants to be able to share freely documents and

19   information that he has in his possession with government

20   agencies even if they aren't contacting him first.  I will take

21   that under advisement.  I may go ahead and issue a modification

22   to this order.  But if there is a specific concern, something

23   that he wants to do and he's not sure if he's able to do it, I

24   would encourage you to file a motion.  And if you need to file

25   it and seek *ex parte* relief, you can seek *ex parte* relief if

1    the concern is you don't want to violate some sort of

2    obligation under another statute but speaking in these vague

3    terms doesn't give me the information I need in order to make a

4    ruling on a specific situation.

5          MS. COLE:  Understood, your Honor.  Thank you.

6          THE COURT:  And again, I -- if what you need is faster

7    relief, ask for a more expedited briefing schedule.  We'll set

8    something.  I wanted to give the parties a fair amount of time

9    to make your best arguments.  But if you need this issue to be

10   teed up more quickly, we can shorten the schedule.

11         For now, the hearing is set for the 18th at 11:00 a.m.

12   It will be set as a video hearing.  That will also serve as the

13   next status hearing in this case and my intent is to resolve

14   the anti-SLAPP issue to the extent possible at the same time as

15   the document information distribution issue.  The interim order

16   will remain in place.  I'm taking under advisement the request

17   to modify Paragraph 6.  Okay.  Thank you all for your time this

18   afternoon.

19         MR. GRIFFITH:  Thank you, your Honor.

20         MS. COLE:  Thank you, your Honor.

21      (Concluded at 2:50 p.m.)

22                    *  *  *  *  *
         I certify that the foregoing is a correct transcript
23   from the record of proceedings in the above-entitled matter.

24   */s/Laura LaCien*_____      *May 30, 2025*_____
     Laura LaCien, CSR, RMR, CRR          Date
25   Official Court Reporter