IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UL LLC, Plaintiff, v. JOSHUA CALLINGTON, Defendant. | Case No. 24 C 5631<br>Chicago, Illinois<br>November 27, 2024<br>10:51 a.m. |

TRANSCRIPT OF PROCEEDINGS - TELEPHONIC MOTION HEARING
BEFORE THE HONORABLE ANDREA R. WOOD

APPEARANCES:

For the Plaintiff: LITTLER MENDELSON
BY: MR. RICHARD T. KIENZLER
321 North Clark Street, Suite 1100
Chicago, Illinois 60654

LITTLER MENDELSON, PC
BY: MS. EMILY E. LEVY
MR. KEVIN E. GRIFFITH
41 South High Street, Suite 3250
Columbus, Ohio 43215

For the Defendant: BEVERLY PLLC
BY: MS. AGATHA M. COLE
43 West 43rd Street, Suite 159
New York, New York 10036

Court Reporter: BRENDA S. VARNEY, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Suite 2144D
Chicago, Illinois 60604
(312) 554-8931
*brenda_varney@ilnd.uscourts.gov*

* * * * * * * * * * * * * * * * * *

PROCEEDINGS RECORDED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard via telephone:)

THE COURT: Good morning. This is Judge Wood joining the line. I believe we are ready to call the next case, so the courtroom deputy will do that, and then I will get appearances.

Laritza.

THE CLERK: Calling case 24 CV 5631, UL LLC versus Callington, for a motion hearing.

MR. KIENZLER: Good morning, Your Honor. This is Richard Kienzler for UL LLC, the plaintiff. I'm joined on the line by Kevin Griffith and Emily Levy.

MS. COLE: Good morning. This is Agatha Cole of Beverly PLLC for Joshua Callington.

THE COURT: Thank you.

Okay. So I set this hearing in order to address the motion for entry of a confidentiality order and motion to, I guess, dissolve the interim protective order.

I think what I would like to do, first of all, is to make sure that everyone is on the same page as to what the goals are of having one or both of these orders in place, and then we can go from there.

And I suppose I'll start with the party who's seeking some protection. That is the plaintiff here. I'll start with what a basic run-of-the-mill confidentiality order in civil litigation is generally designed to do which is to protect information that's going to be produced in discovery. Here,

however, the plaintiff is, I think, seeking to include under the umbrella of things that have to be maintained as confidential information that the plaintiff alleged was improperly taken by the defendant.

Is that correct, Mr. Kienzler?

MR. KIENZLER: Yes, that is correct, Your Honor.

THE COURT: And what sort of restrictions are you seeking to put on Mr. Callington with respect to things that you believe he has taken?

MR. KIENZLER: Judge, simply the restrictions that we're seeking to put on documents in his possession are the same types of restrictions that a party has the option of doing in a case where a confidentiality order is entered, meaning do I envision that every document that he has in his possession will be designated confidential subject to a protective order? Probably not because we'd have to have a basis to designate them.

But what we would like to do is review the information in his possession and make good faith confidentiality designations on documents that will, of course, be subject to challenge by Mr. Callington if he thinks we've over designated or done so improperly or are trying to somehow restrict his ability to use a document outside of this litigation in a way that's improper.

So, from our perspective, what we are seeking to do is

treat the information in his possession, as information is often, not in every case, but often treated for the purposes of discovery.

One final point. Because it is something that Mr. Callington and his attorney have raised time and again, we are not seeking some sort of restraint on speech, and we are not interpreting the order we are asking this Court to enter as anything related to a gag order or something of that kind.

THE COURT: Are you seeking to have Mr. Callington return the information that you allege he took?

MR. KIENZLER: Well, Judge, ultimately, that's going to be relief we seek in this case, but at this stage of the case, we recognize that Mr. Callington and his attorneys -- we don't exactly know what affirmative defenses they're going to make. We don't exactly know what counterclaims they're going to file.

