1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UL LLC,                              ) Case No. 24 C 5631
                                     )
              Plaintiff,             )
                                     )
         v.                          )
                                     )
JOSHUA CALLINGTON,                   ) Chicago, Illinois
                                     ) August 7, 2025
              Defendant.             ) 1:22 p.m.

        TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING
              BEFORE THE HONORABLE ANDREA R. WOOD

APPEARANCES:

For the Plaintiff:      LITTLER MENDELSON, PC
                        BY:  MR. RICHARD T. KIENZLER
                             MS. EMILY E. LEVY
                        321 North Clark Street, Suite 1100
                        Chicago, Illinois 60654

For the Defendant:      BEVERLY PLLC
                        BY:  MS. AGATHA M. COLE
                        43 West 43rd Street, Suite 159
                        New York, New York 10036

Court Reporter:         BRENDA S. VARNEY, CSR, RMR, CRR
                        Official Court Reporter
                        219 South Dearborn Street, Suite 2144D
                        Chicago, Illinois 60604
                        (312) 554-8931
                        *brenda_varney@ilnd.uscourts.gov*

              * * * * * * * * * * * * * * * * * *
              PROCEEDINGS RECORDED BY STENOTYPE
    TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard via telephone:)

THE COURT: Good afternoon. This is Judge Wood rejoining the line. I believe we are ready to call the next case, so the courtroom deputy will do that, and I'll get appearances.

Laritza.

THE CLERK: Calling case 24 CV 5631, UL versus Callington, for status.

THE COURT: Do we have plaintiff's counsel?

MR. KIENZLER: Good afternoon, Your Honor. This is Richard Kienzler on behalf of UL. Joining me on the line is Emily Levy.

THE COURT: And defense counsel?

MS. COLE: Good afternoon. This is Agatha Cole for Mr. Callington.

THE COURT: Thank you.

Okay. So I have, at this point, issued a written opinion disposing of various motions that were filed including the anti-SLAPP motion that would dismiss the matter and the request for the injunctive relief regarding documents in Mr. Callington's possession so that they can be documented and identified by plaintiff's counsel going forward.

I have the proposed preliminary injunction order from the plaintiff's side, the language of which I may tweak a bit to address concerns about Mr. Callington's ability to respond

to and discuss with the government information regarding the case which I understand to be a concern, but I expect tweaking of that language such that it's necessary to take place quickly so that that can be docketed today as well. In the meantime, of course, the interim order remains in place.

I believe the next steps for this matter would be for an answer date to be set for the defendant. I believe there was also a mention of possible counterclaims, and then, of course, a discovery plan going forward.

I don't know if the parties have had a lot of time to process the opinion that was issued this morning, but I'm certainly prepared to go ahead and set some dates, if, for example, Ms. Cole, you are ready to let me know when you would want to answer the complaint and if you are at the same time going to be asserting counterclaims.

MS. COLE: Yes, Your Honor. We intend to file counterclaims, and there is also the possibility of pursuing an appeal on the present order that I need to discuss with my client.

And I believe the Court said that the injunctive order would be on the docket later today. Did I understand that correctly?

THE COURT: Yes. I had wanted to just confirm if there were any particular issues with the language of that order that you wanted me to consider.

Give me one moment, Ms. Cole.

I know the briefing didn't address the language of the proposed order that was submitted by the plaintiff. In substance, my intent is to enter that order in substantially the form that it was submitted by the plaintiff, but if there are tweaks to the language that you would like to request before that preliminary injunction order is finalized, this would be the opportunity to do it.

MS. COLE: Yes. So let me just turn to that order. There are several issues that Mr. Callington pointed out. Judge, just bear with me for a moment.

So, with respect to the first paragraph of requiring him to produce copies to UL, because that represents such a substantial affirmative burden on him, we would prefer to do that in the ordinary course of discovery and just have language that says, you know, this injunction, you know, prevents him from using, modifying or whatever outside of this proceeding irrespective of whether it's been marked confidential or not.

We would rather just do that in ordinary discovery, the stamping and the production, in the ordinary discovery process. I think that that is more favorable to UL in the sense that, you know, it would presume that all documents in his possession are covered by the order rather than forcing him to designate certain documents in his possession covered by the order.

THE COURT: So let's pause there.

Are the materials largely in an electronic format or some in a paper format?

