**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UL LLC,** | ) | |
| | ) | |
| | ) | Case No. 1:24-cv-05631 |
| Plaintiff, | ) | |
| | ) | Hon. Judge Andrea R. Wood |
| v. | ) | |
| | ) | |
| **JOSHUA CALLINGTON,** | ) | |
| | ) | |
| Defendant. | ) | |

**UL LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS CALLINGTON'S COUNTERCLAIMS**

Michael Roche
Shannon Lemajeur Miller
WINSTON & STRAWN LLP
300 North LaSalle Drive
Suite 4400
Chicago, IL 60654-3406
Tel. 312-558-5600
Fax 312-558-5700
mroche@winston.com
slmiller@winston.com

Richard T. Kienzler
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Tel. 312-372.5520
Fax 312-372-7880
rkienzler@littler.com

Kevin E. Griffith (admitted *pro hac vice*)
Emily E. Levy (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
41 South High Street,
Suite 3250
Columbus, OH 43215
Tel. 614-463-4210
Fax 614-737-9135
kgriffith@littler.com
elevy@littler.com

*Counsel for Plaintiff/Counter-Defendant UL LLC*

## INTRODUCTION AND BACKGROUND[1]

This case concerns Defendant/Counter-Plaintiff Joshua Calllington's ("Callington") covert, unapproved, and systematic electronic transfer to himself of tens of thousands of Plaintiff/Counter-Defendant UL LLC's ("UL") internal business documents containing UL's and its customers' highly confidential information. Callington disclosed some of those documents publicly, including to the *New York Times*. Consequently, UL filed this lawsuit against Callington, asserting claims under the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*., and Illinois's Trade Secrets Act, 765 ILCS 1065/1 *et seq*., as well as state-law claims for breach of contract, breach of fiduciary duty, and conversion. (Dkt. No. 1.)

In response, on October 11, 2025, Callington filed his Answer, Defenses, and Counterclaims in which he asserted 84 affirmative defenses as well as six[2] counterclaims against UL for retaliation under the Dodd-Frank Act, 15 U.S.C. § 78u-6, the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), the Occupational Health and Safety Act ("OSHA"), 29 U.S.C. § 660(c), the Oregon Whistleblower Law, O.R.S. §§ 659A.199, 659A.203, and the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq*. (Dkt. No. 110, referred to herein as the "Counterclomplaint.")

The Counterclomplaint is sparse on factual allegations. Callington claims that, before he disclosed UL's confidential documents and information to a *New York Times* journalist, he "repeatedly objected to and expressed concerns about the integrity of audits being conducted by UL's Responsible Sourcing division," without stating to whom or when he expressed such concerns. (*Id.* ¶ 219.) He alleges that in or around January 2024, he filed complaints with the Oregon Bureau of Labor and Industries and the Occupational Safety and Health Division regarding

---

[1] For purposes of this motion, UL takes the allegations set forth in the Counterclomplaint as true. UL reserves all rights to contest any factual allegation upon which a counterclaim is based should that become necessary.
[2] While Callington asserts seven counterclaims, Counterclaims III & IV are exact duplicates.

unspecified "retaliatory acts" that he supposedly experienced after the *New York Times* article was published. (*Id.* ¶ 221.) Callington further alleges that in or around June 2024, he "provided information to the SEC's Whistleblower Office concerning conduct by UL which he reasonably believes constitutes a violation of securities law." (*Id.* ¶ 222.) Finally, he claims that UL "has since taken several adverse actions against him," including terminating his employment. (*Id.* ¶ 223.)

