**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UL LLC**, | ) |
| | ) |
| | ) Case No. 1:24-cv-05631 |
| Plaintiff, | ) |
| | ) Hon. Judge Andrea R. Wood |
| v. | ) |
| | ) |
| **JOSHUA CALLINGTON,** | ) |
| | ) |
| Defendant. | ) |

<u>**UL LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO STRIKE CALLINGTON'S AFFIRMATIVE DEFENSES**</u>

Michael Roche
Shannon Lemajeur Miller
WINSTON & STRAWN LLP
300 North LaSalle Drive
Suite 4400
Chicago, IL 60654-3406
Tel. 312-558-5600
Fax 312-558-5700
mroche@winston.com
slmiller@winston.com

Richard T. Kienzler
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Tel. 312-372.5520
Fax 312-372-7880
rkienzler@littler.com

Kevin E. Griffith (admitted *pro hac vice*)
Emily E. Levy (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
41 South High Street,
Suite 3250
Columbus, OH 43215
Tel. 614-463-4210
Fax 614-737-9135
kgriffith@littler.com
elevy@littler.com

*Counsel for Plaintiff/Counter-Defendant UL LLC*

## INTRODUCTION

As set forth in Plaintiff/Counter-Defendant UL LLC's ("UL") Memorandum of Law in Support of Its Motion to Dismiss Defendant/Counter-Plaintiff Joshua Callington's ("Callington") Counterclaims,[1] filed simultaneously herewith, this case concerns Callington's covert, unapproved, and systematic electronic transfer to himself of tens of thousands of UL's internal business documents containing UL's and its customers' highly confidential information. Callington disclosed some of those documents publicly, including to the *New York Times*.

On July 3, 2024, UL filed this lawsuit against Callington, asserting claims under the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, and Illinois's Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, as well as state-law claims for breach of contract, breach of fiduciary duty, and conversion. (Dkt. No. 1.)

On October 11, 2025, Callington filed his Answer, Defenses, and Counterclaims (Dkt. No. 110) in which he asserted *eighty-four* (84) affirmative defenses. As explained in more detail below, nearly all of Callington's affirmative defenses are frivolous and improper, including Affirmative Defense Nos. 1-4, 7-19, 22-24, 26-30, 32-33, 35-41, 43-44, 46, 52-61, 63, 65-66, 68-72, 75-76, 80-82, and 84. Accordingly, the Court should strike these affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f).[2]

## LEGAL STANDARD

"Affirmative defenses are pleadings and are thus subject to all pleading requirements." *Bryson v. Benchmark Mgmt. Corp.*, No. 14 CV 7998, 2015 WL 1188524, at *2 (N.D. Ill. Mar. 12, 2015). "[T]he majority view of District Court decisions in this circuit is that the pleading standard

---

[1] UL incorporates the Introduction and Background section of UL's Memorandum of Law in Support of Its Motion to Dismiss Callington's Counterclaims as if fully set forth herein.

[2] The only affirmative defenses of Callington that UL does *not* move to strike are Affirmative Defense Nos. 5-6, 20-21, 25, 31, 34, 42, 45, 47-51, 62, 64, 73-74, 77-79, and 83.

set forth in *Twombly* and *Iqbal* applies to affirmative defenses." *Brown v. Kelly Servs.*, No. 16 C 11152, 2017 WL 1386188, at *1 (N.D. Ill. Apr. 18, 2017); *see, e.*g., *Sarkis' Cafe, Inc. v. Sarks in the Park, Ltd. Liab. Co.*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014) (concluding that "the *Twombly-Iqbal* standard should apply to Defendant's affirmative defenses."); *Shield Techs. Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL 4120440, at *8 (N.D. Ill. Sept. 19, 2012) (adopting the "majority view that *Twombly* and *Iqbal* apply to affirmative defenses."). Accordingly, "affirmative defenses must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown*, 2017 WL 1386188, at *1 (quoting *Iqbal/Twombly*).

