IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UL LLC**, | ) |
| | ) |
| | ) Case No. 1:24-cv-05631 |
| Plaintiff/Counter-Defendant, | ) |
| | ) Hon. Judge Andrea R. Wood |
| v. | ) |
| | ) |
| **JOSHUA CALLINGTON,** | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |

## UL LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CALLINGTON'S FIRST AMENDED COUNTERCLAIMS

Michael Roche
Shannon Lemajeur Miller
WINSTON & STRAWN LLP
300 North LaSalle Drive
Suite 4400
Chicago, IL 60654-3406
Tel. 312-558-5600
Fax 312-558-5700
mroche@winston.com
slmiller@winston.com

Richard T. Kienzler
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Tel. 312-372.5520
Fax 312-372-7880
rkienzler@littler.com

Kevin E. Griffith (admitted *pro hac vice*)
Emily E. Levy (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
41 South High Street,
Suite 3250
Columbus, OH 43215
Tel. 614-463-4210
Fax 614-737-9135
kgriffith@littler.com
elevy@littler.com

*Counsel for Plaintiff/Counter-Defendant UL LLC*

## INTRODUCTION AND BACKGROUND[1]

This case concerns Defendant/Counter-Plaintiff Joshua Calllington's ("Callington") covert, unapproved, and systematic electronic transfer to himself of tens of thousands of Plaintiff/Counter-Defendant UL LLC's ("UL") internal business documents containing UL's and its customers' highly confidential information. UL asserts claims under trade secret statutes and for breach of contract, breach of fiduciary duty, and conversion. (ECF 1.) After UL moved to dismiss Callington's original six counterclaims[2] and to strike his 84 affirmative defenses (ECF 110, 117-120), in lieu of a response, Callington filed his First Amended Answer, Defenses and Counterclaims in which he asserted thirteen numbered counterclaims against UL. (ECF 129, the "Amended Countercomplaint.")

Callington's amendment did not, however, cure the pleading deficiencies UL noted in its original motion. Accordingly, UL moves to dismiss the Amended Countercomplaint in its entirety pursuant to Rule 12(b)(6). The Court should dismiss, with prejudice, the following counterclaims because, as set out in detail below, their defects cannot be cured: prohibited conduct under the Oregon Whistleblower Law (Counterclaim V), blacklisting (Counterclaim VIII), aiding and abetting unlawful retaliation and conspiracy (Counterclaim VII), and wrongful retaliation and discharge (Counterclaims IX). The Court should also dismiss, with prejudice, the following retaliation counterclaims as this is the second time that Callington has failed to adequately plead these counterclaims and thus any further amendment would be futile: the Dodd-Frank Act, (Counterclaim II), the False Claims Act ("FCA") (Counterclaim III), O.R.S. § 659A.199 (Counterclaim VI), and the Illinois Whistleblower Act ("IWA") (Counterclaim X). Finally, the

---

[1] For purposes of this motion, UL takes the allegations set forth in the Amended Countercomplaint as true. UL reserves all rights to contest any factual allegation upon which a counterclaim is based should that become necessary.

[2] While Callington asserted seven numbered counterclaims, two were exact duplicates.

1

Court should also dismiss Callington's counterclaims under the Sarbanes–Oxley Act ("SOX") (Counterclaim I), the Oregon Safe Employment Act ("OSEA") (Counterclaim IV), intentional infliction of emotional distress ("IIED") (Counterclaim XI), the Fair Labor Standards Act ("FLSA"), (Counterclaim XII), and O.R.S. § 653.261 (Counterclaim XIII) because he failed to plausibly plead such claims.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a party must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "These pleading standards are equally applicable to counterclaims." *Kugler v. Bd. of Educ.*, 2017 WL 3169046, at *2 (N.D. Ill. July 26, 2017).

## ARGUMENT

**I. Counterclaims V, VII, VIII and IX Should Be Dismissed with Prejudice Because Their Defects Cannot Be Cured.**

The Court should dismiss, with prejudice, Callington's counterclaims under Section 659A.203 of the Oregon Whistleblower Law (Counterclaim V), blacklisting under O.R.S. § 659.805 (Counterclaim VIII), common law aiding and abetting unlawful retaliation and conspiracy (Counterclaim VII) and common law wrongful retaliation and discharge (Counterclaims IX) because the defects in these counterclaims cannot be cured. *See Campos v. Cook Cty.*, 932 F.3d 972, 977 (7th Cir. 2019) ("[A] district court need not grant leave to amend if there doesn't seem to be a plausible way to cure the defects.").

