**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UL LLC**, | ) |
| | ) |
| | ) Case No. 1:24-cv-05631 |
| Plaintiff/Counter-Defendant, | ) |
| | ) Hon. Judge Andrea R. Wood |
| v. | ) |
| | ) Magistrate Judge Albert Berry III |
| **JOSHUA CALLINGTON,** | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |

<u>**UL LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CALLINGTON'S
FIRST AMENDED COUNTERCLAIMS**</u>

Michael Roche
Shannon Lemajeur Miller
WINSTON & STRAWN LLP
300 North LaSalle Drive
Suite 4400
Chicago, IL 60654-3406
Tel. 312-558-5600
Fax 312-558-5700
mroche@winston.com
slmiller@winston.com

Richard T. Kienzler
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Tel. 312-372.5520
Fax 312-372-7880
rkienzler@littler.com

Kevin E. Griffith (admitted *pro hac vice*)
Emily E. Levy (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
41 South High Street,
Suite 3250
Columbus, OH 43215
Tel. 614-463-4210
Fax 614-737-9135
kgriffith@littler.com
elevy@littler.com

*Counsel for Plaintiff/Counter-Defendant UL LLC*

**INTRODUCTION**

Defendant/Counter-Plaintiff Joshua Calllington's Opposition to Plaintiff/Counter-Defendant UL LLC's Motion to Dismiss his First Amended Counterclaims (ECF 134, the "Opposition Brief")[1] does nothing to salvage his defective counterclaims. As set out in UL's Memorandum of Law in Support of its Motion to Dismiss (ECF 132, the "Opening Brief"), different pleading requirements apply to each of Callington's thirteen (13) specific counterclaims. But instead of responding to the specific, different pleading deficiencies that UL identified for each counterclaim, Callington's Opposition Brief confuses the issues by conflating groups of multiple counterclaims together into undifferentiated jumbles. His Opposition Brief then fails to address most of UL's specific arguments on those separate counterclaims, sets up fake "straw man" arguments that UL never made, and asserts points that are completely unsupported by any case law or other authority.

In this Reply, therefore, UL addresses each counterclaim separately, rather than in Callington's conflated jumbles, and demonstrates why Callington has failed to adequately plead any of those counterclaims.

---

[1] The Opposition Brief, which was filed *one day after* the Court-ordered deadline (*see* ECF 133), is the latest example of Callington's disregard for the Court's filing deadlines. Callington's blatant noncompliance has been consistent throughout this case, as Callington has missed deadlines on at least three (3) other occasions, including: (1) Callington filed his Reply in Support of his Motion to Strike or Dismiss All Claims Pursuant to Anti-SLAPP Provisions of Oregon Law *one day after* the Court-ordered deadline (*see* ECF 43, 46); (2) although Callington requested an extension until June 14, 2025 to file his Response to UL's Motion for Preliminary Injunction, he filed his Response *one day after* the Court-ordered deadline (*see* ECF 64, 68-69); and (3) Callington filed his Reply Brief in Support of his Motion to Reconsider, Supplement, Amend, and/or Clarify *one day after* the Court-ordered deadline, and later filed an amended Reply (*see* ECF 100, 107-108). The repeated nature of Callington's noncompliance with Court-ordered deadlines has become a consistent practice rather than an isolated oversight.

1

For all the reasons described in more detail below, the Court should dismiss Callington's Amended Countercomplaint (ECF 129) in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

### I. Callington Failed to Sufficiently Plead His Retaliation Counterclaims Under Federal Law (Counterclaims I-III)

Callington's arguments make clear that he failed to plausibly plead his retaliation counterclaims under the Sarbanes–Oxley Act ("SOX") (Counterclaim I), the Dodd-Frank Act, (Counterclaim II) and the False Claims Act ("FCA") (Counterclaim III) (collectively, the "Federal Retaliation Counterclaims") and that such counterclaims should be dismissed, for three reasons.