They have indicated that both of those types of things are coming our way. And it's our -- they've indicated that, at least from our perspective, the documents and information that are in his possession somehow support causes of action that he has against UL.

So what we're looking to do under the unique circumstances of this case is make confidentiality designations, but we're not seeking an immediate return of the documents because we're trying to avoid the sort of preliminary

fight about a return of documents that he seems to indicate support causes of action that he's going to be filing.

THE COURT: And for purposes of making the designation, are you suggesting that he provide you with copies of everything and you're going to designate it as confidential and those are the things that would be covered by the confidentiality order?

MR. KIENZLER: Correct.

THE COURT: And what would happen if Mr. Callington wanted to talk to someone other than a government regulator or law enforcement about the contents of documents that the plaintiff wants to treat as confidential, so not disclose the documents but discuss the documents?

MR. KIENZLER: Judge, I see that working out in a very straightforward way that I think is actually everyone would probably benefit from having the confidentiality order that we are proposing.

And if I could explain, what I mean is Mr. Callington is -- under our scenario, our proposed scenario, he will make available for review the documents that are in his possession. We will review them.

Let's say -- just for a hypothetical, let's say 50 percent of them get designated and 50 percent of them don't. So obviously just a hypothetical, but the 50 percent that don't would fall under the rubric of any document that is normally

produced in discovery without any designation. A party that --

THE COURT: So I'm going to pause you there, though, because the document wasn't received in discovery, and doesn't that complicate things? Because this is not a situation where the order you're proposing is designed just to address things that are provided in the course of normal discovery procedures.

MR. KIENZLER: No, that's correct. I mean, obviously, I understand that, Judge. That's why -- I mean, we are basing our order on the model confidentiality order with a deviation that is trying to account for the fact that Mr. Callington, without our authorization, has taken documents that we don't believe he should have taken.

THE COURT: Sure. Allegedly at this point.

So for the documents that would not be designated as confidential, do you want those to still be treated as discovery documents which means they could only be used for purposes of this litigation?

MR. KIENZLER: Well, Judge, let me share my understanding of how the general framework of discovery normally works.

I mean, in general, if a plaintiff produces documents to a defendant without any restrictions, without a confidentiality order in place in that case, the defendant might not have any reason to use them or disclose them, but there's no restriction on their ability to do that.

That's the point of having a confidentiality order in the first place, because it places restrictions on the ability of a party to only use the documents for purposes of the litigation, and it doesn't mean that the documents would never be filed on the public record. It doesn't mean that the designation can't be challenged. It is simply a designation for purposes to allow restriction on the use of that document unless and until a further ruling is made.

THE COURT: Well, normally, a confidentiality order is not -- doesn't contain express provisions applying to discovery materials that are not going to be designated as confidential.

There are rules of professional conduct that apply for counsel and get extended to pro se litigants with respect to what you can do with materials that you obtain in discovery; but normally, there wouldn't be a special provision in the confidentiality order saying, "And by the way, if something is not designated as confidential, you still have to treat it a certain way."

MR. KIENZLER: I completely agree with that, Judge, but I don't think that we -- I mean, if you're reading the order that we had proposed as seeking to create a scenario where after a review of the documents in Mr. Callington's possession he has nondisclosure obligations even for a document we don't designate, then maybe I've submitted an unclear order, but that's not what we're attempting to do.

THE COURT: But, at this point, frankly, I'm less concerned about interpreting your proposed order and more concerned about understanding what the parties want to accomplish because, frankly, in the submissions that I've seen, the parties seem to be talking about different things. And so I want to try to first have some common understanding as to what the parties' goals are with respect to these orders, and then we can figure out whether what's been proposed by the plaintiff is the appropriate way of doing it.

So I take it that you are saying that if something is not designated as confidential, you are not imposing or not seeking to impose any additional nondisclosure obligations?

MR. KIENZLER: That's correct, Judge.

I mean, I'll say again what we're trying to do is bring what is an unusual set of circumstances with a defendant in possession of a vast amount of a plaintiff's documents into the normal framework of discovery. That's our intention.