MS. COLE: I believe that everything is in electronic format. If I am incorrect about that, my client can correct me if I'm wrong me and I will inform the Court, but it is my understanding that all or substantially all of the materials are in electronic format.

THE COURT: So might there be a -- so when you say that it's a burdensome amount of material, I guess I'm not quite clear on what that means in this context if it's an electronic document set.

Is it on a hard drive such that it can't be copied? Is it something that's large enough that it needs to be imaged? And if so, perhaps there can be an agreement on a third-party vendor that does it so that there's sort of a third-party neutral.

I appreciate there may be a need to bring that vendor within a confidentiality agreement, but there certainly can be a way of doing that if that would lessen the burden on Mr. Callington and provide both sides with some assurance that it's a third-party neutral who's responsible for imaging the documents. But I guess I don't quite understand when you say "burdensome" if it's at that level or if it's a large --

MS. COLE: Yeah, it's at that level. And if the Court

is inclined to consider a third-party neutral or something like that to handle it, we would welcome that, provided that the expense is covered by UL and not Mr. Callington since they are requesting this relief.

And, you know, even if he has all of the documents in electronic format, just the simple act of producing documents to another party requires a substantial amount of time and resources, you know, including, you know, access to an electronic database or, you know, obviously, review of the documents to determine what on his computer is from his work as opposed to not related to his work.

So those concerns that the Court is highlighting is kind of precisely the type of burden that we're concerned about.

MR. KIENZLER: Judge, may I be heard?

THE COURT: You may. Go ahead, Mr. Kienzler.

MR. KIENZLER: Yes.

Judge, I guess I'll just say we object to this proposal. I guess I'll just point out a couple of things.

We had an argument in June where I pointed out to the Court that Ms. Cole abandoned or forewent addressing entirely the balance-of-harms component of our preliminary injunction motion. That was the opportunity to bring this type of issue up, but we object to introducing a third-party forensic vendor. That's never been discussed.

We tried to do our motion for preliminary injunction in sort of a quasi-discovery type setting. That was opposed. So it's sort of surprising to hear, after going through all of the steps that we were forced to go through, that now the proposal is that we just handle this in the ordinary course of discovery. That's been opposed for the better part of a year until your order was entered this morning.

THE COURT: Yes, I understand, Mr. Kienzler.

So here is what I would like to do. I'd like to find a way that gets the copies of the documents provided back to UL in a way that is efficient and accomplishes what I think the parties want to accomplish.

From UL's perspective, I would think that the most significant aspect of the Rule 65 preliminary injunction order is that there's going to be a restriction on further dissemination and disclosure.

Now, what this particular order does not have is any sort of carve-out for a circumstance where a request is made in connection with a government investigation or when there is a subpoena or another request for information that is provided.

So when I invited Ms. Cole to make any requests with respect to language, frankly, that's what I was expecting because that's something that we had discussed before and is also something that's in the interim order.

So I, too, was not quite expecting to have the

requests related to how the documents would be produced; however, I think the important thing is for it to be accomplished which is why I'm trying to understand exactly what the barrier is to Mr. Callington being able to do that because this isn't something that has been raised.

So I understand your concern, Mr. Kienzler. I suppose I'm not sure what Ms. Cole means when she says, "We'll do it in the ordinary course of discovery," but I will just remind plaintiff and plaintiff's counsel that this request for Mr. Callington should not impact in any way his obligations to preserve what he has and to not further disseminate it.

MS. COLE: Of course.

THE COURT: Was there anything further, Mr. Kienzler, that you wanted to raise with respect to the request?

MR. KIENZLER: No. I appreciate that, Judge. And certainly from UL's perspective, there's two things going on here, and I want to be clear.

The most important aspect of the relief that we've sought that you've now entered is the nondisclosure with the carve-out for governmental speech, for lack of a better word. I think, hopefully, we know what I mean by that.

And certainly we are -- of course we want the production of documents to happen in an efficient fashion, but I guess I'll stop there.

I was not expecting to hear that we now have to go

through another sort of kind of discussion about how the documents are going to be produced. I think that ship has sailed, but we, of course -- you know, we want things to happen in an efficient fashion.

THE COURT: So, Ms. Cole, is there a technological barrier to your client's ability to copy it? In other words, is part of the problem that he doesn't have the expertise personally in order to copy what he has?