UL moves to dismiss all of Callington's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). More specifically, Callington's IWA counterclaim (Counterclaim VII) should be dismissed with prejudice because Callington, who worked and resided in Oregon at all relevant times, does not have standing to assert a claim under the IWA. Callington's OSHA counterclaims (Counterclaims III & IV) should be dismissed with prejudice because OSHA does not provide a private right of action. Callington's counterclaim under O.R.S. § 659A.203 of the Oregon Whistleblower Law (Counterclaim VI) should similarly be dismissed with prejudice because UL is not a "public or nonprofit employer." Finally, the Court should dismiss Callington's counterclaims under the Dodd-Frank Act (Counterclaim I), the False Claims Act (Counterclaim II), and O.R.S. § 659A.199 of the Oregon Whistleblower Law (Counterclaim V) because Callington failed to state a plausible claim under such statutes.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a party must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "The plausibility standard . . . asks for more than a sheer possibility that a [counter]-defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). The facts alleged must "allow [] the court to draw the reasonable inference that the

[counter-]defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a court must accept as true all material allegations in the countercomplaint, as well as reasonable inferences to be drawn from those allegations, a court should disregard those allegations that are merely conclusions. *See id.* (pleading is insufficient if it provides only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement") (quoting *Twombly*, 550 U.S. at 555). "These pleading standards are equally applicable to counterclaims." *Kugler v. Bd. of Educ.*, No. 16 C 8305, 2017 WL 3169046, at *2 (N.D. Ill. July 26, 2017).

Applying this standard, the Countercomplaint fails to state a counterclaim upon which relief can be granted and should be dismissed in its entirety.

## ARGUMENT

## I. Callington Does Not Have Standing to Assert an IWA Counterclaim (Counterclaim VII)

Callington lacks standing[3] to bring a counterclaim under the IWA because the statute does not apply extraterritorially and Callington has not alleged that he worked in Illinois or that any of the alleged events supporting his IWA claim occurred in Illinois. The purpose of the IWA is to protect "employees who report violations of state or federal laws, rules, or regulations because the reported wrongful conduct or unsafe condition affects the health, safety, or welfare of Illinois residents as a whole." *Larsen v. Provena Hosps.*, 2015 IL App (4th) 140255, ¶ 47, 27 N.E.3d 1033,

---

[3] "The Supreme Court has explained that statutory standing 'does not implicate subject-matter jurisdiction.'" *Ziklag IP LLC v. Netflix, Inc*., No. 24-CV-01789, 2025 WL 904311, at *3 (N.D. Ill. Mar. 25, 2025) (quoting *Lexmark Intern., Inc. v. Static Control Components, Inc*., 572 U.S. 118, 128 n.4 (2014)). "Therefore, 'motions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional.'" *Id.* (quoting *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp*., 925 F.3d 1225, 1235 (Fed. Cir. 2019)).

1043 (internal quotation marks omitted). It is a "long-standing rule of construction in Illinois" that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85, 835 N.E.2d 801, 852 (2005); *see Perez v. Staples Contract & Commer. LLC*, 31 F.4th 560, 575 (7th Cir. 2022) (emphasizing "presumption against extraterritorial effect" while interpreting IWA).

The IWA does not expressly provide that it applies to out-of-state employees nor does it "contain [any other] language expressing the legislature's clear intent for it to have extraterritorial effect to redress injuries suffered outside of Illinois." *Huang v. Fluidmesh Networks, LLC*, No. 16-CV-9566, 2017 WL 3034672, at *5 (N.D. Ill. July 18, 2017); s*ee also Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (holding that Illinois Wage Payment and Collection Act does not have extraterritorial reach and thus dismissing claim of plaintiff who did not perform any work in Illinois); *Wooley v. Bridgeview Bank Mortg. Co., LLC*, No. 14 C 5757, 2015 WL 327357, at *3 (N.D. Ill. Jan. 23, 2015) (concluding that Illinois Minimum Wage Law does not apply extraterritorially to out-of-state workers who were allegedly injured outside of Illinois).