Motions to strike affirmative defenses are appropriate where, as here, "they 'remove unnecessary clutter,'" which "can serve to expedite the case." *Bryson*, 2015 WL 1188524, at *2 (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). Such motions are governed by Rule 12(f), which states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "To survive a motion to strike, an affirmative defense must be: (1) appropriately pleaded as an affirmative defense; (2) adequately plead[ed] pursuant to the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) sufficiently plead[ed] under the Rule 12(b)(6) standard." *Bryson*, 2015 WL 1188524, at *2.

## ARGUMENT

Nearly all of Callington's 84 affirmative defenses are frivolous, improper, and fail to meet the pleading standard for affirmative defenses. Accordingly, the Court should strike Callington's affirmative defenses as identified below, which would "remove unnecessary clutter" and "serve to expedite th[is] case." *Id*. In an attempt to bring some order to Plaintiff's extremely lengthy and

3

unwieldly list of purported affirmative defenses, we address them below in categories based on the reasons they are deficient.

## I. "Fail to State a Claim" Affirmative Defenses

Several of Callington's affirmative defenses, such as Nos. 1, 14, 22, 39, and 57, recite that UL "fails to state a claim" or that UL's claims "fail as a matter of law." However, it is well established that "[a] failure to state a claim is not an affirmative defense. Failure to state a claim, although a defense, is not an 'affirmative defense' because it does not assume that the allegations of the Complaint are true and then provide a separate reason why the defendant is not liable." *Oviatt v. Leafy Fin.*, LLC, No. 3:25-CV-275-DRL-JEM, 2025 WL 2502323, at *2 (N.D. Ind. Aug. 29, 2025) (internal citations omitted) (striking "failure to state a claim" affirmative defense); *see also Thomas v. Exxon Mobil Corp.*, No. 07 C 7131, 2009 WL 377334, at *2 (N.D. Ill. Feb. 11, 2009*)* (striking affirmative defense that "[s]ome or all of the allegations in Plaintiff's claim fail to state a claim upon which relief can be granted.").

## II. Unsupported Rule 8(c)(1) Affirmative Defenses

While Rule 8(c)(1) lists affirmative defenses that are waived if not asserted in the responsive pleading, a party "cannot simply recite a laundry list of Rule 8(c)(1) affirmative defenses without indicating in any way how they may be tied to the facts of this case." *Pietrzycki v. Heights Tower Serv.*, No. 14 C 6546, 2015 WL 688510, at *3 (N.D. Ill. Feb. 17, 2015). Such unsupported recitation is what Callington did in several affirmative defenses. For example, Affirmative Defense No. 18 merely recites that "[s]ome or all of UL's claims are barred because of UL's fraud;" No. 19 recites that "[s]ome or all of UL's claims are barred by the doctrine of contributory negligence;" and No. 56 recites that "UL's contract claim for purported breaches of the INDEPENDENT ASSESSOR AGREEMENTS is barred by the doctrine of laches." These are

nothing more than unsupported "laundry lists" of defenses. *See Pietrzycki*, 2015 WL 688510, at *3 (striking affirmative defenses of laches and estoppel because "this affirmative defense is barebones, conclusory, and contains no statement at all supporting the defense (or, as it were, defenses, as Defendants allege two equitable defenses here but do not specify how either might apply).").

### III. "Unjust Enrichment" Affirmative Defense

Affirmative Defense No. 29 states that "[g]ranting UL's requested relief would unjustly enrich UL by providing more than that to which it is legally entitled." However, "unjust enrichment is not an affirmative defense under Illinois law." *Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775, 787 (N.D. Ill. 2018) (striking affirmative defense that "Plaintiff's claims are barred, in whole or in part, under the doctrine of unjust enrichment."). Thus, this Court should strike Affirmative Defense No. 29.