**A. Callington Cannot Assert a Counterclaim Under O.R.S. § 659A.203 Because UL is Not a "Public or Nonprofit Employer" (Counterclaim V).**

2

Callington's counterclaim for retaliation under O.R.S. § 659A.203 of the Oregon Whistleblower Law fails because UL is not a "public or nonprofit employer." It is well established that O.R.S. § 659A.203 only "safeguards against retaliation for reports of illegal and other inappropriate conduct by a '*public or nonprofit employer.*'" *Burley v. Clackamas Cty.*, 298 Or. App. 462, 468, 446 P.3d 564, 567 (2019) (emphasis in original) (quoting O.R.S. § 659A.203). The statute defines "public employer" as a government body or government agency. O.R.S. § 659A.200(6). A "nonprofit organization" or "nonprofit" is a not-for-profit organization exempt from tax under IRS Code Section 501(c)(3). *Id.* § 659A.200(5)

Critically, Callington did not (and cannot) allege that UL falls under either of these statutory definitions. *See, e.g.*, *James v. Sapa Extrusions N. Am.*, 2017 WL 2726693, at *7 (D. Or. June 23, 2017) (dismissing ORS § 659A.203 claim with prejudice under Rule 12(b)(6) where plaintiff did not allege that defendant was "public or nonprofit employer"). Callington even "admits that UL LLC is a limited liability company incorporated under Delaware law." (Am. Countercompl. ¶ 14.) Further, the Court can take judicial notice that public records from the Delaware Department of State: Division of Corporations confirm that UL is not a government entity or nonprofit organization. (*See* Ex. 1 (showing UL as incorporated LLC and its entity type as "General," which "refers to a legal entity with no special attributes such as non-profit").)[3] Accordingly, Counterclaim V should be dismissed with prejudice. *See Campos*, 932 F.3d at 977.

### B. Callington's Blacklisting Counterclaim Fails Because O.R.S. § 659.805 Does Not Provide a Private Right of Action (Counterclaim VIII).

---

[3] The Court can properly take judicial notice of Exhibit 1 as "[i]t's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss." *Ronald D. Fosnight & Paraklese Techs., LLC v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). As such, "[c]ourts may take judicial notice of information from an official government website which is not subject to reasonable dispute." *Ziklag IP LLC v. Netflix, Inc.*, 2025 WL 904311, at *3 (N.D. Ill. Mar. 25, 2025).

3

Callington's blacklisting counterclaim fails because "ORS § 659.805 is a criminal statute that provides no private cause of action for [a] Plaintiff." *Mauze v. GE Vernova Inc.*, 2025 WL 1135224, at *3 (D. Or. Apr. 17, 2025). In *Mauze*, the court explained that "[t]he statute makes no reference to civil liability and instead provides a remedy through the criminal justice system." *Id*. (citing O.R.S. § 659.990(2) ("Violation of ORS 659.805 . . . is a Class C misdemeanor.")). There is "nothing in the statute that indicates the legislature intended to create a private right of action for blacklisting. To the contrary, the legislature provided that violations are criminal in nature and, despite having the opportunity to do so, provided no other method of relief." *Id*. (granting defendants' motion to dismiss plaintiff's blacklisting claim). Accordingly, the Court should dismiss Counterclaim VIII with prejudice.

### C. Callington's Aiding and Abetting Unlawful Retaliation and Conspiracy Counterclaim Fails as a Matter of Law (Counterclaim VII).