First, Callington's Federal Retaliation Counterclaims should be dismissed because he failed to plausibly plead that he engaged in the different protected activity required under each statute.[2] Callington is incorrect when he argues that the same protected activity standard applies for all three Federal Retaliation Counterclaims, and that "it is wholly sufficient for Mr. Callington to allege that the substance of his complaints to the relevant government enforcement authorities concerned conduct which he 'reasonably believed' was in violation of that law." (Opp'n Br. at 9.) To the contrary, the case law is clear that "not all whistleblowing constitutes protected activity under SOX," Dodd-Frank, and FCA. *Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 661 (C.D. Ill. 2023). As explained in the Opening Brief, statutorily protected activity differs for each of the Federal Retaliation Counterclaims.

---

[2] The Court should ignore Callington's straw man argument that "UL seems to suggest that Mr. Callington's allegations should be held to the more onerous 'particularity' requirement that applies to fraud claims under Fed. R. Civ. P. 9(b)." (Opp'n Br. at 4.) UL did not make or suggest any such argument. Indeed, all the cases that UL cited in the Opening Brief applied the Fed. R. Civ. P. 8(a)(2) plausibility standard for retaliation claims, not Rule 9(b)'s heightened particularly standard for substantive fraud claims.

Under SOX, a plaintiff must allege that he held a subjective *and* "objectively reasonable belief that the conduct that []he complained of constituted fraud as described in 18 U.S.C. § 1514A(a)(1)." *Robinson v. U.S. Dep't of Lab.*, 406 F. App'x 69, 72 (7th Cir. 2010); *see Verfuerth v. Orion Energy Sys.*, 879 F.3d 789, 793 (7th Cir. 2018) (stating that SOX only "protects employees who reveal evidence of certain types of fraud," such as mail fraud, bank fraud, and shareholder fraud). Callington merely alleged that he complained to the SEC of conduct that "constitutes a violation of securities law," not conduct that constitutes fraud protected by SOX. (Am. Countercompl. ¶ 167); *see Fuqua v. SVOX AG*, 2016 WL 2986971, at *3 (N.D. Ill. May 24, 2016) ("[B]ecause [the conduct plaintiff complained of] is not fraud at all, much less a species of fraud identified in the SOX anti-retaliation provision, blowing the whistle on it does not constitute protected activity under SOX" and thus dismissing claim); *Gauthier v. Shaw Grp., Inc.*, 2012 WL 6043012, at *6 (W.D.N.C. Dec. 4, 2012) (dismissing SOX retaliation claim based on plaintiff's disclosures about his employer's audit report, finding his allegations "reflect[ed] that he held no objective or subjective belief that his employer's conduct related to" fraud under SOX, but rather was concerned about safety). Nothing in Callington's Opposition Brief addresses his failure to adequately plead that he engaged in the required protected activity under SOX and thus Counterclaim I should be dismissed.

Under Dodd-Frank, "a plaintiff must at least plead which laws he reasonably believed were violated, and what conduct he reported to the SEC." *Pickholz v. Transparentbusiness, Inc.*, 2024 WL 489543, at *5 (D.N.J. Feb. 8, 2024). Callington failed to plead the information he allegedly reported to the SEC and which federal securities law he believes UL violated, and his Opposition Brief offers nothing to change this failure. As such, he failed to plead that he engaged in the required protected activity under Dodd-Frank, and Counterclaim II should be dismissed. *See, e.g.,*

3

*id.* at *6 (dismissing Dodd-Frank Act retaliation claims that failed to identify "specific law" violated and "though Plaintiff alleges that he 'made formal written submissions to the [SEC] about the Defendants' unlawful conduct,' Plaintiff does not allege what conduct he provided to the SEC").

Under the FCA, an employee must have a good faith, reasonable belief that his "employer is committing fraud against the government." *United States ex rel. Uhlig v. Fluor Corp.*, 839 F.3d 628, 635 (7th Cir. 2016). Callington did not allege that he reasonably believed that UL defrauded the government, and nothing in his Opposition Brief addresses this failure. Thus, he did not plead protected activity under the FCA and Counterclaim III should be dismissed. *See, e.g.*, *Lewis v. Abbvie Inc.*, 152 F.4th 807, 813 (7th Cir. 2025) (affirming dismissal of FCA retaliation claim where plaintiff's complaints "never suggested that *his* concern was fraud-based, rather than rooted in regulatory violations").