So if we designate a document that is in Mr. Callington's possession as confidential, we would be doing so with a good faith basis as to why we believe that it should be treated as confidential for purposes of discovery.

Mr. Callington would get the right to challenge that designation, and if the parties don't agree on whether the documents should be designated or de-designated, then that issue would be brought to the Court, either to this Court or to

the magistrate judge. And so we think proceeding with our confidentiality order will actually bring more certainty to this case than currently exists.

THE COURT: So I don't know that it's terribly unusual for a defendant in a case such as this to have information from an employer.

I actually have a good number of cases that are brought based on breach of noncompete agreements or people who were fired and take things with them to start other businesses, so I'm taking it out of the, you know, kind of whistleblower context. And, in those cases, most often, the litigation starts with some sort of a motion for a temporary restraining order or a preliminary injunction where there's some discussion of the merits of the case and then actual restrictions being sought on the material, usually immediate return of any documents that were taken, which is why I was asking about whether that's something you're seeking at this point, to have any of the documents that you allege were taken returned at the outset.

And I understand the answer to that to be no, in part, because you have been informed that some of that information may form the basis for a counterclaim or something that Mr. Callington may have.

So let me then turn to defense counsel. And, again, part of my concern here, Ms. Cole, is it seems like the parties

are talking about different things.

I did directly order the parties to meet and confer regarding a confidentiality order, and based on the correspondence I saw attached to Plaintiff's motion, it looks like you decided that you weren't going to do that. Why not?

MS. COLE: I don't think that that is a completely accurate reading of what happened here.

I think we went to UL's counsel and said, you know, Mr. Callington is open to voluntarily entering into a protective order that covers any information or documents that would be covered under the Defending Trade Secrets Act, anything that they're alleging is a trade secret. Whatever secret sauce UL wants to protect, we have absolutely no objection to entering a voluntary stipulated confidentiality order as to those materials.

And I think that, you know, the few cases in which confidentiality orders are entered ahead of discovery are cases where the parties agree that it would mutually serve everyone's interests and stipulate to such an order.

In cases where some kind of a restraint is entered ahead of discovery on information and disclosures, that's typically -- I mean, that is an injunctive -- a court-ordered injunctive remedy. And so I think that if that is what UL is seeking here in terms of protecting information that would be covered by their nondisclosure agreement or their

confidentiality agreements, then we can't agree to such a broad and all-encompassing confidentiality order because we don't think that they're entitled to it.

You know, there are countless sources of authority supporting the notion that NDAs and confidentiality agreements are unenforceable as a mechanism for suppressing employee speech about conditions of employment, their unlawful or unethical conduct and other bad acts. There's the Cohen decision by the NLRB, there's the state whistleblower laws and the anti-SLAPP laws, Federal Tort Claims Act provisions and even the DTSA cases.

THE COURT: Okay. I'm going to stop you there because, again, as I said before, the parties, I think, are talking about different things, so I want to make sure that we're clear here.

So a typical confidentiality order that would be entered pursuant to Federal Rule of Civil Procedure 26(c) is not a temporary restraining order, it's not an injunctive relief order; it is a discovery mechanism. It is not governed by Federal Rule of Civil Procedure 65 which deals with temporary and preliminary and permanent injunctive relief. It is governed by the discovery rules of Rule 26(c).

And that category, the information that is sometimes treated as warranting protections as part of the discovery process of litigation under Rule 26(c), frequently goes beyond

trade secrets. In fact, most of the information that's covered in the typical confidentiality order is not a trade secret.

In the vast majority of cases where they are entered -- and they are entered frequently -- it's not a trade secret that's being concerned and it's not a nondisclosure agreement or anything like that.

So that's why I think it is important to distinguish here between the protections that normally would be requested as part of the discovery process and any additional level of protection that is being requested or rejected with respect to things that go beyond discovery and how something is going to be used in the litigation.