MS. COLE: Well, Your Honor, he previously produced, he believes, all the documents acquired during his work for UL in the course of the internal investigation. I believe he did so by sharing a Dropbox link, and that process was overseen by his prior counsel.

For some reason, there were objections to that process, and so I am cautious in going into this process based on my understanding that, you know, the previous productions were not satisfactory to UL.

I want to make sure that whatever process we go through here is satisfactory so that he is not, you know, accused of noncompliance or anything along those lines. So, to that end, I had never thought of a third-party neutral as a potential option, but since Your Honor has brought it up, I actually think that it would be something to consider that we would not oppose.

As for the scope of the restraint, so I read the

injunction as two paragraphs. One is the scope of the affirmative obligations, and the second is the scope of the restraint.

In the first paragraph, the scope of the affirmative obligations, my understanding was that the purpose of that language is to allow UL an opportunity to designate what is and is not barred by the injunction.

We would stipulate to an interpretation of Your Honor's injunctive order as covering everything that he's obtained in the course of his employment to avoid a burdensome process under paragraph 1, but whatever Your Honor thinks is best.

I think also, on the affirmative obligation front, particularly where there are affirmative obligations in an injunctive order, it's appropriate to consider a bond of some sort or, you know, alternatively -- I'm sorry?

THE COURT: I was just making a note. That was on my list, actually, Ms. Cole, to discuss what sort of bond might be appropriate.

MS. COLE: And then with respect to the second paragraph, just the scope of the restraint, Your Honor has included language in the decision and order that the injunction will not prevent Callington from approaching or cooperating with government authorities provided he does so in accordance with law.

I think that covers our concerns about some of the difficult-to-interpret language in the proposed injunction. I think if Your Honor incorporates that exact sentence into the actual injunctive order, that would address that.

That being said, obviously, we are considering an appeal of the decision, but I don't see any -- in terms of complying with Your Honor's injunctive order, so long as it is in place, those are the two main concerns, what exactly is the affirmative obligation and how do we carry it out, and secondly, just clarification that the injunctive order will include language that is similar or the same as the final paragraph of Your Honor's decision on page 26.

THE COURT: So I guess I'm now a little bit confused, Ms. Cole, because you said that Mr. Callington believes he's already produced copies of the documents in connection with the internal investigation. If he was able to do that, to produce the large volume in connection with the request during the internal investigation, why is it more difficult for him to do it now?

MS. COLE: If UL would be satisfied with him sharing a Dropbox link with everything that he has, then we wouldn't view that as burdensome; but, like I said, when he did that in the past, there were lots of objections and follow-ups, and I don't want to, you know, expose my client to a very burdensome discovery type process based on something that appears on its

face to be a lot simpler which is why we're seeking clarity on the processes that should be in place to comply with the order.

THE COURT: So are you concerned that last time, during the internal investigation, there were concerns raised by UL that there were gaps in the production and you're wanting to avoid that?

MS. COLE: Yes, Your Honor.

THE COURT: Okay. So let me go back then to Mr. Kienzler.

You did mention in connection with the briefing that your client's view was that there were gaps in what was produced in connection with the internal investigation.

How can we avoid that being an issue here?

Ms. Cole said that her client is willing to use a Dropbox in order to transfer the documents, but she doesn't want -- her client doesn't want any accusations that he's leaving things out or doing something else that might be improper.

MR. KIENZLER: Well, Judge, I mean, you have granted a motion for preliminary injunction.

Ms. Cole has -- I'm just -- to be completely honest with you, I don't mean to be glib. I'm trying to follow what she's proposing because if we approach this situation as if it were a normal discovery process, there would be no third party involved. Mr. Callington would get document requests issued to

him. He would produce documents. And just like any party, he would (INAUDIBLE).

Now, if we, like any party, had some sort of credible basis to say to him, "We don't think you" -- "We think you're in possession of file A, B, C, and we want you to go back and look for it and produce it to us," you know, that's what a normal discovery process would be.

And sometimes that goes to discovery motion practice, sometimes people work things out; but it's hard for us to sit here today and say that UL's not going to have any concerns about documents that Mr. Callington produces before he produces anything.

I mean, what we're looking for, we requested and have now received a court order that obligates him to produce the documents in his possession, so we would have every expectation that he, working with his lawyer, would do that.

But I guess I can't sort of tell you right now that we're not going to write a letter to Ms. Cole, "We expected to see X, Y, Z and didn't see it. Can you talk to your client about that?" I can't make that representation, nor would I think it would be reasonable to expect that representation to be made.