Accordingly, "to state a claim under the IWA, [Callington] must allege . . . that the retaliation has a connection to Illinois." *Huang*, 2017 WL 3034672, at *5. Callington has failed to do so. He does not allege that he worked in Illinois or that he experienced any retaliation in Illinois. In fact, Callington "admits that he was a resident of Oregon at all times relevant to the Complaint." (Countercompl. ¶ 11, Dkt. No. 110.) While UL has its principal place of business in Illinois, that fact alone is insufficient to confer standing under an Illinois statute without extraterritorial reach. *See, e.g.*, *Huang*, 2017 WL 3034672, at *5 (finding that plaintiff failed to state IWA claim where "only Illinois-related allegation in Plaintiff's IWA claim is that Defendant has its principal place of business in the state"); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir.

2009) (finding that "although [defendant] maintains a 'home office' in Illinois . . . that alone is not enough [] to confer nonresident standing on [plaintiff] to sue under the [Illinois Consumer Fraud and Deceptive Business Practice Act]"). Since Callington does not have standing, the Court should dismiss Callington's IWA counterclaim (Counterclaim VII) pursuant to Rule 12(b)(6).

## II.   Callington's OSHA Counterclaims (Counterclaims III and IV) Fail Because OSHA Does Not Provide a Private Right of Action

Callington's counterclaims for retaliation under OSHA (Counterclaims III and IV) should be dismissed with prejudice because it is well established that "OSHA does not authorize a private cause of action." *Thornton v. AT&T Mobility Servs.*, No. CIV. 10-3073, 2010 WL 3834518, at *4 (C.D. Ill. Sept. 14, 2010); *see Gaines v. White River Envtl. P'ship*, 66 F. App'x 37, 40 (7th Cir. 2003) (holding that plaintiff "cannot state a claim under OSHA because that statute offers him no private right of action."). "The statute authorizes a person to report violations to the Secretary of Labor. The Secretary of Labor is then charged with enforcing the statute." *Thorton*, 2010 WL 3834518, at *4 (citing 29 U.S.C. § 660(c)(2)); *see Hoeft v. Dommisse*, 352 F. App'x 77, 80 (7th Cir. 2009) (stating that "only the Secretary of Labor may sue to enforce [OSHA], which does not provide individual employees with any express or implied right of action").

Courts in this district have repeatedly dismissed OSHA claims asserted by private plaintiffs for this reason. *See, e.g.*, *Fletcher v. UPS*, 155 F. Supp. 2d 954, 957 (N.D. Ill. 2001) ("[Plaintiff] cannot bring a private claim against the defendants for violating a provision of OSHA. Accordingly, to the extent that Fletcher seeks relief under 29 U.S.C. § 660(c)(1), that claim is dismissed."); *Dunlap v. Chi. Osteopathic Hosp.*, No. 86 C 2787, 1987 WL 17480, at *3 (N.D. Ill. Sept. 18, 1987) (dismissing plaintiff's OSHA claim because "there is no private right of action" under 29 U.S.C. § 660(c)). Accordingly, Callington's counterclaims under OSHA (Counterclaims III and IV) should be dismissed with prejudice. *See Campos v. Cook Cty.*, 932 F.3d 972, 977 (7th

Cir. 2019) ("[A] district court need not grant leave to amend if there doesn't seem to be a plausible way to cure the defects.")

### III. Callington Cannot Bring a Counterclaim Under O.R.S. § 659A.203 (Counterclaim VI) Because UL is Not a "Public or Nonprofit Employer"

Callington's counterclaim for retaliation under O.R.S. § 659A.203 of the Oregon Whistleblower Law (Counterclaim VI) fails because UL is not a "public or nonprofit employer." It is well established that O.R.S. § 659A.203 only "safeguards against retaliation for reports of illegal and other inappropriate conduct by a '*public or nonprofit employer.*'" *Burley v. Clackamas Cty.*, 298 Or. App. 462, 468, 446 P.3d 564, 567 (2019) (emphasis in original) (quoting O.R.S. § 659A.203); *see also McClusky v. City of N. Bend*, 332 Or. App. 1, 23, 549 P.3d 557, 570 (2024) (stating that "ORS 659A.203(1)(b) applies strictly to public employers") (internal quotation marks omitted).