### IV. "No Damages" Affirmative Defenses

Several of Callington's affirmative defenses assert that UL has not suffered damages or cannot recover damages. *See, e.g.*, Affirmative Defense No. 24 ("UL is not entitled to damages because there is no evidence of any actual economic loss resulting from Mr. Callington's access to or retention of documents."); No. 27 ("Any purported damages stemming from UL's alleged reputational injuries are attributable to UL's own wrongful conduct."); No. 32 ("UL cannot recover damages for any alleged breach or other cause of action stemming from disclosures to the New York Times or to any governmental or law-enforcement authority made for legitimate reporting or investigative purposes."); No. 65 ("UL has not suffered any cognizable injury or harm for which it can claim a right or entitlement to economic damages under contract principles at common law.").

These affirmative defenses should be stricken because affirmative "defenses stating that Plaintiff has not suffered damages or that Defendant[] did not cause the damages are not proper affirmative defenses." *Padma Rao v. JPMorgan Chase Bank, N.A.*, No. 21-CV-1361, 2022 WL 22891533, at *2 (N.D. Ill. Oct. 20, 2022) (striking affirmative defenses stating that "Plaintiff's alleged damages, if any, were caused, in whole or in part, by the acts and/or omissions of Plaintiff or third party(ies) over whom [defendant] had no control or right of control" and "Plaintiff as not suffered any damages as a result of any conduct of [defendants]"); *see Marroy v. Aisin Mfg. Ill., LLC*, No. 20-CV-972-DWD, 2021 WL 1165116, at *3 (S.D. Ill. Mar. 26, 2021) (holding recitation that "Plaintiff has not been damaged by Defendant's unlawful conduct" is not "an affirmative defense because the allegation serves to suggest that a plaintiff cannot prove the elements of a claim.").

### V. "Protected Activity" Affirmative Defenses

Several of Callington's affirmative defenses plead that his actions "constitute[] protected activity" under various laws. *See, e.g.*, Affirmative Defense No. 7 (citing the Sarbanes-Oxley Act and the Dodd-Frank Act); No. 8 (citing the False Claims Act); No. 9 (citing the Occupational Health and Safety Act); No. 10 (citing Oregon state law); No. 11 (citing the Illinois Whistleblower Act); No. 12 (vaguely stating "under one or more provisions of applicable state labor law."); No. 13 ("Each and every action taken against Mr. Callington in connection with the facts alleged herein is also barred as unlawful retaliation under applicable state common law principles.").

Not only are these improper affirmative defenses to any of UL's claims, but they are also duplicative of Callington's counterclaims which he brings under the same statutes cited in these affirmative defenses. *See CIC Plus, Inc. v. Dexheimer*, No. 22 C 1523, 2022 WL 17071146, at *5 (N.D. Ill. Nov. 17, 2022) (striking affirmative defense that "is duplicative of [counter-plaintiff's]

6

counterclaim"). Additionally, Affirmative Defense Nos. 7-13 are "[b]are bones legal conclusions" which "are not sufficient to survive a motion to strike." *Chronister v. Superior Air/Ground Ambulance Serv.*, No. 05 C 3492, No. 05 C 3492, 2005 WL 3019408, at *2 (N.D. Ill. Nov. 8, 2005).

## VI. "Lack of Standing" Affirmative Defenses

Affirmative Defense Nos. 43 and 82 are improper because they merely plead that UL lacks standing. "A defendant may challenge lack of standing in a motion to dismiss, or the court may raise the issue *sua sponte*, but it is not an appropriate affirmative defense." *Robles v. Costco Wholesale Corp.*, No. 11 C 1785, 2011 U.S. Dist. LEXIS 126967, at *5 (N.D. Ill. Nov. 2, 2011) (internal citation omitted) (striking "lack of standing" affirmative defense). Accordingly, this Court should strike Affirmative Defense Nos. 43 and 82.