Callington's counterclaim for aiding and abetting unlawful retaliation fails as a matter of law because UL cannot aid and abet its own conduct.[4] *See, e.g.*, *Hejazi v. Rise, Inc*., 2023 WL 2785830, at *7 (D. Or. Apr. 5, 2023) ("Defendant is the sole defending party in this case. Plaintiff thus asserts his retaliation claims and his claim that Defendant was aiding and abetting itself. But as a matter of law, it is not possible to aid and abet oneself."). Callington's common law conspiracy counterclaim also fails because "[u]nder Oregon law, conspiracy is not a tort and does not give rise to a separate theory of recovery or an independent cause of action. Accordingly, [a] Plaintiff cannot state a separate common law claim based on conspiracy." *Schmitz v. Mars, Inc*., 261 F. Supp. 2d 1226, 1233-34 (D. Or. 2003). Therefore, Counterclaim VII should be dismissed with prejudice.[5]

---

[4] To the extent that Callington's allegation is that Association of Professional Social Compliance Auditors ("APSCA") somehow retaliated against him at UL's urging (*see* Am. Countercompl. ¶ 188), he fails to allege how APSCA retaliated or what action UL took to aid or abet that conduct.

[5] Callington failed to state whether he asserts Counterclaim VII under Oregon or Illinois law. While he appears to assert it under Oregon law, Counterclaim VII fails under Illinois law as well. *See Tyson v. Kenco*

4

### D. Callington's Wrongful Retaliation and Discharge Counterclaim is Precluded (Counterclaim IX).

Callington's wrongful retaliation and discharge counterclaim under Oregon common law fails as courts "have consistently held that a common law wrongful discharge claim provides the same remedies as a whistleblower retaliation claim under ORS § 659A.199, and that the two claims may not be pursued simultaneously." *Malcomson v. Daimler N. Am. Corp.*, 2016 WL 5867056, at *6 (D. Or. Aug. 3, 2016); *see also Vergara v. Patel*, 305 Or. App. 288, 306 (2020) (concluding that "adequate statutory remedies exist under ORS 654.062 to vindicate the wrongful conduct that plaintiff alleges here, and that factor alone precludes her wrongful discharge claim."). Callington's wrongful retaliation and discharge counterclaim arises from the same allegations supporting his counterclaims under the OSEA (O.R.S. § 654.062) and O.R.S. § 659A.199. Accordingly, Callington's wrongful retaliation and discharge counterclaim is precluded and should be dismissed with prejudice. *See Torres v. Nat'l Frozen Foods Corp.*, 2021 WL 1740245, at *6 (D. Or. May 3, 2021) (dismissing wrongful discharge claim with prejudice because it "arises from the same allegations supporting [plaintiff's] Title VII and ORS 659A.030 and ORS 659A.199 claims" and thus is precluded).[6]

### II. Counterclaims II-III, VI, and X Should Be Dismissed with Prejudice Because Callington Has Repeatedly Failed to Adequately Plead Such Counterclaims and Further Amendment Would Be Futile.

---

*Logistics Servs.*, 2016 WL 11970406, at *3 (C.D. Ill. May 3, 2016) (holding the Illinois Human Rights Act "preempts any supplemental state law claims with respect to civil rights violations, and therefore, this court is without jurisdiction over state law claims alleging conspiracy [] and aiding and abetting.").

[6] Even if Callington's statutory counterclaims are dismissed, his common law wrongful discharge counterclaim still fails because "Oregon courts have [only] recognized two circumstances that give rise to a claim for common law wrongful discharge: 1) discharge for performing a public duty or fulfilling a societal obligation and 2) discharge for exercising an important job-related right." *Dier v. City of Hillsboro*, 2004 WL 1243845, at *8 (D. Or. Mar. 18, 2004). Callington vaguely alleges that he experienced wrongful retaliation after he "shared his concerns with the New York Times," (Am. Countercompl. ¶ 197), which is not conduct that is recognized under either category. *See Dier*, 2004 WL 1243845, at *8 (citing examples of conduct recognized under each category).

In response to UL's original motion to dismiss, Callington chose to amend his complaint. Typically, an amendment seeks to cure the pleading deficiencies noted in a motion to dismiss. But the Amended Countercomplaint does nothing to cure those deficiencies. Callington's retaliation counterclaims under the Dodd-Frank Act (Counterclaim II), the FCA (Counterclaim III), O.R.S. § 659A.199 (Counterclaim VI), and the IWA (Counterclaim X), should be dismissed with prejudice as this is the second time that Callington has failed to adequately plead these counterclaims and thus any further attempts to replead would be futile. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 702 (7th Cir. 2021) (affirming dismissal of amended complaint pursuant to 12(b)(6) with prejudice because "[t]hat plaintiffs subsequently amended but nonetheless proved unable to adequately plead a claim indicates the futility of granting further leave to amend.").