Second, even if Callington had plausibly alleged that he engaged in activity protected by each of the aforementioned statutes, his Federal Retaliation Counterclaims would nevertheless fail because he did not plead that UL was aware of that activity at the time UL took any purported adverse action against him, as required under SOX, Dodd-Frank, and FCA. (*See* Opening Br. at 7-9, 13.) Notably, Callington did not address these arguments in his Opposition Brief. Because a party's "[f]ailure to respond to an argument . . . results in waiver," Callington "conceded the validity of [UL's] arguments by failing to respond." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

Finally, Callington failed to rebut that his SOX retaliation counterclaim independently should be dismissed on the grounds that he failed to allege that he exhausted his administrative remedies. *See Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 907 (C.D. Ill. 2010)

(stating a plaintiff "may only file suit in federal district court if OSHA does not resolve his claim within one-hundred eighty days, and if such delay is not the result of the plaintiff's bad-faith conduct.") (citing 29 C.F.R. § 1980.114(a)).

Callington again tries to avoid the real issue—the required exhaustion of remedies—by making an immaterial point regarding whether the exhaustion of remedies should be considered "jurisdictional" or simply a pleading requirement. (Opp'n Br. at 9-10.) The law is clear, however, that exhaustion of remedies is a requirement for bringing a SOX retaliation claim and this is true regardless of whether the Court evaluates the SOX exhaustion requirement as a jurisdictional issue under Rule 12(b)(1) or a failure to state a claim under Rule 12(b)(6). *See, e.g.*, *Rodriguez v. Wipro Ltd.*, 2024 WL 4367925, at *3 (W.D.N.C. Sept. 30, 2024), *aff'd*, 2025 WL 800241 (4th Cir. Mar. 13, 2025) ("Whether evaluating exhaustion of Plaintiff's SOX claim as a jurisdictional issue under 12(b)(1) or a failure to state a claim under 12(b)(6), the Court concludes in both instances Plaintiff has failed to exhaust administrative remedies and, thus, her SOX claim must be dismissed.").

Here, Callington alleged that he filed a "retaliation complaint with OSHA in January 2024" (Opp'n Br. at 10) concerning alleged "retaliatory acts that UL had taken against him . . . ." (Am. Countercompl. ¶ 166.) His own allegations, however, make clear that such "retaliatory acts" he reported to OSHA could not have been related to any protected activity under SOX. Indeed, any such OSHA complaint predates when Callington alleged he "provided information to the SEC's Whistleblower Office" "[i]n or around June 2024". (*Id*. ¶ 167.) To state the obvious, Callington could not have been retaliated against in January 2024 for actions he took five months later in June 2024. Tellingly, Callington's Opposition Brief does not address this clear inconsistency at all and still fails to explain how Callington could have complied with SOX's exhaustion of remedies requirement. Accordingly, Counterclaim I should be dismissed.

**II.    Callington Failed to Sufficiently Plead His Retaliation Counterclaims Under State Law (Counterclaims IV-VI, VIII, X)**

Similarly, Callington failed to address the deficiencies in his state law retaliation counterclaims, including his counterclaims under the Oregon Safe Employment Act ("OSEA") (Counterclaim IV), Section 659A.203 of the Oregon Whistleblower Law (Counterclaim V), O.R.S. § 659A.199 (Counterclaim VI), blacklisting under O.R.S. § 659.805 (Counterclaim VIII), and the Illinois Whistleblower Act ("IWA") (Counterclaim X). Therefore, these counterclaims should be dismissed.

**A.  Callington Failed to State an OSEA Retaliation Counterclaim (Counterclaim IV)**

Callington failed to adequately plead that he engaged in protected activity under the OSEA because the "OSEA does not protect conduct opposing safety and health hazards outside of Oregon." *Reid v. Evergreen Aviation Ground Logistics Enter*., 2008 U.S. Dist. LEXIS 118701, at *37 (D. Or. Nov. 21, 2008); *see, e.g.*, *Gabriel v. Broadspire Servs*., 2020 WL 3078325, at *3 (D. Or. June 10, 2020) (dismissing OSEA retaliation claim because plaintiff only alleged that she reported "occupational health and safety practices in Washington, not Oregon"). Callington ignores this case law and flippantly asserted that "[b]ecause Mr. Callington was himself, at all times relevant to this action, an employee of UL residing in the State of Oregon, no further elaboration should be required on this point at this stage." (Opp'n Br. at 11.) Callington cited no legal authority—and indeed no court has held—that merely pleading that a plaintiff resided in Oregon is sufficient to state an OSEA retaliation claim. Since Callington did not allege that any of his purported internal complaints, disclosures to the *New York Times*, or "formal complaints with [] state and federal regulators" (*id*. at 7) related to unsafe working conditions in Oregon, Counterclaim IV should be dismissed.