So I'm stopping you there, Ms. Cole, because I think you're talking about something different than a confidentiality order. What you are talking about --

MS. COLE: I --

THE COURT: I'm going to ask you a specific question.

What you are talking about is your concern that the effect of the proposed order from the plaintiff is that it is, I guess, going beyond protecting things as part of the discovery process and trying to keep your client from sharing the documents he has in his possession with others and from discussing things that he saw and heard during his employment with others? Are those the two things that you're concerned about?

MS. COLE: Yes, Your Honor. Yes and, if I may --

THE COURT: Go ahead.

MS. COLE: So, yes, the "and" here is really important, and I understand and appreciate the difference between a standard confidentiality order and a court-imposed injunction, or "restraint" is the word. But the effect issue, it's not only insofar as what it covers but also in terms of the procedure, right?

A confidentiality order typically is a mutually-agreed-upon, stipulated order. Of course, there are exceptions to that.

THE COURT: Well --

MS. COLE: I guess there are exceptions to that.

THE COURT: Sure.

So, Ms. Cole, let's talk about the restraint on speech because in what way are you concerned that the plaintiff is trying to restrict your client's speech?

In other words, let me get back to my original question which is: What are the parties trying to achieve here? What is it that your client wants to be able to do that he's concerned the plaintiff's proposed order will not let him do?

MS. COLE: Well, for starters, the way that they have, you know, defined protected information at least in the interim order is referring not only to documents but to documents and

information which, you know, that could mean literally anything. And it goes, you know, well beyond what's allowed by the DTSA.

I guess it's not even clear what information they're seeking to -- like, it seems like either they're seeking to protect everything to protect their clients from disclosures that might injure their reputation, that might expose unlawful and unethical conduct.

And I think that the really important carve-out here is, you know, if we're not narrowing the protective order to, you know, trade secret information and we're applying it broadly to things that are just marked as confidential, I think that there has to be a very clear carve-out that allows Mr. Callington to make disclosures or speak about things that relate to unlawful, unethical bad acts. And I can advise him on that. He has an attorney, and the law protects his interests in being able to do that.

I think that this so-called confidentiality order is specifically seeking to prevent him from making those types of disclosures not because there are trade secrets or commercially valuable information that might be disclosed but rather because it would be injurious to the reputations of UL and its clients for Mr. Callington to speak about their bad acts.

THE COURT: So --

MR. KIENZLER: Judge, can I --

THE COURT: Well, I have a question, and then I'll let you respond because it seems to me -- I will just tell you what my concern is with your protective order.

It seems to me that what you are trying to accomplish with your proposed confidentiality order is actually the type of relief that should be brought as part of a temporary restraining order or a preliminary injunction motion and that there are certain procedures and safeguards that are associated with that including certain findings that I would have to make. And I'm concerned that your proposed protective order is accomplishing an end run around the protections of Rule 65 because you are not seeking to just restrict use of information produced during discovery but actually talking about the subject matter of this case which is information allegedly misappropriated.

Why should you be able to go beyond protecting discovery without going through the steps of Rule 65?

MR. KIENZLER: Judge, my response -- and this is, in part, a response to what opposing counsel just said.

My response is that we are not seeking to do that. I mean, what we are seeking to do is you have created -- you have walked through two scenarios on this call this morning, a scenario governed -- or a scenario in which an order is entered for purposes of discovery that is governed by Rule 26(c).

You know, separate and apart from that, you have

talked about restrictive covenant litigation that involves allegations of a breach of a noncompete, a customer nonsolicit, an employee nonsolicit.

Those restrictive covenant cases are where I spend the vast majority of my time practicing, but the garden variety -- and I agree with you, many of those cases involve Rule 65 motions seeking preliminary injunctive relief or temporary restraining orders.

The difference between this case and those garden variety restrictive covenant cases is that a salesman going from Company A to Company B, in my experience, doesn't announce that the information that he has in his possession, whether it's a customer list or what have you, is going to support whistleblower claims against his former employer.