THE COURT: So, Mr. Kienzler, is it your proposal that the copies of the materials all be provided to UL and then UL will provide unique identifiers or Bates numbering of some sort

so that there's a way of keeping track of which documents are being marked as confidential, or is it your expectation that Mr. Callington will provide the copies already marked?

MR. KIENZLER: I think what we're going to do is the former. I think what we're going to do is the former, Judge.

I think what we would be expecting him to do is produce the documents in his possession. And Ms. Cole will keep a copy of it so that she knows what has been produced. And then we're going to send her designations.

THE COURT: But in terms of stamping them so that they can be designated with some sort of unique identifying number, that's something that UL would be doing?

MR. KIENZLER: Judge, I think it's something that we would be happy to do, but, again, this leads to the confusion.

If we go with Ms. Cole's proposal to just sort of treat this in the ordinary course of discovery, then that's an obligation that Mr. Callington would have just as any defendant would have, I mean, unless I've been approaching discovery wrong for a long time now.

THE COURT: No, I understand, Mr. Kienzler. And I guess I'm approaching it from the perspective of this is not exactly happening under normal discovery rules because we're talking about a highly accelerated time frame where the materials are going to be produced in 14 days if that's the time frame included in the preliminary injunction.

Normally, in discovery, you have at least a month, and usually, parties end up taking longer in order to get materials copied and Bates numbered.

So let me go back to Ms. Cole.

MR. KIENZLER: Judge, just one more point. I apologize for interrupting, but just one more point.

If it's a consideration that Mr. Callington would like longer than 14 days to gather his documents, you know, that's fine. UL will be reasonable in working towards an efficient process to achieve an outcome that we have been working towards for the better part of a year against stiff opposition.

So it's sort of like a lot of these arguments should have been made in the motion practice and weren't.

THE COURT: I understand.

MR. KIENZLER: What I think is too late a time.

THE COURT: Okay. So, Ms. Cole, again, help me understand why your client can't do this. Is it a timing issue where he can't do it in 14 days? Is it a volume issue where the documents are simply too voluminous? What is it that is the obstacle?

MS. COLE: The obstacle is that we would like clarity on the affirmative pre-discovery obligation that is being imposed in the injunction.

So, for example, if we have to comply with this order in 14 days, I frankly think the most efficient thing that we

could possibly do is offer a file sharing link to his folders. He has done that in the past, and that has not been deemed satisfactory.

My understanding is that the purpose of the first paragraph in the proposed injunctive order is simply to provide UL the opportunity to say what is and is not confidential within the scope of his documents.

If that is indeed the purpose of the first paragraph, just so that UL can say, you know, some things are confidential and some things are fair game, I would propose that instead, we just agree, you know, that the injunction applies to all documents, the restraint's applied to all documents that Mr. Callington has in his possession from UL, rather than having to go through this affirmative pre-discovery production that is kind of like discovery but not really so we don't really know what or how or --

THE COURT: So, Ms. Cole, just so I am clear, when you say you would prefer for it to apply to all documents, are you saying then you wouldn't -- are you suggesting in that universe, you would not have to produce the copies?

MS. COLE: I would say that they would be produced in the ordinary course of discovery.

THE COURT: What does that mean, Ms. Cole? What does that mean?

I don't understand what you mean when you say, "in the

ordinary course of discovery."

MS. COLE: Meaning that we would exchange discovery requests and respond to those requests in accordance with the federal rules rather than trying to figure out a way to satisfy affirmative pre-discovery obligations in an injunctive order that are not bound in federal rules.

THE COURT: So, Ms. Cole, if you receive a discovery request that says, "Produce all of the UL materials that you copied and/or took with you when you -- or remain in your possession," how is that any different? What is the difference between getting a discovery request that says, "Produce everything that you retained from your employment at UL"? How is that different from paragraph 1?

MS. COLE: The difference would be that it's under the discovery rules, and so I have, you know, a presumed deadline, you know, guidance on what is reasonable, guidance on how to produce ESI, that these things are made clear and that the rules are written in a fashion that it is not to be overly burdensome.

And it's a process that I feel more comfortable with. I think that if we're doing things outside of that context, then it should just be clear how, when, and what.

THE COURT: I have to say, Ms. Cole, I share Mr. Kienzler's confusion here because at the outset, you did object to this being treated in the ordinary course of

discovery. You made a point of saying that you felt that this was more like an injunction.