The statute defines "public employer" as a government body or government agency. O.R.S. § 659A.200(6). A "nonprofit organization" or "nonprofit" is a not-for-profit organization exempt from tax under IRS Code Section 501(c)(3). *Id.* § 659A.200(5)

Critically, Callington did not (and cannot) allege that UL falls under either of these statutory definitions. *See, e.g.*, *James v. Sapa Extrusions N. Am.*, No. 3:17-CV-00338-BR, 2017 WL 2726693, at *7 (D. Or. June 23, 2017) (dismissing plaintiff's ORS § 659A.203 claim with prejudice under Rule 12(b)(6) where plaintiff did not allege that defendant was "public or nonprofit employer"). Callington even "admits that UL LLC is a limited liability company incorporated under Delaware law and headquartered in Illinois." (Countercompl. ¶ 9, Dkt. No. 110.) Further, the Court can take judicial notice of the fact that public records available on the Delaware Department of State: Division of Corporations confirm that UL is not a government entity or nonprofit organization. (*See* Ex. 1 (showing UL as an incorporated LLC and its entity type as

7

"General," which "refers to a legal entity with no special attributes such as non-profit . . .").)[4]
Accordingly, the Court should dismiss Callington's counterclaim under O.R.S. § 659A.203
(Counterclaim VI) with prejudice. *See Campos*, 932 F.3d at 977.

## IV. Callington Fails to State a Counterclaim Under the Dodd-Frank Act (Counterclaim I)

Callington fails to state a counterclaim for retaliation under the Dodd-Frank Act, which
"prohibits an 'employer' from taking adverse action, or discriminating, against a 'whistleblower'
because of any lawful act done by the whistleblower in providing information to or assisting an
investigation of the SEC." *Mimedx Grp., Inc. v. Fox*, No. 16 CV 11715, 2018 WL 558500, at *8
(N.D. Ill. Jan. 24, 2018) (quoting 15 U.S.C. § 78u-6(a)(6)). Notably, to be a "whistleblower," the
report must involve "information relating to a violation of the securities laws." *Id*. (quoting 15
U.S.C. § 78u-6(a)(6)).

While "a plaintiff need not prove an actual violation of the federal securities laws, a
plaintiff must at least plead which laws he reasonably believed were violated, and what conduct
he reported to the SEC." *Pickholz v. Transparentbusiness, Inc.*, No. CV 22-2504 (ES) (JBC), 2024
WL 489543, at *5 (D.N.J. Feb. 8, 2024) (dismissing Dodd-Frank Act retaliation claims that failed
to identify "specific law" violated and "though Plaintiff alleges that he 'made formal written
submissions to the [SEC] about the Defendants' unlawful conduct,' Plaintiff does not allege what
conduct he provided to the SEC"); *see also Zillges v. Kenney Bank & Trust*, 24 F. Supp. 3d 795,

---

[4] The Court can properly take judicial notice of Exhibit 1 as "[i]t's well established that judges may take
judicial notice of matters of public record when ruling on a motion to dismiss." *Ronald D. Fosnight &
Paraklese Techs., LLC v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). As such, "[c]ourts may take judicial
notice of information from an official government website which is not subject to reasonable dispute."
*Ziklag IP LLC v. Netflix, Inc*., No. 24-CV-01789, 2025 WL 904311, at *3 (N.D. Ill. Mar. 25, 2025); *see,
e.g*., *Inst. of Bus. & Tech. Careers v. Ill. Dep't of Veteran Affairs*, No. 25 C 2033, 2025 WL 3079213, at *1
(N.D. Ill. Nov. 4, 2025) (taking judicial notice of business entity search on the Illinois Secretary of State
website).