## VII. "Good Faith" or Not "Willful and Malicious" Conduct Affirmative Defenses

Callington's assertions that he acted in good faith or that his conduct was not "willful and malicious" are improper affirmative defenses. For example, Affirmative Defense No. 30 alleges that Callington's "conduct was not 'willful and malicious' and does not entitle UL to recover punitive damages." Courts have stricken similar affirmative defenses, finding them "redundant denials of plaintiff's allegations, not affirmative defenses." *Weisman v. First Data Merch. Servs. Corp.*, No. 06 C 3024, 2006 WL 3694853, at *2 (N.D. Ill. Dec. 11, 2006) (striking affirmative defense that defendant "did not act in willful disregard of the requirements of any law"); *see, e.g.*, *Brown*, 2017 WL 1386188, at *2 (striking affirmative defense that defendant's "actions and communications were made in good faith and without malice or reckless indifference or a desire to harm Plaintiff.").

The same is true for Callington's "good faith" affirmative defenses. *See, e.g.*, Affirmative Defense No. 2 ("Mr. Callington's sole purpose and intent in disclosing documents to the New York

Times was to expose systemic audit failures . . . ."); No. 3 ("At all times relevant to the allegations herein, Mr. Callington acted in good faith, for good cause, and with the sincere belief that his actions were lawful, proper and justified, in furtherance of the public interest."). There is no "legal authority recognizing a general 'good faith' affirmative defense." *Shield Techs. Corp.*, 2012 WL 4120440, at *10 n.5. As such, courts have stricken similar affirmative defenses. *See, e.g.*, *Bryson*, 2015 WL 1188524, at *3 (striking affirmative defense alleging "Plaintiff's damages claim is barred because they made a good faith effort to comply with the law and reasonably believed that they were in fact in compliance with the law"); *Shield Techs. Corp.*, 2012 WL 4120440, at *10 (striking defendant's affirmative defense that plaintiff's claim "are barred in whole or in part because at all times [defendant] acted in good faith.").

## VIII. Affirmative Defenses Pleading Bare Legal Conclusions

It is well established that "[b]are legal conclusions are not sufficient to support an affirmative defense." *Pietrzycki*, 2015 WL 688510, at *3. "Simply pleading legal conclusions like 'waiver' and 'estoppel' is not enough." *ADM Inv'r Servs. v. Collins*, No. 05 C 1823, 2006 WL 224095, at *8 (N.D. Ill. Jan. 26, 2006). Courts in this district have repeatedly struck affirmative defenses that plead legal conclusions without any factual support. *See, e.g.*, *Escobedo v. Oswego Junction Enters. LLC*, No. 17-CV-0682, 2017 WL 3130643, at *4 (N.D. Ill. July 24, 2017) (striking affirmative defense when defendant "provide[d] no factual allegations to support this pure legal conclusion"); *Trading Techs. Int'l, Inc. v. CQG*, No. 05 C 4811, 2012 U.S. Dist. LEXIS 156147, at *3 (N.D. Ill. Oct. 31, 2012) (striking affirmative defenses stating "Plaintiff's claims are barred by the doctrines of estoppel, acquiescence, implied license, and/or unclean hands" and "Plaintiff is not entitled to any damages for the time period that it was not in compliance with the marking requirements under 35 U.S.C. § 287" because "they are devoid of any factual basis."). The

8

following affirmative defenses that Callington asserts are bare legal conclusions that must be stricken:

- No. 4: "Each and every claim asserted in the Complaint is barred by the doctrine of unclean hands."

- No. 17: "UL is estopped or estopped from asserting any of the causes of action alleged herein by reason of the fact that it willfully breached its own duties and obligations to Mr. Callington."

- No. 26: "Any acts by Mr. Callington were not the proximate cause of any alleged injury suffered by UL."

- No. 28: "UL is not entitled to equitable, preliminary, or injunctive relief because it has suffered no irreparable injury and possesses an adequate remedy at law."

- No. 53: "UL contractual claims under the Independent Assessor Agreements are expired or time-barred under applicable law and/or equitable principles."

- No. 55: "UL's contract claim for purported breaches of the INDEPENDENT ASSESSOR AGREEMENTS are expired or time-barred under applicable law and/or equitable principles."

- No. 58: "The contractual provisions that UL seeks to enforce are facially invalid under applicable law."

- No. 59: "The contractual provisions that UL seeks to enforce are void as a matter of public policy as against the conduct at issue in this action."