### A. Callington Fails to State a Counterclaim Under the Dodd-Frank Act (Counterclaim II).

Callington fails to state a counterclaim for retaliation under the Dodd-Frank Act, which "prohibits an 'employer' from taking adverse action, or discriminating, against a 'whistleblower' because of any lawful act done by the whistleblower in providing information to or assisting an investigation of the SEC." *Mimedx Grp., Inc. v. Fox*, 2018 WL 558500, at *8 (N.D. Ill. Jan. 24, 2018) (quoting 15 U.S.C. § 78u-6(a)(6)). Notably, to be a "whistleblower," the report must involve "information relating to a violation of the securities laws." *Id*. (quoting 15 U.S.C. § 78u-6(a)(6)).

While "a plaintiff need not prove an actual violation of the federal securities laws, a plaintiff must at least plead which laws he reasonably believed were violated, and what conduct he reported to the SEC." *Pickholz v. Transparentbusiness, Inc.*, 2024 WL 489543, at *5 (D.N.J. Feb. 8, 2024) (dismissing Dodd-Frank Act retaliation claims that failed to identify the "specific law" violated and "though Plaintiff alleges that he 'made formal written submissions to the [SEC] about the Defendants' unlawful conduct,' Plaintiff does not allege what conduct he provided to the

6

SEC"); *see also Zillges v. Kenney Bank & Trust*, 24 F. Supp. 3d 795, 801 (E.D. Wis. 2014) (dismissing Dodd-Frank Act retaliation claim where plaintiff failed to allege or show "his disclosure relates to a violation of federal securities laws."). In *Pickholz*, even plaintiff's allegation that he "reasonably believed" defendant's conduct constituted "financial or accounting fraud and violations of federal securities laws and regulations" was insufficient to state a claim because plaintiff failed to "reference any specific law he believed Defendants were violating." *Pickholz*, 2024 WL 489543, at *6.

Callington has failed—for the second time—to identify the information he allegedly reported to the SEC and which federal securities law he believes UL violated.[7] Indeed, the only factual allegation that Callington made in support of his Dodd-Frank Act counterclaim is that "[i]n or around June 2024, Mr. Callington provided information to the SEC's Whistleblower Office concerning conduct by UL which he reasonably believes constitutes a violation of securities law." (Am. Countercompl. ¶ 167.) This allegation is indistinguishable from the allegations in *Pickholz* the court found inadequate. Because the Amended Countercomplaint "contains no allegation as to the contents of [his] complaint" to the SEC, "the Court has no way to assess whether he was complaining of conduct that is even arguably within the scope of the Dodd-Frank whistleblower provision and no way to assess whether [Callington] could have had a reasonable belief that the reported conduct was unlawful." *Cellucci*, 2020 WL 977986, at *10 (dismissing plaintiff's Dodd-Frank Act retaliation claim where "[n]ot only are the relevant allegations wholly untethered from the elements of any particular violation, the amended complaint does not even identify a specific provision or section that may have been violated."). Since Callington twice failed "to give [UL]

---

[7] In addition, Callington fails to allege that UL was aware of his report to the SEC at the time it took any purported adverse action against him. As a result, he cannot allege that "the adverse action was causally connected" to his SEC report. *Cellucci v. O'Leary*, 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020).

7

fair notice of what the claim is and the grounds upon which it rests," his Dodd-Frank Act counterclaim (Counterclaim II) should be dismissed with prejudice. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015).

### B. Callington Fails to State a Counterclaim Under the FCA (Counterclaim III).

Callington fails to state a counterclaim for retaliation under the FCA, "which makes it unlawful for any person to defraud the United States Government by making false claims." *Lam-Quang-Vinh v. Springs Window Fashions, LLC*, 37 F.4th 431, 436 (7th Cir. 2022) (citing 31 U.S.C. §§ 3729-3732). The FCA's whistleblower provision, 31 U.S.C. § 3730(h), "protects an employee who warns her employer that the employer is making false claims" and is thus defrauding the federal government. *Id.* An FCA retaliation claim contains three elements: "(1) the employee's actions were in furtherance of a FCA action or preventing a FCA violation (protected conduct requirement); (2) the employer knew the employee engaged in protected conduct (notice requirement); and (3) the employer took a retaliatory action in response." *Lewis v. Abbvie Inc.*, 152 F.4th 807, 813 (7th Cir. 2025).