**B. Callington Cannot Assert a Counterclaim Under O.R.S. § 659A.203 Because UL is Not a "Public or Nonprofit Employer" (Counterclaim V)**

Counterclaim V should be dismissed because UL is not a "public or nonprofit employer." It is well established—and Callington does not dispute—that Section 659A.203 of the Oregon Whistleblower Law "applies strictly to public employers." *McClusky v. City of N. Bend*, 332 Or. App. 1, 23, 549 P.3d 557, 570 (2024). In its Opening Brief, UL attached public records from the Delaware Department of State: Division of Corporations—of which the Court may properly take judicial notice (*see* Opening Br. at 3, n.3)—definitively establishing that UL is *not* a government entity or nonprofit organization. (*See* Opening Br., Ex. 1, ECF 132-1.) In a last-ditch effort to save this counterclaim, Callington argued only that he "has a good faith belief that [UL] was a 'nonprofit' organization" and that "dismissing this claim without further discovery is premature." (Opp'n Br. at 12.) There is no authority for the proposition that in the face of clear public records demonstrating that a counter-defendant is not a public or nonprofit employer, a counter-plaintiff can save his counterclaim by simply asserting in an opposition brief that he has a "good faith belief" to the contrary. Accordingly, the Court should dismiss Counterclaim V.

Callington's next effort to save his counterclaim is to make an informal request in the body of his Opposition Brief for leave to amend to add a completely new, different entity "as a party to this action under a joint employer theory of liability." (*Id.* at 13.) However, "embedding [] a request for leave to amend . . . in a response brief is improper," and the Court should deny this attempt. *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 2017 WL 1163741, at *8 (N.D. Ill. Mar. 29, 2017); *see, e.g., Novak v. State Parkway Condo. Ass'n*, , 2015 WL 1058014, at *4 (N.D. Ill. Mar. 6, 2015) (reserving "decision until Plaintiffs have made a proper motion for leave to amend rather than act on a request imbedded in a response brief, so that the parties may properly brief the issues related

to naming individual board members at this stage, including its possible futility or the possible undue delay in requesting leave").

### C. Callington Failed to State a Counterclaim Under O.R.S. § 659A.199 (Counterclaim VI)

Callington also failed to plausibly plead a retaliation counterclaim under O.R.S. § 659A.199, which prohibits an employer from retaliating against an employee who has "in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." OR.S. § 659A.199(1). Callington failed to respond to (and thus conceded) UL's point that his O.R.S. § 659A.199 counterclaim fails because he did not allege who at UL undertook the alleged adverse actions against him, let alone that they had knowledge of Callington's alleged protected activity. (*See* Opening Br. at 9); *see also Javansalehi v. BF & Assocs.*, 2011 WL 5239752, at *8 (D. Or. Nov. 1, 2011) ("[I]t is clear that a claim for retaliation [under O.R.S. § 659A.199] will not lie where the decisionmaker has no actual knowledge of the adversely affected employee's protected conduct."). Accordingly, the Court should dismiss Counterclaim VI.

### D. Callington Conceded that his Blacklisting Counterclaim Under O.R.S. § 659.805 Fails (Counterclaim VIII)

Callington conceded that O.R.S. § 659.805 does not provide a private right of action, and thus his blacklisting counterclaim (Counterclaim VIII) should be dismissed. (Opp'n Br. at 13.) The Court should also deny Callington's informal request to "convert" Counterclaim VIII "to corresponding common law claims for tortious interference and blacklisting." (*Id.*) There is no support for the idea of "converting" an admittedly invalid claim into another claim. To the extent

8

this is an actual request of the Court at all, it should be denied. *See VitalGo, Inc.*, 2017 WL 1163741, at *8.[3]