But, to circle back and finish, my response to the concern that what we are attempting to have entered is an end run around Rule 65 is that I don't believe that is what we're intending to do.

We are intending -- what we want to do is to impose Rule 26 standards on documents that are in Mr. Callington's possession.

MS. COLE: At the pleading stage, not at the discovery stage.

THE COURT: Okay. Pleading and discovery stage, it is not unusual at the outset to have a confidentiality order. And

we should be at the discovery stage, frankly.

MR. KIENZLER: Judge, if I could -- I apologize. I'm sorry to interrupt, but if I could just add one thing because I just want to -- in case I'm not clear, I just want to make sure to state on the record that what UL wants to do is we are not seeking to have the interim order which is Document Number 17, I believe, we are not seeking to have that remain in place. We are seeking to replace that order with the proposed order that we've submitted which is -- our proposed order is Document 22-1.

THE COURT: So what is the Federal Rule of Civil Procedure that supports entry of the order that you are proposing?

MR. KIENZLER: UL's order? Rule 26(c). Rule 26(c), Judge.

A Court may issue a protective order for a variety of reasons including: One, to specify terms for disclosure or discovery, and/or two, to require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Rule 26(c)(1)(B) and (G). That's from our motion on page 6.

THE COURT: And so you're saying that you are limiting what you would designate as confidential just to what's described in 26(c)(1)(G) which is back to trade secret, confidential research, development, or commercial information?

MR. KIENZLER: Judge, yeah. If you look at Docket Entry 22-1 which is our proposed confidentiality order, the basis for this order is the Northern District of Illinois' model confidentiality order which is available on the website.

THE COURT: Yes, I know that. And I think maybe my question here is not precise because, again, I sometimes feel like the conversation is not talking about exactly the same thing.

Typically, Rule 26(c) is invoked to protect material obtained through discovery. Your order, I think, understandably wants to address information obtained through theft and misappropriation allegedly.

My concern is whether Rule 26(c) which is a discovery rule provides a basis for you to restrict the use of information not obtained through discovery but obtained through theft, misappropriation, et cetera.

Now, I think your point about some of this information potentially supporting claims and defenses and perhaps being relevant to the litigation for those purposes is an interesting one, but when I suggest that maybe there are some Rule 65 issues implicated here, that's what I mean is that there's information obtained through discovery which is what Rule 26 governs, and then there's information obtained by a party through theft and misappropriation which is what you allege.

Do you have any authority for the proposition that

this is the appropriate way to deal with the second category of documents and information?

MR. KIENZLER: Judge, I've not found a specific case. All I can tell you is that just because most restrictive covenant cases and many trade secret cases begin with Rule 65 motions does not mean that a trade secret case or a restrictive covenant case must begin with a Rule 65 motion.

THE COURT: I am certainly not suggesting that it does.

MR. KIENZLER: And so, I mean, what I would say is that just because UL has not at this point filed a Rule 65 motion does not at all mean that I believe it should be, you know, stripped of its rights to protect, through confidentiality designation, documents that are in the defendant's possession and which he is stating, you know, are going to be used to support causes of action against us.

So, admittedly, Judge, this is, to me, a unique situation because it's not a case that really fits within what I will call the garden variety restrictive covenant case. And the reason why is because you have Mr. Callington suggesting that he's going to be filing counterclaims based on some sort of whistleblower theory which will become clear when he files his responsive pleading. So that makes it unlike the garden variety case.

To your point from earlier in this hearing that there

are certainly cases that begin with information belonging to a plaintiff that is in a defendant's possession, I, of course, agree with you.

And I agree with you that there's many instances where that information is -- you seek an immediate return of that information; but, again, those cases are unlike this case where we're trying to -- what we're trying to do is avoid protracted litigation about a return of information when Mr. Callington is announcing to us that he's going to use the information in his possession to support causes of action against us.

So that was the intention. That's the intention of what we're trying to do.