I agreed with you. I agreed with you and made him do a motion and a hearing and oral argument, and it does seem like you are trying to walk this back after you secured my agreement that this is not ordinary discovery, so I'm a bit confused.

MS. COLE: I think that --

MR. KIENZLER: Judge --

MS. COLE: I think --

MR. KIENZLER: I'm sorry to interrupt.

THE COURT: One at a time here. So, unfortunately --

MR. KIENZLER: I'm sorry. I'm sorry, Judge. I'm sorry.

THE COURT: So, unfortunately, I do have some folks waiting in my courtroom for a hearing, as I wasn't expecting this to be a 45-minute discussion, which seems to be where it's headed. And I know I was a couple of minutes coming on the line. I'm not sure that we're making a lot of progress here, and I'm still not really hearing a point of disagreement.

So, Mr. Kienzler, is there some reason that you would object to getting copies of all of the documents delivered to you through a secure link or Dropbox?

MR. KIENZLER: No. I think that's fine, Judge.

And I think if Ms. Cole wants to have the injunction apply to everything, I think what I was going to offer is I'll

talk to my client about that, and maybe we can work something out.

THE COURT: This might be the best way forward because I think it might make sense for counsel to speak with each other about this to figure out the best way to do it. And perhaps letting the parties meet and confer -- so I'm still going to enter an order.

The interim order is in place that sort of preserves the status quo, but I would like to have the parties meet and confer regarding the procedure for enabling the production of copies of all the documents within a 14-day period.

If in the course of your meeting and conferring you realize that it can't be done in a way that is organized and efficient in 14 days, then you come back and tell me, "We can't do it, and we haven't agreed upon a way, and we'd like to have 30 days" or whatever it is that the parties can agree upon.

So I think the first step is probably a meet and confer. So I'm going to modify the order to include that the parties shall meet and confer regarding a procedure for the orderly and efficient provision of the copies.

If in the course of the meeting and conferring the parties determine that a longer time period is needed in order to accomplish paragraph 1, in particular, they may petition the Court to modify the order to allow for a longer time period. I think that's probably the best way forward.

I do think that treating this, again, as an ordinary discovery issue does sort of ignore the fact that Mr. Callington being in possession of these documents is part and parcel with the alleged misconduct by the plaintiff, and there's still allegations at this point even with the likelihood of success findings in my order.

This is not outcome determinative, and there may be counterclaims or affirmative defenses yet to be decided.

So I do think that this isn't exactly traditional discovery at this point, but the parties will be engaged in traditional discovery, and you'll have an opportunity to refine things along the way. But let's start with a requirement that the parties meet and confer and perhaps have three business days to agree upon a protocol for the documents to be provided and if you're not able to do so to notify the Court, and we'll have a conference to work it out, if you will.

Does that seem reasonable, to let you sort of have three business days to see if you can work it out on your own?

MS. COLE: Yes, Judge.

THE COURT: I'm not hearing any objections. And, again --

MR. KIENZLER: Yes, Your Honor.

THE COURT: -- I think the concept of the Dropbox and the shared link does not seem to be objectionable to UL.

Frankly, Ms. Cole, if they're going to claim that they

think your client has more than what he's turned over, they're going to do that whether it's under the auspices of this preliminary injunction order or a discovery request.

I will leave it to the parties if you want to reach some sort of an agreement which I think would be more in the nature of a traditional discovery issue that all of the documents are going to be treated as confidential.

I'm hesitant to do that in a Rule 65 order because I think that may be overbroad. I have no reason to think that everything that Mr. Callington has should be treated as confidential, so I don't want my order to overreach.

And part of the process of identifying what is confidential is to keep this order more narrowly tailored and to give Mr. Callington greater direction on what he can and cannot do because I appreciate that he doesn't want to be subject to an overbroad restraint. I don't want him to be subject to an overbroad restraint, and I think it will lead to issues in the future.

MS. COLE: The only outstanding issues, Your Honor, I believe, are you said that you wanted to address the bond requirement and also clarify if Mr. Callington decides to move forward with an immediate interlocutory appeal whether the time to file a notice of appeal would run from the existing decision and order or from the issuance of the injunctive order itself.

THE COURT: I believe it would run from the issuance

of the order itself. And I will endeavor to have that happen before the end of the day today, probably this evening, though.