801 (E.D. Wis. 2014) (dismissing Dodd-Frank Act retaliation claim where plaintiff failed to allege or show "his disclosure relates to a violation of federal securities laws."). In *Pickholz*, even plaintiff's allegation that he "reasonably believed" defendant's conduct constituted "financial or accounting fraud and violations of federal securities laws and regulations" was insufficient to state a claim because plaintiff failed to "reference any specific law he believed Defendants were violating." *Pickholz*, 2024 WL 489543, at *6.

Callington fails to identify what information he allegedly reported to the SEC and which federal securities law he believes UL violated.[5] Indeed, the only factual allegation that Callington made in support of his Dodd-Frank Act counterclaim is that "[i]n or around June 2024, Mr. Callington provided information to the SEC's Whistleblower Office concerning conduct by UL which he reasonably believes constitutes a violation of securities law." (Countercompl. ¶ 11, Dkt. No. 222.) This allegation is indistinguishable from the allegations in *Pickholz* the court found inadequate. Because the Counterclaim "contains no allegation as to the contents of [his] complaint" to the SEC, "the Court has no way to assess whether he was complaining of conduct that is even arguably within the scope of the Dodd-Frank whistleblower provision and no way to assess whether [Callington] could have had a reasonable belief that the reported conduct was unlawful." *Cellucci*, 2020 WL 977986, at *10 (dismissing plaintiff's Dodd-Frank Act retaliation claim where "[n]ot only are the relevant allegations wholly untethered from the elements of any particular violation, the amended complaint does not even identify a specific provision or section that may have been violated.").

---

[5] In addition, Callington fails to allege that UL was aware of his report to the SEC at the time it took any purported adverse action against him. As a result, he cannot allege that "the adverse action was causally connected" to his SEC report. *Cellucci v. O'Leary*, No. 19-CV-2752 (VEC), 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020). *See also id.* at *11 (noting plaintiff "failed to plausibly plead any facts from which this Court can infer that Defendants knew about the SEC complaint").

Since Callington failed "to give [UL] fair notice of what the claim is and the grounds upon which it rests," his Dodd-Frank Act counterclaim (Counterclaim I) should be dismissed. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015).

## V.    Callington Fails to State a Counterclaim Under the FCA (Counterclaim II)

Callington fails to state a counterclaim for retaliation under the FCA, "which makes it unlawful for any person to defraud the United States Government by making false claims." *Lam-Quang-Vinh v. Springs Window Fashions, LLC*, 37 F.4th 431, 436 (7th Cir. 2022) (citing 31 U.S.C. §§ 3729-3732). The FCA's whistleblower provision, 31 U.S.C. § 3730(h), "protects an employee who warns her employer that the employer is making false claims" and is thus defrauding the federal government. *Id.*

An FCA retaliation claim contains three elements: "(1) the employee's actions were in furtherance of a FCA action or preventing a FCA violation (protected conduct requirement); (2) the employer knew the employee engaged in protected conduct (notice requirement); and (3) the employer took a retaliatory action in response." *Lewis v. Abbvie Inc*., 152 F.4th 807, 813 (7th Cir. 2025).

With respect to the second element, "[t]he notice requirement is not particularly onerous, but it is essential. . . . [T]he employee must make it clear that his complaints were 'aimed at preventing the [employer's] submission of false or fraudulent claims' to the government." *Id.* at 814 (internal citation and quoted source omitted). In *Lewis*, the Seventh Circuit affirmed the dismissal of the plaintiff's FCA retaliation claim, finding that "[b]ecause [plaintiff's] internal complaints to [defendant] never suggested that his concern was fraud-based, rather than rooted in regulatory violations, [defendant] was not on notice that [plaintiff] sought to prevent any FCA violations." *Id*. at 813. Similarly, Callington does not allege that UL ever submitted a claim for

payment to the federal government, let alone a claim that was fraudulent. Instead, he merely alleges that he "repeatedly objected to and expressed concerns about the integrity of audits being conducted by UL's Responsible Sourcing division," none of which concern "the submission of false or fraudulent claims to the government" in violation of the FCA. (Countercompl. ¶ 219, Dkt. No. 110.) Therefore, the Court should dismiss Callington's FCA counterclaim (Counterclaim II).