- No. 60: "The contractual provisions are unenforceable as against the conduct at issue in this action."

- No 63: "Any alleged breach arising from Mr. Callington's disclosures to the New York Times is non-actionable as a matter of law."

- No. 68: "UL's common law claim for fiduciary breach fails under Illinois law because there is no applicable case or precedent that supports its theory for imposing liability in any circumstance similar to facts of this case."

- No. 69: "Any alleged claim of fiduciary breach arising from Mr. Callington's disclosures to the New York Times is non-actionable, as a matter of law."

- No. 72: "As a matter of law, providing true and accurate information on matters of significant public concern is not a breach of the fiduciary duty of loyalty or good faith."

### IX. Affirmative Defenses Seeking Dismissal Absent a More Definite Statement

Affirmative Defense Nos. 41, 52, and 75 allege that Callington is "entitled to [] dismissal . . . absent a more definite statement." *See* No. 41 ("Mr. Callington is entitled to the dismissal of the trade secret claims absent a more a more definite statement a more definite statement as to which precise statutory provisions he is alleged to have violated."); No. 52 ("Mr. Callington is entitled to the dismissal of the trade secret claims absent a more a more definite statement as to the specific contractual provision(s) Mr. Callington is alleged to have violated, and the precise conduct that it contends was a "breach" thereof."); No. 75 ("Mr. Callington is entitled to the dismissal of the trade secret claims absent a more a more definite statement a more definite statement as to the specific document(s) or property which it alleges that Mr. Callington has converted for his own benefit.").

These are not proper affirmative defenses and should be stricken. *See Thomas*, 2009 WL 377334, at *2 ("The basic concept of an affirmative defense is an admission of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable.").

### X. Affirmative Defenses That Deny Allegations in the Complaint

"[I]t is improper to assert something as an affirmative defense that is nothing more than a denial of an allegation contained in the complaint." *Id.*; *see also SEC v. Custable*, No. 03 C 2182, 2004 U.S. Dist. LEXIS 1103, at *6 (N.D. Ill. Jan. 29, 2004) (emphasizing that "an affirmative defense is not merely a denial of an allegation in the complaint. Rather, an affirmative defense admits the allegations of the complaint, but asserts facts which would defeat recovery by the plaintiff."); *Acuity Optical Labs., Inc. v. Davis Vision, Inc.*, No. 14-3231, 2014 WL 5900994, at *3 (C.D. Ill. Nov. 13, 2014) (finding asserted affirmative defenses "do not accept the allegations of the complaint as true. Instead, Respondent denies an element of Petitioner's claim. Therefore,

neither [] are affirmative defenses"). The following affirmative defenses are improper and should be struck as redundant because they merely repeat Callington's denials of allegations in the Complaint:

- No. 15: "Each and every claim premised on the theory that Mr. Callington was not authorized to access, possess, or "transfer" of company documents to himself is barred by the doctrine of consent because Mr. Callington had full permission from UL to access the documents and information referenced herein."

- No. 16: "Mr. Callington did not disclose any of the documents or information referenced herein to any other person or entity aside from: (a) the information and disclosures that he made to the New York Times, as alleged herein, and (b) lawful disclosures to federal and state government agencies for legitimate law enforcement purposes."

- No. 23: "UL's alleged injuries are entirely theoretical or speculative and cannot support recovery."

- No. 33: "The information that was allegedly misappropriated does not qualify as a trade secret."

- No. 35: "UL does not have any legally protected trade secret information that was disclosed to Mr. Callington, and which he subsequently disclosed, to anyone, for any unlawful purpose."

- No. 36: "Mr. Callington did not possess ever possess any documents or information which he knew to be a trade secret at any point in time during his employment with UL."

- No. 37: "To the best of his knowledge, Mr. Callington did not disclose any trade secret information to the New York Times and has never knowingly disclosed any information which he knew to be a trade secret to any other individual or entity, competitor, or otherwise."