Regarding the second element, "[t]he notice requirement is not particularly onerous, but it is essential. . . . [T]he employee must make it clear that his complaints were 'aimed at preventing the [employer's] submission of false or fraudulent claims' to the government." *Id.* at 814 (internal citation and quoted source omitted). In *Lewis*, the Seventh Circuit affirmed the dismissal of the plaintiff's FCA retaliation claim, finding that "[b]ecause [plaintiff's] internal complaints to [defendant] never suggested that his concern was fraud-based, rather than rooted in regulatory violations, [defendant] was not on notice that [plaintiff] sought to prevent any FCA violations." *Id.* at 813. Similarly, Callington does not allege that UL ever submitted a claim for payment to the federal government, let alone a claim that was fraudulent. Instead, he merely alleges (for the second

8

time) that he "repeatedly expressed concerns about audit integrity," which would not place UL on notice that Callington's concern involved "the submission of false or fraudulent claims to the government" in violation of the FCA. (Am. Countercompl. ¶ 157.) Thus, Counterclaim III should be dismissed with prejudice.

### C. Callington Fails to State a Counterclaim Under O.R.S. § 659A.199 (Counterclaim VI).

Callington fails to plausibly plead a retaliation counterclaim under O.R.S. § 659A.199, which prohibits an employer from retaliating against an employee who has "in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." OR.S. § 659A.199(1). To plead a *prima facie* case under § 659A.199, a plaintiff must allege that "(1) []he engaged in a protected activity, (2) the employer subjected plaintiff to an adverse employment decision, and (3) there was a 'causal link' between the protected activity and the adverse action." *Xu v. LightSmyth Techs., Inc.*, 2025 WL 2770511, at *9 (D. Or. Sept. 25, 2025).

"If a plaintiff brings a retaliation claim against his or her employer as an entity, the plaintiff must show that the individual decisionmakers responsible for the adverse employment action *knew* of the plaintiff's protected activity." *Tsur v. Intel Corp.*, 2021 WL 4721057, at *11 (D. Or. Oct. 8, 2021) (emphasis added) (dismissing in part retaliation claim under the ADEA, which contains the same elements as O.R.S. § 659A.199's *prima facie* case); *see Javansalehi v. BF & Assocs.*, 2011 WL 5239752, at *8 (D. Or. Nov. 1, 2011) ("[I]t is clear that a claim for retaliation [under O.R.S. § 659A.199] will not lie where *the decisionmaker* has no actual knowledge of the adversely affected employee's protected conduct.") (emphasis added). Here, Callington has repeatedly failed to allege who at UL decided to take the alleged adverse actions against him, let alone that the decision-maker had knowledge of Callington's alleged protected activity. He has also repeatedly "failed to suggest a causal link between any protected activity and retaliatory action against him." *Pettis v.*

9

*Fitness Int'l, LLC*, 508 F. App'x 565, 566 (7th Cir. 2013) (dismissing retaliation claim under Title VII which requires same elements). As such, Counterclaim VI should be dismissed with prejudice.

### D. Callington Does Not Have Standing to Assert a Counterclaim under the IWA (Counterclaim X).

Callington lacks standing[8] to bring a counterclaim under the Illinois Whistleblower Act because the statute does not apply extraterritorially and Callington has not alleged that he worked in Illinois or that any of the alleged events supporting his IWA claim occurred in Illinois. The purpose of the IWA is to protect "employees who report violations of state or federal laws, rules, or regulations because the reported wrongful conduct or unsafe condition affects the health, safety, or welfare of Illinois residents as a whole." *Larsen v. Provena Hosps.*, 2015 IL App (4th) 140255, ¶ 47, 27 N.E.3d 1033, 1043 (internal quotation marks omitted). It is a "long-standing rule of construction in Illinois" that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85, 835 N.E.2d 801, 852 (2005); *see Perez v. Staples Contract & Commer. LLC*, 31 F.4th 560, 575 (7th Cir. 2022) (emphasizing "presumption against extraterritorial effect" while interpreting the IWA).