### E. Callington Does Not Have Standing to Assert a Counterclaim under the IWA (Counterclaim X)

Callington lacks standing to bring a counterclaim under the Illinois Whistleblower Act because the statute does not apply extraterritorially and Callington did not allege that he worked in Illinois or experienced any retaliation in Illinois. *See Huang v. Fluidmesh Networks, LLC*, 2017 WL 3034672, at *5 (N.D. Ill. July 18, 2017) (finding the IWA does not expressly provide that it applies to out-of-state employees nor does it "contain [any other] language expressing the legislature's clear intent for it to have extraterritorial effect to redress injuries suffered outside of Illinois."). Callington's sole argument that "the company is headquartered in Chicago and admits to having executed at least some of the alleged retaliatory actions against Mr. Callington from that location" makes no difference. (Opp'n Br. at 14.) First, it is untrue that UL has admitted that it retaliated against Callington in any way. But more importantly, Callington cited no legal authority indicating that such allegations are sufficient to confer nonresident standing under the statute. Thus, Counterclaim X should be dismissed.

### III. Callington's Common Law Counterclaims Fail (Counterclaims VII, IX, XI)

The Opposition Brief fails to address the pleading deficiencies that UL identified in its Opening Brief regarding Callington's common law counterclaims, including aiding and abetting unlawful retaliation and conspiracy (Counterclaim VII), wrongful retaliation and discharge

---

[3] It should also be noted that Callington cited no legal authority for his argument that, despite the counterclaim being invalid, "the conduct at issue is still actionable at common law, and the violation of a criminal statute serve as prima facie evidence of negligence *per se*." (Opp'n Br. at 13.)

(Counterclaims IX), and intentional infliction of emotional distress ("IIED") (Counterclaim XI). Therefore, these counterclaims should be dismissed.

### A. Callington's Aiding and Abetting Unlawful Retaliation and Conspiracy Counterclaim Fails as a Matter of Law (Counterclaim VII).

Callington did not respond to (and thus conceded) UL's argument that Callington's common law conspiracy counterclaim should be dismissed because conspiracy does not give rise to a separate theory of recovery or an independent cause of action under Oregon or Illinois common law. (Opening Br. at 4.) Callington argued that his common law aiding and abetting unlawful retaliation counterclaim is "legally sound"—without citing any legal authority—because he alleged that "UL conspired with *independent third parties*—like the Association of Professional Social Compliance Auditors (APSCA)—to retaliate against Mr. Callington." (Opp'n Br. at 15 (emphasis in original).) However, Callington failed to respond to (and thus conceded) UL's argument that to the extent that Callington's allegation is that APSCA somehow retaliated against him at UL's urging, he failed to allege how APSCA retaliated against him or what action UL took to aid or abet that conduct. (*See* Opening Br. at 4, n.4.) As such, Counterclaim VII should be dismissed.

### B. Callington's Wrongful Retaliation and Discharge Counterclaim is Precluded (Counterclaim IX).

Callington did not refute UL's argument (or the legal authority that UL cited in support thereof) that since Callington's wrongful retaliation and discharge counterclaim arises from the same allegations supporting his counterclaims under the OSEA and O.R.S. § 659A.199, his common law claim "may not be pursued simultaneously." *Malcomson v. Daimler N. Am. Corp.*, 2016 WL 5867056, at *6 (D. Or. Aug. 3, 2016); *see, e.g.*, *Vergara v. Patel*, 305 Or. App. 288, 306 (2020) (concluding that "adequate statutory remedies exist under [the OSEA] to vindicate the wrongful conduct that plaintiff alleges here, and that factor alone precludes her wrongful discharge

10

claim.").[4] Callington provided no support for his argument that "common law retaliation claims can generally survive alongside other claims arising under state and federal law." (Opp'n Br. at 14.) Indeed, the one case that Callington cited is irrelevant as it does not address pursuing such statutory and common law claims simultaneously. (*See id.* at 14-15 (citing *Czajka v. Anovion, LLC*, 2025 WL 2239339, at *10 (N.D. Ill. Aug. 6, 2025) (plaintiff brought a common law retaliatory discharge claim but "doesn't allege that she filed (or was planning to file) a [statutory] claim").) Accordingly, Callington's argument should be given no credence, and Counterclaim IX should be dismissed.