THE COURT: Yes. And, to be clear, I'm not suggesting that every noncompete/misappropriation of trade secret case, all of it starts with a TRO at all. That's not my suggestion, that everyone must start that way or ever have one.

I think the issue here that I'm trying to crystallize is what the parties -- one, what you want to be able to do and what you want to prevent the other side from doing; and then two, what the legal basis is for that sort of order to be entered.

One more question for you, Mr. Kienzler.

There was a suggestion by Ms. Cole that her client is concerned that the word "information" is broad and that that, I guess, will have some sort of chilling effect on her client's

speech because of, I suppose, things being designated as confidential information but it may be something that's in his head that he may want to talk about as opposed to giving a document to somebody.

Would you expect that he would be prevented from disclosing information that he knows as a result of his work at UL?

MR. KIENZLER: Well, Judge, I would hope -- I mean, the answer is that it depends.

I will tell you that I don't believe UL or any, you know, employer or entity purporting to have trade secrets -- it is an unenforceable and an untenable proposition of the law that an employer can prevent a former employee from using general experience, you know, time spent in the industry, et cetera, et cetera.

I don't believe that UL can restrict Mr. Callington from discussing what he perceives to be violations of the law, but the phrase -- the ability to designate a document as confidential, this is from the model order that, again, you're familiar with. The definition of "confidential information" as used in the model order is something that the producing party believes falls within one or more of the following categories: B, information that reveals trade secrets.

So, Judge, part of what the model order proposes and part of what we recognize is that if we designate something

that they don't like, they can challenge that designation.

But, to answer your question, there's a difference between Mr. Callington disclosing to someone general information about his time spent in the industry versus disclosing trade secrets or information that is alleged to be a trade secret.  There's a difference there, so it's hard to give you an easy, straightforward answer as to can he disclose information about the documents in his possession.  Maybe, maybe not.

THE COURT:  And so what is the procedure that you believe Mr. Callington would need to follow if he were trying to decide whether or not to have a conversation about his employment with a nonparty to this case?

What would he look to in order to determine whether it was something that he was allowed to talk about or not allowed to talk about under your proposed order?

MR. KIENZLER:  Well, again, Judge, this is -- from our perspective, this would bring a lot of -- more certainty to this case than currently exists because what he would look to is the documents themselves.

If we have designated a document as confidential subject to protective order, then if he wanted to discuss the contents of that document with a third party, he could challenge the designation of that document.

If he didn't want to -- we could add something where

he could file something in camera to the Court to account for this apparent unique circumstance, but he would look to the documents themselves which is what happens in litigation all the time.

THE COURT: Okay.

MR. GRIFFITH: If I could, Your Honor, this is Kevin Griffith.

THE COURT: Go ahead, Mr. Griffith.

MR. GRIFFITH: Following up on what Mr. Kienzler just said, this process gives clarity.

His obligations as any individual who works somewhere, if he signed a nondisclosure agreement, he's got a contractual obligation. He's got common law duty obligations. He has obligations under federal and state trade secret statutes. And if he decides to disclose things, you know, he does so at his own risk unrelated even to this litigation. Okay?

And what we're trying to do is let's get designation on what he's got, and then he can use it in this litigation. And also what we've proposed, he can use it if he wants to make complaints to the government.

Opposing counsel has talked about, you know, he should be able to make claims of unlawful, unethical bad acts and make those allegations, and we have a carve-out that lets him do that with a governmental agency if he's using these documents and the information in these documents.

So we're just trying to give it clarity versus what he's currently doing. He's at his own risk under the laws that I just stated.

MS. COLE: Your Honor, if I may please speak to that?

THE COURT: Go ahead, Ms. Cole. Then we'll wrap things up here.

MS. COLE: Yeah.

I mean, as gracious as the gratuitous offer to control Mr. Callington's conduct for his own benefit may be, even if it is the most well-intentioned proposal, it is effectively -- not effectively. It would actually be controlling his conduct, speech, and ability to proceed as he and his counsel see fit, so it is injunctive relief.