I cannot speak to whether a Court of Appeals might agree with me, but I do believe that it would be with the actual issuance of the preliminary injunction that will have a date on it. And that date may be today, that it's effective today, it may be tomorrow. But I would say that one of the reasons I'd like to get an order in place today, if possible, to replace the interim order is so that there is not a gap in time.

MS. COLE: Thank you, Your Honor.

THE COURT: Okay.

MR. KIENZLER: Judge, UL would also request an answer deadline.

THE COURT: Yes.

So let's talk about a couple of other things starting with the bond requirement. There wasn't a request for a bond or a monetization of the harm to Mr. Callington. Is there an amount that you are requesting?

And this is directed towards Ms. Cole.

MS. COLE: Yes. I think that assuming that this case proceeds to a judgment, there would be a substantial amount of costs and attorneys' fees involved both in just complying with the injunction and defending against the claims that are the basis for the injunction. And so, you know, I think it's hard

to say, but I would imagine that those expenses would amount to possibly well over 1 or $2 million.

You know, I will be frank that this is my first time dealing with a bond requirement in this context, and so I would look to Your Honor's guidance in issuing an appropriate bond amount. And if further briefing is needed for the Court to make that decision, I'm happy to do so. It's not an issue that I have spent a lot of time thinking about or researching.

THE COURT: So the issue would be that the bond is there to protect against harms resulting from a wrongful restraint which typically wouldn't include attorneys' fees because, as you point out, documents would be produced anyway in the ordinary course of discovery.

Typically, a bond is there to compensate somebody if they're going to lose compensation or sales revenue or some other thing that they need to be able to do or want to be able to do during the time period that the restraint is in place and they're going to be harmed because they can't do it.

I'm not sure what the harm is to Mr. Callington of not being able to disseminate further any information that's designated as confidential by UL.

And so I guess that would be my question. Is there something -- because the harm was not addressed in the brief. I appreciate that Mr. Callington may feel that his free speech is harmed. I'm not sure how that is quantified.

MS. COLE: Yes. I think that --

THE COURT: Or if there are going to be costs associated with him having to keep documents that he wouldn't ordinarily keep, that might be a situation; but, as I understand it, he wants to keep these documents.

So it's not clear to me exactly how to quantify the harm. I will take a shot at it in the order and might impose -- without some guidance given in terms of what you think the harm would be, I would probably default to something like $10,000, frankly, which obviously is very different than what you were suggesting. So that's why I need something a little bit more concrete.

And I have done cases like this where I've invited supplemental submissions on the bond. And we can do that as a supplement to the preliminary injunction. So, for example, if you'd like that three-business-day period to make a supplemental submission in support of your bond position, I think that would be feasible as well.

MS. COLE: Sure. That would be welcome.

I also just want to clarify Your Honor's point that the restraints probably do not impose a quantifiable damage amount. I think that's the reasonable assumption, I think.

As to the first paragraph, though, the first paragraph does impose affirmative obligations outside the scope of ordinary discovery, and to that end, I think that there will be

expenses associated with that which include attorneys' fees.

I don't know if there's any case law on that particular issue of the costs of imposing affirmative injunctive obligations, but I just want to make that distinction for the record.

THE COURT: And that would make sense. So if there is a number that you would like to propose that you think would be reasonable to cover that burden, I will entertain it.

MS. COLE: I think --

THE COURT: And if you'd like to have the three business days, as I said, this is something that can be -- I would consider it to be something that could be a modification to the order after it was entered. So the order can be entered and then three days from now a modification made to require the posting of a bond if requested.

MS. COLE: I think we would propose at least 100,000 as the scope of, like, being on the conservative end of the scope of expenses of complying with the affirmative injunctive provisions, but, of course, that depends, in part, on subsequent discussions with opposing counsel as to what exactly the scope of that obligation is. And so if additional briefing is needed to address that, we'd most certainly submit it.

THE COURT: Mr. Kienzler, you wanted to respond?

MR. KIENZLER: Yes.

I mean, the concept of a bond, from our perspective,

has been waived and waived a long time ago, but if Ms. Cole wants to discuss it, I would just point out, I think, as you've already pointed out, for the concepts about a bond that she's discussing on this phone call are inconsistent with the general concepts of bonds that get entered. But if she wants to talk about a bond in the context of our meet-and-confer discussions, we will certainly entertain that topic.