## VI. Callington Fails to State a Counterclaim Under O.R.S. § 659A.199 (Counterclaim V)

Callington fails to plausibly plead a retaliation counterclaim under O.R.S. § 659A.199, which prohibits an employer from retaliating against an employee who has "in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." O.R.S. § 659A.199(1). "To establish a *prima facie* case under § 659A.199, a [counter-]plaintiff must prove that, (1) []he engaged in a protected activity, (2) the employer subjected [counter-]plaintiff to an adverse employment decision, and (3) there was a 'causal link' between the protected activity and the adverse action." *Xu v. LightSmyth Techs., Inc.*, No. 6:20-CV-01201-MC, 2025 WL 2770511, at *9 (D. Or. Sept. 25, 2025).

Callington fails to adequately plead that UL knew he engaged in protected activity. "If a [counter-]plaintiff brings a retaliation claim against his or her employer as an entity, the [counter-]plaintiff must show that the individual decisionmakers responsible for the adverse employment action *knew* of the plaintiff's protected activity." *Tsur v. Intel Corp.*, No. 3:21-CV-655-SI, 2021 WL 4721057, at *11 (D. Or. Oct. 8, 2021) (emphasis added) (denying in part retaliation claim under the ADEA, which contains the same elements as O.R.S. § 659A.199 *prima facie* case); *see Javansalehi v. BF & Assocs.*, No. 3:10-CV-850-PK, 2011 WL 5239752, at *8 (D. Or. Nov. 1, 2011) ("[I]t is clear that a claim for retaliation [under O.R.S. § 659A.199] will not lie where the decisionmaker has no actual knowledge of the adversely affected employee's protected conduct.").

Here, Callington has failed to allege who at UL undertook the alleged adverse actions against him, let alone that they had knowledge of Callington's alleged protected activity.

Callington also "failed to suggest a causal link between any protected activity and retaliatory action against him." *Pettis v. Fitness Int'l, LLC*, 508 F. App'x 565, 566 (7th Cir. 2013) (dismissing retaliation claim under Title VII); *see Prince v. State Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010) (dismissing retaliation claim under similar statute where plaintiff "does not clearly explain the basis for his belief (beyond suspicious timing) that there was a causal link between his [protected activity] and the allegedly retaliatory actions that were taken against him.").

"It is by now well established that a [counter-]plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to h[im] that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). That is all Callington has done here, which is insufficient to state a counterclaim for retaliation under O.R.S. § 659A.199.

## CONCLUSION

For the foregoing reasons, UL respectfully requests that the Court dismiss Callington's Countercomplaint in its entirety pursuant to Rule 12(b)(6) and award any further relief deemed appropriate.

Date: December 12, 2025

Respectfully submitted,

*/s/ Michael Roche*

Michael Roche
Shannon Lemajeur Miller
WINSTON & STRAWN LLP
300 North LaSalle Drive
Suite 4400
Chicago, IL 60654-3406
Tel. 312-558-5600
Fax 312-558-5700

mroche@winston.com
slmiller@winston.com

Richard T. Kienzler
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Tel. 312-372-5520
Fax 312-372-7880
rkienzler@littler.com

Kevin E. Griffith (admitted *pro hac vice*)
Emily E. Levy (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Tel. 614-463-4210
Fax 614-737-9135
kgriffith@littler.com
elevy@littler.com

*Attorneys for Counter-Defendant UL LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of December 2025, I caused a true and correct copy of the foregoing to be filed electronically. Counsel of record for Defendant and Counter-Plaintiff Joshua Callington may access this filing through the Court's system.

*/s/ Shannon Lemajeur Miller*
Counsel for Counter-Defendant UL LLC