- No. 38: "Mr. Callington did not 'misappropriate' any trade secret, as that term is used in the DTSA, because there was nothing 'improper' about the 'means' through which he acquired documents provided to him in the ordinary course of his auditing work as is required to establish liability under 18 U.S.C.A. § 1839(5)(A), and because lacked the requisite scienter for liability under any of the alternative provisions at 18 U.S.C.A. § 1839(5)(B)."

- No. 40: "Any alleged claim of 'misappropriation' arising from Mr. Callington's disclosures of information regarding conduct which he reasonably believed was in violation of law to state and government agencies is non-actionable, as a matter of law."

11

- No. 44: "Mr. Callington did not use any of the documents or information referenced herein to engage in competition, or business, or in any other manner for his own economic benefit."

- No. 46: "UL failed to undertake 'reasonable efforts' to secure and maintain secrecy of its alleged trade secrets as required by 18 U.S.C. § 1839(3)(B) and 765 ILCS 1065/2(d)(2)."

- No. 54: "UL's contract claim for purported breaches of the INDEPENDENT ASSESSOR AGREEMENTS are unenforceable as to conduct undertaken after he transitioned from the independent contractor arrangement to a salaried position."

- No. 61: "Mr. Callington's access, possession, and storage of documents acquired by and through his legitimate employment cannot serve as a basis for any alleged 'breach' of the contractual provisions which UL seeks to enforce."

- No. 65: "UL has not suffered any cognizable injury or harm for which it can claim a right or entitlement to economic damages under contract principles at common law."

- No. 66: "Mr. Callington did not owe a fiduciary duty to UL or its clients."

- No. 70: "Any alleged claim of fiduciary breach arising from Mr. Callington's disclosures of information regarding conduct which he reasonably believed was in violation of law to state and government agencies is non-actionable, as a matter of l[aw.]"

- No. 71: "Mr. Callington was not disloyal within the meaning of fiduciary law principles because none of the acts or conduct alleged can be shown to have been undertaken to benefit himself or another."

- No. 76: "UL's common law conversion claim fails under Illinois law because there is no applicable case or precedent that supports its theory for applying the equitable principles of conversion as a against a former employee, in favor of his employer, in any circumstance similar to facts of this case."

- No. 80: "UL cannot assert or prosecute a claim for conversion relating to any documents or information that is readily ascertainable in the public sphere."

- No. 81: "UL cannot assert or prosecute a claim for conversion relating to any document that it does not have an exclusive and absolute right to possess."

- No. 84: "Mr. Callington did not, as a matter of fact, use any of the documents or information referenced herein to engage in competition, or business, or in any other manner for his own economic benefit."

**CONCLUSION**

For the foregoing reasons, UL respectfully requests that the Court, pursuant to Rule 12(f), strike Affirmative Defense Nos. 1-4, 7-19, 22-24, 26-30, 32-33, 35-41, 43-44, 46, 52-61, 63, 65-66, 68-72, 75-76, 80-82, and 84, and award any further relief deemed appropriate.

Date: December 12, 2025

Respectfully submitted,

*/s/ Michael Roche*

Michael Roche
Shannon Lemajeur Miller
WINSTON & STRAWN LLP
300 North LaSalle Drive
Suite 4400
Chicago, IL 60654-3406
Tel. 312-558-5600
Fax 312-558-5700
mroche@winston.com
slmiller@winston.com

Richard T. Kienzler
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Tel. 312-372.5520
Fax 312-372-7880
rkienzler@littler.com

Kevin E. Griffith (admitted *pro hac vice*)
Emily E. Levy (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Tel. 614-463-4210
Fax 614-737-9135
kgriffith@littler.com
elevy@littler.com

*Attorneys for Counter-Defendant UL LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 12th day of December 2025, I caused a true and correct copy of the foregoing to be filed electronically. Counsel of record for Defendant and Counter-Plaintiff Joshua Callington may access this filing through the Court's system.

                                        */s/ Shannon Lemajeur Miller*
                                        Counsel for Counter-Defendant UL LLC