The IWA does not expressly provide that it applies to out-of-state employees nor does it "contain [any other] language expressing the legislature's clear intent for it to have extraterritorial effect to redress injuries suffered outside of Illinois." *Huang v. Fluidmesh Networks, LLC*, 2017 WL 3034672, at *5 (N.D. Ill. July 18, 2017); *see also Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (holding that Illinois Wage Payment and Collection Act does not have

---

[8] "[M]otions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1)." *Ziklag IP LLC v. Netflix, Inc.*, 2025 WL 904311, at *3 (N.D. Ill. Mar. 25, 2025) (quoting *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)).

extraterritorial reach and thus dismissing claim of plaintiff who did not perform any work in Illinois).

Accordingly, "to state a claim under the IWA, [Callington] must allege . . . that the retaliation has a connection to Illinois." *Huang*, 2017 WL 3034672, at *5. He does not allege that he worked in Illinois or that he experienced any retaliation in Illinois. In fact, Callington "admits that he was a resident of Oregon at all times relevant to the Complaint." (Am. Countercompl. ¶ 16.) While UL has its principal place of business in Illinois, that fact alone is insufficient to confer standing under an Illinois statute without extraterritorial reach. *See, e.g.*, *Huang*, 2017 WL 3034672, at *5 (finding that plaintiff failed to state IWA claim where the "only Illinois-related allegation in Plaintiff's IWA claim is that Defendant has its principal place of business in the state"). Since Callington has failed to show he has standing for the second time, the Court should dismiss Counterclaim X with prejudice.

### III. Callington's SOX Retaliation Counterclaim Fails (Counterclaim I)

Callington's SOX retaliation counterclaim fails because he did not exhaust his administrative remedies. "A plaintiff bringing a whistleblowing claim under [SOX] must initially file a complaint with OSHA." *Opela v. Wausau Window & Wall*, 264 F. Supp. 3d 980, 986 (W.D. Wis. 2017) (citing 18 U.S.C. § 1514(b)). A plaintiff "may only file suit in federal district court if OSHA does not resolve his claim within one-hundred eighty days, and if such delay is not the result of the plaintiff's bad-faith conduct." *Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 907 (C.D. Ill. 2010) (citing 29 C.F.R. § 1980.114(a)).[9]

---

[9] The Seventh Circuit has not addressed whether a plaintiff's failure to exhaust administrative remedies under SOX is a jurisdictional issue or a failure to state a claim; but either way, Callington's SOX retaliation claim should be dismissed for failure to exhaust his administrative remedies. *See, e.g.*, *Rodriguez v. Wipro Ltd.*, 2024 WL 4367925, at *3 (W.D.N.C. Sept. 30, 2024), *aff'd*, 2025 WL 800241 (4th Cir. Mar. 13, 2025) ("Whether evaluating exhaustion of Plaintiff's SOX claim as a jurisdictional issue under 12(b)(1) or a failure

11

Here, Callington alleges that "[i]n or around June 2024," he "provided information to the SEC's Whistleblower Office concerning conduct by UL which he reasonably believes constitutes a violation of securities law," (Am. Countercompl. ¶ 167) and that "UL has since undertaken several adverse actions against [him]." (*Id.* ¶ 168.) Callington does not allege that he filed a complaint with OSHA thereafter.[10] Accordingly, Callington failed to plead that he has exhausted his administrative remedies and his counterclaim should be dismissed. *See, e.g.*, *Nieman*, 706 F. Supp. 2d at 907 (dismissing plaintiff's SOX claims because plaintiff "did not follow the administrative procedure prescribed by the Act.").

Further, even if Callington had exhausted his administrative remedies, his SOX retaliation counterclaim must still be dismissed because he failed to plausibly plead that he engaged in protected activity and that UL was aware of such protected activity. To state a *prima facie* case, Callington must show "that (1) []he engaged in protected activity; (2) [UL] knew about this activity; (3) []he suffered an unfavorable employment action; and (4) the protected activity was a contributing factor in the unfavorable action." *Robinson v. U.S. Dep't of Lab.*, 406 F. App'x 69, 72 (7th Cir. 2010). To adequately plead protected activity, a plaintiff must allege that he held a subjective and "objectively reasonable belief that the conduct that []he complained of constituted fraud as described in 18 U.S.C. § 1514A(a)(1)." *Id.*; *see also Magnuson v. Exelon Corp.*, 658 F.