### C. Callington Failed to State an IIED Counterclaim (Counterclaim XI).

Callington failed to state a counterclaim for IIED because his allegations do not satisfy the pleading standard for "extreme and outrageous" conduct under Illinois common law or "extraordinary transgression [outside] the bounds of socially tolerable conduct" under Oregon common law. (*See* Opening Br. at 14-15.) Callington argued—without citing any legal authority—that he clears this pleading standard by baselessly alleging that "UL forced him to endure an eight-hour interrogation in Chicago, successfully lobbied a third-party agency (APSCA) to revoke his professional license, and terminated him and filed a retaliatory federal lawsuit on the exact same day." (Opp'n Br. at 15.) The case law that UL cited in its Opening Brief—which Callington did not address or attempt to distinguish—establishes that such allegations cannot satisfy the pleading standard under Illinois and Oregon common law. *See Pearson v. U.S. Bank Corp.*, 2004 WL 1857099, at *8 (D. Or. Aug. 18, 2004), *report and rec. adopted*, 2004 WL 2124039 (D. Or. Sept. 21, 2004) (finding that even "calling employees liars and accusing them of sabotaging the office

---

[4] Callington also conceded by way of waiver that even if Callington's statutory counterclaims are dismissed, his common law wrongful retaliation and discharge counterclaim still fails because he did not plausibly plead such a claim. (*See* Opening Br. at 5.)

11

accompanied by firing, and threatening physical violence against a pregnant employee" did not "exceed the bounds of socially tolerable conduct" and thus dismissing Oregon IIED claim); *Fitzgerald v. Fraites*, 1996 WL 480379, at \*6 (N.D. Ill. Aug. 21, 1996) ("Illinois courts have held only certain types of employer conduct to be sufficiently outrageous to survive a motion to dismiss," including "the use of wrongful discharge to coerce the plaintiff into committing illegal acts or a continuing pattern of sexual harassment or discrimination."). Therefore, Counterclaim XI should be dismissed.

### D. Callington Failed to Adequately Plead his Misclassification and Overtime Counterclaims (Counterclaims XII & XIII)

Callington argued—without citing any legal authority, once again—that "[a]lleging a specific misclassification scheme combined with an estimate of 50-70 hours per week more than satisfies the federal notice pleading standard." (Opp'n Br. at 16.) That is wrong as a matter of law. Callington's allegations are "no different than the minimal allegations that have been found inadequate by many courts—they boil down to a bare assertion that [Callington] worked overtime but was not adequately compensated, which alone is not sufficient to place Defendants on notice of the allegations they must defend." *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, 2016 WL 2909649, at \*3 (N.D. Ill. May 19, 2016) (dismissing FLSA overtime claim where "although [plaintiff] alleges that [defendant's] productivity requirement policy forced her to perform work in the evenings and weekends, she includes no information regarding when or how often she worked overtime as a result of that policy, how much overtime she worked as a result of that policy, what type of work she performed outside of regular work hours, or whether other compensation may have offset any deficiency in overtime compensation."). Since Callington did not adequately plead Counterclaims XII & XIII, they should be dismissed.

### CONCLUSION

For the foregoing reasons, UL respectfully requests that the Court dismiss Callington's Amended Countercomplaint in its entirety pursuant to Rule 12(b)(6) and award any further relief deemed appropriate.

Date: April 8, 2026

Respectfully submitted,

/s/ Michael Roche

Michael Roche
Shannon Lemajeur Miller
WINSTON & STRAWN LLP
300 North LaSalle Drive
Suite 4400
Chicago, IL 60654-3406
Tel. 312-558-5600
Fax 312-558-5700
mroche@winston.com
slmiller@winston.com

Richard T. Kienzler
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Tel. 312-372.5520
Fax 312-372-7880
rkienzler@littler.com

Kevin E. Griffith (admitted *pro hac vice*)
Emily E. Levy (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Tel. 614-463-4210
Fax 614-737-9135
kgriffith@littler.com
elevy@littler.com

*Attorneys for Counter-Defendant UL LLC*

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April 2026, I caused a true and correct copy of the foregoing to be filed electronically. Counsel of record for Defendant and Counter-Plaintiff Joshua Callington may access this filing through the Court's system.

*/s/ Shannon Lemajeur Miller*
Counsel for Counter-Defendant UL LLC

14