And Your Honor asked a very important question that I think is key here which is why should UL be allowed to seek this relief without having made the requisite showing for injunctive relief so that this Court can make appropriate findings in determining whether they are entitled to injunctive relief.

I did not hear a clear answer from opposing counsel on that point. And if for no other reason, then that seems like a very obvious reason why the request should be denied.

THE COURT: Well, or they should potentially then have to file a motion for a preliminary injunction. And then your client might have findings with respect to the likelihood that

he did misappropriate materials and violate confidentiality documents, and then he might actually get an order that perhaps would go much further than what they are proposing in their confidentiality order.

MS. COLE: Well, we are perfectly comfortable with that procedure.

I think, based on my understanding of the facts in this case which haven't been put forth fully before the Court, but we would prefer to assume that risk than to be restrained from the get-go without even having had an opportunity to really present our side of the case.

THE COURT: Sure.

But, Ms. Cole, I don't know that you have yet clearly answered my question as to what it is exactly that your client wants to be able to do that he is concerned this order won't let him do. You keep redirecting towards what the defendants want and what they're trying to do.

Is it the case that Mr. Callington wants to be able to share documents that he has in his possession from his former employer with third parties who are not law enforcement?

MS. COLE: Yes, it is.

And if I can just explain that a little bit further, this is -- as everyone here knows, the subject matter of this case is Mr. Callington's disclosures to The New York Times which, as far as I can tell, do not contain trade secrets;

however, I think that UL has a point in arguing that the materials he disclosed to The New York Times were covered by their nondisclosure agreements and confidentiality agreements and internal policies. However, the documents that he disclosed to The New York Times only serve to corroborate his allegations about child labor issues. So, to that end, those documents are things that under applicable state and federal law he is allowed to disclose.

Now, of course, I'm sure that UL has 100 different interpretations of what those documents are, and I think that it's fair to say that those documents substantively contain material that Mr. Callington is entitled to share. And perhaps UL is entitled to protect both of those things.

And so what we want, first of all, we are willing to enter into a confidentiality order voluntarily, but it has to be specific as to anything that they are alleging is a trade secret, as to anything that they're alleging cannot be disclosed and carved out from the bad acts and unlawful conduct at issue with respect to many of the companies that Mr. Callington was auditing.

THE COURT: Okay. You can finish your thought, Ms. Cole, since the other side had, I think, a little bit more time today to express their views. I will let you finish your thought, and then we'll need to wrap up.

MS. COLE: Thank you, Your Honor.

I think just the final few things that I would say are with respect to the chilling effects that Your Honor identified, I just want to make the point that the chilling effect here is not only with respect to Mr. Callington but also with respect to other employees, current and former employees at UL, who, you know, may be watching this case, may be aware of this case, and will conform their conduct accordingly. And I think UL is very aware of that.

And, you know, there is one other point that I had wanted to make to this Court which may or may not be helpful, but since you're giving me the additional time, I'll go ahead and make it which is that, you know, in terms of Mr. Callington, what he has done here, it made me think back to, you know, the Enron scandal and Arthur Andersen's role in that whole debacle. And I think that it's helpful for us to imagine what if one of the auditors at Arthur Andersen had stepped up and said, "Something's not right here. The audits aren't right. There's a problem in the auditing process. This company is up to no good." And I think that's precisely what we have here. You know, it's not -- we're talking about ESG certification frauds and social compliance issues, but, ultimately, he has come out and said there's a problem here.

And, you know, rather than, you know, celebrating what I think was a very brave and selfless act in furtherance of the public interests, he's been punished. He's been fired, he's

been black listed from the industry, and now he's -- I think UL's principal goal in this litigation is to retaliate against him further but, more importantly, to silence him and others who might otherwise speak.

THE COURT: Okay.

MR. KIENZLER: Judge, if I may, I have to just for the record -- and I will not be long, but, obviously, I have to for the record say that we disagree with the viewpoint just shared.