If she files a supplement on the issue of a bond, we'll make (INAUDIBLE). That's all I can say at this point.

THE COURT: So what I think makes sense since I've given the parties three business days is I think I'd like a status report to be filed. And why don't we say by Wednesday, August 13th?

And I'd like that status report to include a statement of whatever agreements you've reached about how paragraph 1 related to the transfer of the documents will be accomplished as well as any agreements that have been reached and, if there's no agreement, what your respective positions are with respect to the bond requirement. And that way, I will have that.

And we'll set a future status date as well, but I think a written status report by Wednesday of next week is a reasonable period of time for you to meet and confer and come up with some ideas here.

MR. KIENZLER: Judge, the final issue, from UL's

perspective, is an answer deadline.

THE COURT: Yes.

So, Ms. Cole, what is your request for a responsive pleading for how much time you would need?

MS. COLE: Seeing that we'll be filing an answer, affirmative defenses, and counterclaims with a potential appeal in the interim, I would request 45 days if that's -- if the Court is amenable to that.

THE COURT: So 45 days takes us until September 22nd.

The interlocutory appeal, if there is one, of course, isn't going to stop proceedings in this court; however, I do understand that you have limited bandwidth to draft multiple things and to conduct investigation and legal research. So given that things will be moving forward and given that there is injunctive relief that should be maintaining the status quo, I think September 22nd is a reasonable date.

MS. COLE: Thank you, Your Honor.

THE COURT: Okay. And I think we should get past the status report next Wednesday regarding implementing the preliminary injunction before moving on to a more general discovery plan.

I would also encourage the parties as part of your discussions to see if you can reach some sort of agreement on resolving the matter. I know that may be wishful thinking on my end, but perhaps there is a way for the parties to reach

some sort of understanding and agreement here.

Let me set a status date for shortly after September 22nd when I'll have the answer.

Laritza, can we get a telephone status later that week?

THE CLERK: Yes, Judge. We can do September 24th at 10:30.

THE COURT: Does that work for the parties?

MR. KIENZLER: Good, Your Honor.

MS. COLE: That should be fine for us as well.

THE COURT: And certainly if there are other things that come up, for example, if you can't reach agreement and that's shown in the status report that you submit, I will schedule interim hearings, a status hearing, or a motion hearing, or whatever we need prior to September 24th, I think it was. So that does not necessarily mean that that's the next time that we'll talk.

I'm most concerned with coming up with a manner of implementing the preliminary injunction.

As I said, I will make the modifications to the language to include this meet-and-confer requirement and to include the reference to Mr. Callington being able to share information in the limited context of government investigations, and we'll go from there.

And, of course, preliminary injunctive relief can be

modified, so if you run into roadblocks or issues that just don't work for purposes of this situation, you can always ask to have terms modified in order to make it work for the situation.

Finally, the last thing I will say is that, as I mentioned at the very outset of this case, most often when I have cases involving allegations of misappropriation of trade secrets or breaches of confidentiality agreements when somebody leaves employment, there is some sort of preliminary injunction hearing, and if the plaintiff is successful, the order is simply the defendant has to return everything that they weren't supposed to have or maybe their attorney can keep copies but the person cannot.

Here, part of what makes the affirmative obligation, as Ms. Cole calls it, in paragraph 1 a little bit different is that UL has not demanded that Callington release the documents completely, return them with only his counsel having access, et cetera.

So this is already a little bit out of the ordinary, and if this were being treated as a traditional restrictive covenant type confidentiality agreement case which I know this is not because of the circumstances, there might very well be an obligation that he just has to return everything in that scenario.

So I don't view the obligation in paragraph 1 as being

so terribly burdensome.  If anything, it is more narrowly tailored than what one might see in order to try to address the specific circumstances of the case, and I hope the parties will keep that in mind.

I do have some other folks waiting in my courtroom, so unless there's something else urgent, I will enter these orders.  And do keep in mind the parties can reach out and request another status hearing even on short notice as we're trying to get the preliminary injunction order implemented.

MR. KIENZLER:  Nothing on behalf of the plaintiff, Your Honor.  Thank you very much for your time.

MS. COLE:  Thank you, Your Honor.

THE COURT:  Okay.  Thank you.  Have a good day.

(Concluded at 2:16 p.m.)

* * * * * *

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.


*/s/ Brenda S. Varney*                              8/9/2025
Official Court Reporter