---

to state a claim under 12(b)(6), the Court concludes in both instances Plaintiff has failed to exhaust administrative remedies and, thus, her SOX claim must be dismissed.").

[10] Although Callington alleges that he "filed a formal complaint" with OSHA "[i]n or around January 2024" regarding alleged "retaliatory acts that UL has taken against him," (*id.* ¶ 166), his own allegations make clear that such retaliatory acts could not have been related to any protected activity under SOX. The "formal complaint" that Callington allegedly filed with OSHA "[i]n or around *January* 2024" (*id.*) (emphasis added) predates Callington allegedly "provid[ing] information to the SEC's Whistleblower Office" "[i]n or around *June* 2024" and any retaliation he purportedly experienced thereafter. (*Id.* ¶ 167) (emphasis added). Additionally, Callington failed to allege "key facts" regarding his alleged OSHA complaint, such as "whether or not a final decision was issued." *Rodriguez*, 2024 WL 4367925, at *4 (dismissing SOX retaliation claim because "Plaintiff does not allege key facts such as the timing or date of [OSHA] complaint and whether or not a final decision was issued.").

12

Supp. 3d 652, 660-61 (C.D. Ill. 2023) ("Courts will dismiss a SOX retaliation claim without factual allegations supporting subjective belief and/or objective reasonableness.").

Callington merely alleges that he complained to the SEC of conduct that "constitutes a violation of securities law," not any type of fraud protected by SOX.[11] *See Fuqua v. SVOX AG*, 2016 WL 2986971, at *3 (N.D. Ill. May 24, 2016) ("[B]ecause [the conduct plaintiff complained of] is not fraud at all, much less a species of fraud identified in the SOX anti-retaliation provision, blowing the whistle on it does not constitute protected activity under SOX" and thus dismissing claim).[12] Callington's allegations demonstrate that his purported disclosure was motivated by audit integrity concerns rather than a subjective and reasonably objective "belief that he was reporting fraud within SOX's purview." *Magnuson*, 658 F. Supp. 3d at 662-63 ("Plaintiff's allegations . . . do not suggest that his disclosures were motivated by a subjective belief that he was reporting fraud within SOX's purview but rather demonstrate a concern for nuclear safety."). Callington failed to allege that he engaged in protected activity and thus Counterclaim I should be dismissed.

IV. **Callington Failed to Adequately Plead his OSEA Counterclaim (Counterclaim IV)**

Callington failed to adequately plead that he engaged in protected activity because the "OSEA does not protect conduct opposing safety and health hazards outside of Oregon." *Reid v. Evergreen Aviation Ground Logistics Enter.*, 2008 U.S. Dist. LEXIS 118701, at *37 (D. Or. Nov. 21, 2008); *see Anderson v. Evergreen Int'l Airlines*, 131 Or. App. 726, 736 (1994) ("The OSEA, by its terms, is limited to the maintenance of safe working conditions in Oregon. The 'whistleblower' protections of ORS 654.062(5)(a) are, necessarily, congruent with the OSEA's general territorial scope."). Callington does not allege that any of his purported internal complaints

---

[11] Callington also does not allege that UL was aware of his purported disclosure to the SEC. *See Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 483 (7th Cir. 2004) ("[A] retaliatory complaint must be dismissed if the employer did not know about the whistle-blower's protected conduct before it discharged him.").

or disclosures to the *New York Times* related to unsafe working conditions in Oregon. Accordingly, the Court should dismiss Counterclaim IV. *See, e.g.*, *Gabriel v. Broadspire Servs.*, 2020 WL 3078325, at *3 (D. Or. June 10, 2020) (dismissing OSEA retaliation claim because plaintiff only alleged that she reported "occupational health and safety practices in Washington, not Oregon").

V. **Callington's IIED Counterclaim Fails Under Oregon and Illinois Common Law (Counterclaim XI)**

Callington failed to specify whether he brings his IIED counterclaim under Illinois or Oregon common law. Either way, he failed to allege conduct that meets either standard. Under Illinois law, a plaintiff must plead, among other things, that the "defendant's conduct was truly extreme and outrageous." *Richards v. United States Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (noting that to "qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society."). "Generally, Illinois courts have held only certain types of employer conduct to be sufficiently outrageous to survive a motion to dismiss," including "the use of wrongful discharge to coerce the plaintiff into committing illegal acts or a continuing pattern of sexual harassment or discrimination." *Fitzgerald v. Fraites*, 1996 WL 480379, at *6 (N.D. Ill. Aug. 21, 1996). Here, Callington merely alleges that UL is "seeking to have him cast out of his profession" and is "burdening him with this lawsuit," which does not even come close to satisfying the "extreme and outrageous" conduct pleading standard. (Am. Countercompl. ¶ 202.)