There's been no responsive pleading filed. We'll make any appropriate response to any pleading that is filed, but for today's purposes, we disagree with the recitation that has just been made. And so I'll just leave it at that.

THE COURT: Yes. Mr. Kienzler, by the way, do you know what information from your client or does your client know what of its information was taken by Mr. Callington?

MR. KIENZLER: We have some indication of that, Judge, and we've gained some indication into that through the investigation handled by a different law firm, you know, prior to the filing of this lawsuit, but we don't have full clarity.

THE COURT: Is part of the benefit to your process that you propose for getting to review all the materials and designate them as confidential that it will help you get certainty as to what Mr. Callington took with him?

MR. KIENZLER: Yes, Judge.

THE COURT: Which I would imagine is something that

would be a proper subject of a discovery request and would have to be turned over and disclosed, exactly what he took with him when he left in any case.

I would assume, Ms. Cole, that you wouldn't disagree with that?

MS. COLE: I would not disagree with that at the discovery stage, Your Honor, but I don't believe that we will make it to the discovery stage in this case.

MR. KIENZLER: Judge, with all due respect, the predictions about whether we're going to make it to discovery or what UL's intentions are for filing this lawsuit are really not, in my opinion, helpful to the issue before the Court.

If the Court would like, we could file a motion for expedited discovery which I think would be granted. I don't want to predict that, but you just heard Ms. Cole say that the information in his possession is the subject of discovery, and so we're seeking -- what we're seeking to do is sort of treat it as such.

THE COURT: Okay. So, Ms. Cole, you say you don't think you're going to make it to the discovery stage because you're going to file a motion on January 6th that will be a meritorious motion to dismiss? Is that what you are suggesting?

MS. COLE: Correct. Correct, Your Honor.

THE COURT: You should also keep in mind that

discovery is not necessarily stayed pending the resolution of a motion to dismiss, and initial disclosures are set to go forward January 21st. And we have a status hearing in between to discuss what's going to happen with discovery.

So if part of what you're hoping to achieve ultimately is to postpone the onset of discovery until your motion to dismiss has been fully briefed and ruled upon, you will need to make a request for that because the ordinary progress of things is, you know, the default is discovery goes forward, so there has to be either a court order or agreement of the parties or a granted motion to stay discovery. So keep that in mind.

MS. COLE: Understood, Your Honor. And we have no problem with proceeding with discovery. I only mention it because it seems unorthodox to the effect of what UL is proposing is that there would be one-way discovery from Mr. Callington to them for the purpose of allowing them to designate his documents, and that's --

MR. KIENZLER: No --

MS. COLE: It seems like precisely -- this is injunctive relief, and if what they seek is injunctive relief, it makes sense that they should have to move for injunctive relief and make that showing.

THE COURT: Well, the idea that it's one-way discovery is an interesting one and perhaps an accurate description, though that doesn't necessarily mean that it's not the right

approach.

Okay. We have had a very lengthy hearing. I have, I think, a very good idea of what the parties are trying to accomplish.

I am going to take another look at your respective motions. It is possible that I will issue an order asking for some supplemental briefing; but, for the moment, I'm going to endeavor to rule on the motions without any additional briefing. I'm taking them under advisement.

The interim order remains in place for now just to give me time to rule on these motions, and then we'll see where we go from there. I don't expect it will be very long because now that I've talked to the parties and I've seen your submissions and now that I understand that you're not going to reach agreement on a joint proposal, we tried that, I'll go ahead and make a decision on how we're going to go forward.

So thank you for answering my questions today, and have a good Thanksgiving.

MS. COLE: Thank you, Your Honor.

MR. KIENZLER: Thank you, Your Honor.

MS. COLE: Happy Thanksgiving to you and yours.

(Concluded at 11:49 a.m.)

* * * * * *

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*/s/ Brenda S. Varney* 7/3/2025
Official Court Reporter