Similarly, under Oregon law, a plaintiff must show, among other things, that the "defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Pearson v. U.S. Bank Corp.*, 2004 WL 1857099, at *2 (D. Or. Aug. 18, 2004), *report and rec. adopted*, 2004 WL 2124039 (D. Or. Sept. 21, 2004). Callington's allegations do not exceed the bounds of socially tolerable conduct, and thus Counterclaim XI should be dismissed. *See, e.g.*,

14

*id.* at *8 (finding that even "calling employees liars and accusing them of sabotaging the office accompanied by firing, and threatening physical violence against a pregnant employee" did not "exceed the bounds of socially tolerable conduct" and thus dismissing IIED claim).

### VI. Callington Failed to Adequately Plead his Misclassification and Overtime Counterclaims (Counterclaims XII & XIII)

Callington failed to adequately plead his counterclaims for underpaid overtime under the FLSA and Oregon law as he "fails to give even a bare estimation of how often he worked more than 40 hours per week without compensation — *e.g.* every week, every other week, twice a year, every five years — [and, as such,] it is completely unclear what the scope of his claim might be." *Macy v. Waterford Operations, LLC*, 2017 WL 2293365, at *2 (D. Or. Apr. 25, 2017) (dismissing FLSA and Oregon law overtime claims where plaintiff alleged that he "was not exempt from the requirement that he be paid overtime rates for overtime hours worked at any time during [his] employment" because "[s]uch a blanket statement, covering 17 years of employment, is overly broad and insufficient to give the defendants proper notice regarding his claim."); *Silver v. Townstone Fin., Inc.*, 2015 WL 1259507, at *2 (N.D. Ill. Mar. 17, 2015) (dismissing FLSA overtime claim where plaintiff "merely alleges that '[t]hroughout the relevant period, [he] worked in excess of 40 hours per week, but was not paid an overtime premium of 1 1/2 times his regular hourly rate for those additional hours'" because such allegation was "nothing more than a threadbare recital of the elements of a cause of action, which is insufficient to state a claim"). Accordingly, Counterclaims XII and XIII should be dismissed.

### CONCLUSION

For the foregoing reasons, UL respectfully requests that the Court dismiss Callington's Amended Countercomplaint in its entirety pursuant to Rule 12(b)(6) and award any further relief deemed appropriate.

| | |
|---|---|
| Date: February 23, 2026 | Respectfully submitted,<br><br>*/s/ Michael Roche*<br><br>Michael Roche<br>Shannon Lemajeur Miller<br>WINSTON & STRAWN LLP<br>300 North LaSalle Drive<br>Suite 4400<br>Chicago, IL 60654-3406<br>Tel. 312-558-5600<br>Fax 312-558-5700<br>mroche@winston.com<br>slmiller@winston.com<br><br>Richard T. Kienzler<br>LITTLER MENDELSON, P.C.<br>321 North Clark Street<br>Suite 1100<br>Chicago, IL 60654<br>Tel. 312-372.5520<br>Fax 312-372-7880<br>rkienzler@littler.com<br><br>Kevin E. Griffith (admitted *pro hac vice*)<br>Emily E. Levy (admitted *pro hac vice*)<br>LITTLER MENDELSON, P.C.<br>41 South High Street, Suite 3250<br>Columbus, OH 43215<br>Tel. 614-463-4210<br>Fax 614-737-9135<br>kgriffith@littler.com<br>elevy@littler.com<br><br>*Attorneys for Counter-Defendant UL LLC* |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of February 2026, I caused a true and correct copy of the foregoing to be filed electronically. Counsel of record for Defendant and Counter-Plaintiff Joshua Callington may access this filing through the Court's system.

*/s/ Shannon Lemajeur Miller*
Counsel for Counter-Defendant UL LLC